

# MOSER LAW FIRM, P.C.

STEVEN J. MOSER, ESQ.      3 SCHOOL STREET, SUITE 207B     TEL (516) 671.1150
smoser@moseremploymentlaw.com     GLEN COVE, NEW YORK 11542     FAX (516) 882-5420

March 29, 2018

Hon. A. Kathleen Tomlinson, USMJ
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

Re: *Castillo v. Perfume Worldwide,* 17-cv-2972 (JS)(AKT)

Dear Judge Tomlinson:

    I represent the Plaintiffs in the above referenced matter. Plaintiffs file this letter motion to compel the Defendants to respond to Plaintiffs' First Request for Production of Documents and First Set of Interrogatories served on December 22, 2018.

## BACKGROUND

    Perfume Worldwide, Inc. is an online retailer of beauty products and fragrances. According to documents furnished by the Defendants, Piyush Golia is the president of Perfume Worldwide, Inc. (PWW).

    Perfume Center of America, Inc. is a beauty and fragrance wholesaler. Upon information and belief, Kanak Golia (Piyush Golia's father) is the president of Perfume Center of America, Inc.

    The two companies currently operate out of a 150,000 square foot facility at 2020 Ocean Avenue, Ronkonkoma, New York.

    This action was commenced on May 16, 2017 against PWW and Piyush Golia. The action seeks unpaid overtime and straight wages as a result of Defendants' policy of failing to compensate employees for a 20-minute morning break. The case also seeks the recovery of spread of hours pay under 12 NYCRR 142-2.4.

    Defendants have exchanged a list of more than 1,000 putative class members.

    At the initial conference on September 6, 2017 the Court referred the matter to mediation and stayed formal discovery in order to allow the parties to informally exchange information necessary to settle the case. *See* ECF No. 20. Thereafter, Plaintiffs requested from Defendants class-wide wage and hour information to assist in a meaningful mediation.

*Plaintiffs' Motion to Compel Discovery*　　　　　　　　　　　　　　　　**MOSER LAW FIRM, P.C.**
March 29, 2018
Page 2

  As of November 30, 2017, the Defendants had not yet furnished class-wide payroll information. The Court directed defendants' counsel to determine whether the information sought by Plaintiffs could be produced in Excel format on or before December 8, 2017. *See* ECF No. 33.

  On December 8, 2018 there was still no clear answer as to when payroll information would be produced. The Court noted: "[I]t is clear to the Court that the parties are not prepared to proceed to mediation at this juncture. Therefore, the Court is putting this case back on track for discovery." *See* ECF No. 34. The Court directed the parties to serve discovery demands by December 22, 2017 and respond no later than January 30, 2018.[1]

  On December 22, 2018 Plaintiffs served Document Requests and Interrogatories. On February 13, 2018, as Plaintiff has not yet received any responses, we filed a motion to compel. ECF No. 35. Since that date, Defendants have served three sets of interrogatory responses and three sets of document responses. Each set of written discovery responses has been followed with an appropriate notice of deficiencies by the Plaintiffs. Counsel for the parties have spoken personally via telephone on several occasions to work through the discovery issues.

  While Defendants have furnished much information in recent days, Plaintiffs have still not received payroll information for the entire relevant time period in a usable format. On March 20, 2018, Defendants furnished payroll reports. However, those reports only cover the period from January 2014 through October 2016. The class period is from May 2011 to the present (six years prior to the filing of the complaint and continuing to the present). No payroll information has been furnished for the period from May 2011 to December 2014 or for the period from November 2016 to the present.

  Outstanding discovery issues are as follows:

INTERROGATORIES

  Defendants served "Interrogatory Responses" on February 14, 2018, "Supplemental Interrogatory Responses" on February 16, 2018, and Second "Supplemental Interrogatory Responses" on March 22, 2018. Copies of these documents are annexed hereto as Exhibits 2-4 respectively. Although the Defendants have not objected to any of the interrogatories propounded, some of the responses have been inadequate.

Interrogatory No. 1

**INTERROGATORY NO. 1**: Identify the name, last known phone number, last known address, dates of employment, regular rate(s) of pay (and dates on which those rates of pay were in effect) of all class members.

---

[1] A copy of the Case Management Order of December 8, 2017 is annexed hereto as Exhibit 1.

*Plaintiffs' Motion to Compel Discovery*                        **MOSER LAW FIRM, P.C.**
March 29, 2018
Page 3

***Defendants' Response***. "https://www.dropbox.com/s/a945s7o7w65yflt/Employee%20Personal%20Information.xlsx?dl=O.  In addition, plaintiff's counsel was provided with all available data from ADP in the format (spreadsheet) he requested."

**Why the response is inadequate.**  The link is to a document that contains the following columns:

| Name | Hire Date | Termination Date | Last Day Worked | Address | City | State | ZIP Code | Phone |
|---|---|---|---|---|---|---|---|---|

On March 12, 2018 I received an email containing a spreadsheet with the following columns:

| Name | Hire Date | Termination Date | Rehire Date | Address | City | State | ZIP Code | Phone | Regular Pay Rate Amount |
|---|---|---|---|---|---|---|---|---|---|

The "regular rate(s) of pay (and dates on which those rates of pay were in effect)" have not been furnished in response to the interrogatory, as requested.  Instead, the Defendants acknowledge that they have furnished only the *most recent* regular rate.

On March 20, 2018, Defendants furnished payroll reports.  However, those reports only cover the period from January 2014 through October 2016.  No wage information has been furnished for the period from May 2011 to December 2014 or for the period from November 2016 to the present.

However, even if the Defendants had furnished payroll records for the entire relevant time period, they would still not be relieved from answering the interrogatory fully as required by FRCP 33.  See PCS Phosphate Co., Inc. v. Norfolk S. Corp., 238 F.R.D. 555, 558 (E.D.N.C. 2006)(holding that an interrogatory is proper even though the information sought is equally available to the requesting party as to the responding party).  Whether the information has been produced is not a relevant inquiry because the Defendants have not designated any business records pursuant to FRCP 33(d).  However, Defendants cannot avail themselves of FRCP 33(d) designation because they have superior knowledge of and familiarity with the records that would be used to respond to the interrogatory.  See This, LLC v. Jaccard Corp., No. 3: 15-cv-1606(JBA), 2017 U.S. Dist. LEXIS 19383, at *9 n.3 (D. Conn. Feb. 9, 2017)

Interrogatory No. 4

**INTERROGATORY NO. 4.** Identify the individual(s) or company(ies) that created, printed and/or issued paychecks for Perfume Worldwide during the relevant time period, and the time period during which each individual or company created, printed and/or issued the paychecks. In

so identifying, provide the individual or company's last known address, last known telephone number, and the name and address of the representative/account manager.

> ***Defendants' Response:*** *"ADP has been the company using for printing paycheck for perfume worldwide for the entire requested period, and the contact information for ADP has been supplied to plaintiffs' counsel."*

> **Why the response is inadequate.**  The address, telephone number, and address of the representative/account manager have not been furnished.

Interrogatories Nos. 6 & 7

**INTERROGATORY NO. 6.**   Please identify by Software Publisher, Software Name, and Software version all software used by Perfume Worldwide during the relevant time period to (a) record the beginning of the workday, break or meal periods, end of workday, (b) compute hours worked, ( c) compute gross wages, deductions from wages, and net pay, or (d) otherwise used to process payroll for or make wage payments to the class. For each software program so identified, please state the dates when the software was used and briefly describe its function.

> ***Defendants' Response****: "Finger Tec is used for clocking in and out for employees, Total hours is submitted to ADP for processing the payroll. ADP will calculate gross wages, deductions from wages, and net pay.  Defendants have already provided plaintiff's counsel with direct access to ADP account representatives for the requested data including to identify by Software Publisher, Software Name, and Software version all software used."*

**INTERROGATORY NO. 7.**   To the extent not already furnished in response to a prior interrogatory, please identify each individual or company who furnished "Software as a service" or "on-demand software" used by Perfume Worldwide during the relevant time period to compute (a) record the beginning of the workday, break or meal periods, end of workday, (b) compute hours worked, (c) compute gross wages, deductions from wages, and net pay, or ( d) otherwise used to process payroll for or make wage payments to the class. State the address and telephone number of each individual or company so identified, and the dates on which the individual or company furnished the software as a service to Perfume Worldwide.

> ***Defendants' Response****: "Finger Tec is used for clocking in and out for employees, Total hours is submitted to ADP for processing the payroll. ADP will calculate gross wages, deductions from wages, and net pay.  Defendants have already provided plaintiff's counsel with direct access to ADP account representatives for the requested data including to identify by Software Publisher, Software Name, and Software version all software used."*

> **Why the responses are inadequate.**  Defendants have not identified any Software or SAAS by "Software Publisher, Software Name, and Software version" during the relevant time period.  Defendants instead refer to two conference calls arranged by

Defendants with ADP in which I was permitted to participate which occurred on March 13, and March 14. During those conference calls the Software Publishers, Names, Versions, etc. for the entire relevant time period were not discussed in detail. But even if they had been this does not relieve the defendant from its obligations under Rule 33: "Each interrogatory must, to the extent it is not objected to, be answered *separately and fully* in writing under oath." FRCP 33(b)(3).

Interrogatory No. 9

**INTERROGATORY NO. 9.** Identify each electronic database, data table or data file that you now maintain or have maintained during the relevant time period in the ordinary course of business which contains information regarding the names, addresses, telephone numbers, time/punch records, or records regarding the computation of or payment of wages to the class members. For each such electronic data entity, identify the following:

(i)   the name or title of each such database, data table, or data file;
(ii)  the native software used to access and utilize such data entities;
(iii) describe the structure of each database, data table or data file identified in response to Request No. 2(a)[2] above and identify all files or tables in each such database, data table or data file. For each such file or table, identify all fields and for each field describe its contents, format and location within each file or table record or row.
(iv)  the current or former employee(s) with the most knowledge of the operation or use of each data entity identified above; and
(v)   the custodian(s) of such data entity.

***Defendants' Response.*** *We have Employees information in excel database and clocking Time is also mentioned in a separate excel file which is listed below.*
*Employee Personal Information*
*https://www.dropbox.com/s/a945s7o7w65yflt/Employee%20Personal%20Information.xlsx?dl=O*
*Employee Hours Information*
*https://www.dropbox.com/s/23o9e72w4dr4qcr/Total%20Employee%20Hours.xlsx?dl=O*

**<u>Why the response is inadequate.</u>** The interrogatory seeks information regarding the databases containing relevant information, the software used to access the database, and the database tables and fields. The response will provide basic information concerning nature of the databases in the Defendants' possession, custody and control. The responses also test whether the defendants have met their discovery obligations, and provide a framework for the parties to determine (1) the universe of relevant ESI that exists and (2) how that information can be produced in a usable format.

It has been almost a year since this case was commenced. Defendants have had an obligation from the commencement of this case to "familiarize themselves with a number

---

[2] "Request 2(a)" is a typographical error. It should read "Request (i)"

of basic database attributes so that they have adequate information to develop reasonable procedures for preserving and producing information from these repositories." The Sedona Conference, <u>The Sedona Conference Database Principles: Addressing the Preservation and Production of Databases and Database Information in Civil Litigation</u>, March 2011 Public Comment Version (the "Database Principles"), at 12. These attributes of a database which a party should familiarize themselves with include:

1. The purpose of the database system;
2. The physical location of databases;
3. A basic understanding of how the data is managed;
4. Who are the database administrators;
5. Who are the database users;
6. The capacity of the database system to produce reports containing relevant information.

<u>Id.</u>, at 12-13. Defendants have not answered the interrogatory. Instead, they have produced two excel spreadsheets prepared in response to this litigation.

Interrogatory No. 18

**INTERROGATORY NO. 18.** Please identify your ADP representative, the Region of ADP serving you, and your company code(s).

*Response:* "ADP company Code: T82"

**Why the response is inadequate.** Defendants have not identified the ADP representative, or Region of ADP serving Perfume WW.

Interrogatory No. 19

**INTERROGATORY NO. 19.** Please describe all measures that were used to validate ESI collected or exported from databases that was produced in response to Plaintiffs' First Request for Production of Documents to ensure completeness and accuracy of the data acquisition.

*Response:* "Total Hour for each Employees is mentioned in the paycheck remittance Information and how much is their wage rate and total Wages for that time period and the net pay is mentioned in the remittance information."

**Why the response is inadequate.** The response is unintelligible and unresponsive. "A responding party must use reasonable measures to validate ESI collected from database systems to ensure completeness and accuracy of the data acquisition." <u>Chen-Oster v. Goldman, Sachs & Co.</u>, 285 F.R.D. 294, 306 (S.D.N.Y. 2012), citing The Sedona Conference, <u>The Sedona Conference Database Principles: Addressing the Preservation and Production of Databases and Database Information in Civil Litigation</u>, March 2011 Public Comment Version (the "Database Principles"), at 32. Courts have relied on the

Database Principles in determining a responding party's obligations to provide electronic discovery.  See Winfield v. City of N.Y., No. 15-cv-05236 (LTS) (KHP), 2018 U.S. Dist. LEXIS 22996, at *17 (S.D.N.Y. Feb. 12, 2018).  The Database Principles explain that,

> When extracting data from databases for production, it is important to document, test, and validate the procedures that are used. Well-documented data collection and production procedures enable a responding party to demonstrate its good faith efforts to accurately export and produce database information. The same documentation also makes it possible to respond to any allegations of over- or under-collection of database information.

Id., at 17.

Defendants have not identified any of the databases containing information, and have not explained how that information has been extracted and included in the Excel Spreadsheets they.  To the extent that ESI is produced after the date of this motion, this interrogatory should be supplemented so that we can be assured that the ESI produced is accurate and can be relied upon.

## DOCUMENT REQUESTS

Defendants served "Document Responses" on February 14, 2018, "FRCP 34 Supplemental Responses" on February 16, 2018, and Second "Supplemental Responses" on March 22, 2018.  Copies of these responses are annexed hereto as Exhibits 5-7 respectively.  Although the Defendants have not objected to any of the document requests, the responses have been inadequate.   The most recent set of responses is inadequate as follows:

### Document Request No. 19

**DOCUMENT REQUEST NO. 19.**  Documents for each pay period for each class member concerning the regular hours paid, overtime hours paid, regular wages, overtime wages, other compensation, gross wages, deductions, and net wages.

> ***Response:*** *"Regular hours, Overtime hours, regular Wage Overtime wage in Pay records files in the Email subject- Class Action -Email 1 previously furnished and supplemented with spreadsheet production from ADP."*

**Why the response is inadequate.**  The Defendants reference an email which contained an excel spreadsheet with the following columns:

| Name | In | Out | Date | | Lunch | Total |
| --- | --- | --- | --- | --- | --- | --- |

This spreadsheet does not identify the total hours, regular hours, overtime hours by pay period.  The spreadsheet contains no information regarding the computation of wages, compensation, or deductions.

On March 20, 2018, Defendants furnished ADP payroll reports.  However, those reports only cover the period from January 2014 through October 2016.   The class period is from May 2011 to the present (six years prior to the filing of the complaint and continuing to the present).  No wage information has been furnished for the period from May 2011 to December 2014 or for the period from November 2016 to the present.

Document Request No. 22

DOCUMENT REQUEST NO. 22.  Copies of all wage notices furnished to named plaintiffs.  [It was clarified in emails to Defendant's counsel that we seek the Wage Notices required by NYLL § 195].

***Response:*** *"Wage of each Employees is mentioned in the pay records file for each time period previously furnished."*

**Why the response is inadequate.**  No wage notices have been furnished for the named plaintiffs.  Defendants should either furnish the notices or state that none exist.

Document Request No. 23

**DOCUMENT REQUEST NO. 23.** Copies of all wage notices furnished to the class.

***Response:*** *"In each employee file. Wage of each Employees is mentioned in the pay records file for each time period previously furnished."*

***The response was supplemented in an email dated March 27, 2018 as follows:*** *"Wage notice for the year 2015 what we have in file is listed below and we are working on the initial wage file for each Employees."*

Attached to that email were 84 "annual wage notices" all dated January 31, 2015.

**Why the response is inadequate.**  The production is incomplete.  Defendants have furnished only 84 wage notices all dated January 31, 2018.  Defendants should either furnish all notices in their possession, custody or control or state that none exist other than those produced.

Document Request No. 24

**DOCUMENT REQUEST NO. 24.** All bank statements for any bank account used to pay the Plaintiffs or Class during the relevant time period.

*First Response Dated February 14, 2018:* "Produced."

**Why the response was inadequate.** The statement that the records were "Produced" is factually incorrect. Defendants never furnished the requested records, and this was brought to their attention.

*Supplemental Response Dated February 16, 2018:* "Don't have access."

**Why the response was inadequate.** Rule 34 requires a party to produce all documents in its "possession, custody, or control." Documents are within a party's control when the party has the legal right to obtain them. *Bank of New York v. Meridien Biao Bank Tanzania,* 171 F.R.D. 135, 146-149 (S.D.N.Y. 1997). It is incredible that the defendants do not have the right to obtain their own bank records.

*Second Supplemental Response Dated March 22, 2018:* "All available pay records were produced."

**Why the response was inadequate.** Defendants did not produce the records requested as required by FRCP 34.

*Third Supplemental Response informally furnished by email on March 28, 2018:* "ADP is debiting the lump sum amount to our Bank account Due to l Direct Deposit amount ADP is collecting as batch from the bank account and whoever is not choose for Direct Deposit can get the physical checks and is debited to our account. So we are not able to see each individual employee payment in our bank statement."

**Why the response is inadequate.** The response is unintelligible and "unresponsive", and defendants have failed to furnish the documents which they originally stated were "Produced" on February 14, 2018.

Document Request No. 25

**DOCUMENT REQUEST NO. 25.** All bank reconciliation statements for any bank account used to pay the Plaintiffs or Class.

*First Response Dated February 14, 2018:* "Produced."

**Why the response was inadequate.** The statement that the records were "Produced" is factually incorrect. Defendants never furnished the requested records, and this was brought to their attention.

*Supplemental Response Dated February 16, 2018:* "Don't have access."

**Why the response was inadequate.** Rule 34 requires a party to produce all documents in its "possession, custody, or control." Documents are within a party's control when the

party has the legal right to obtain them. *Bank of New York v. Meridien Biao Bank Tanzania,* 171 F.R.D. 135, 146-149 (S.D.N.Y. 1997). It is unclear what the defendants mean by "access" but it is incredible that the defendants do not have the right to obtain their own bank reconciliation statements.

***Second Supplemental Response Dated March 22, 2018:*** *"All available pay records were produced."*

**Why the response is inadequate.** Defendants have not furnished the records which they stated were "Produced" on February 14, 2018.

Document Request Nos. 27-30

**DOCUMENT REQUEST NO. 27.** All documents concerning the systems and software used for the calculation of regular wages, overtime wages, spread of hours pay, deductions from wages, and net pay, including, but not limited to, contracts, instruction manuals, training manuals and materials and user manuals.

> ***Response:*** *"ADP Workforce is used for payroll processing. Plaintiff's counsel has been provided full access. Defendants have no other documents."*

**DOCUMENT REQUEST NO. 28.** All documents concerning the equipment identified in response to interrogatory No. 5, including, but not limited to, contracts, agreements, instruction manuals, training materials
and manuals, and user manuals.

> ***Response:*** *"ADP Workforce is used for payroll processing. Plaintiff's counsel has been provided full access. Defendants have no other documents."*

**DOCUMENT REQUEST NO. 29.** All documents concerning the software identified in response to interrogatory No. 6, including, but not limited to, contracts, agreements, instruction manuals, training materials and manuals, user manuals.

> ***Response:*** *"ADP Workforce is used for payroll processing. Plaintiff's counsel has been provided full access. Defendants have no other documents."*

**DOCUMENT REQUEST NO. 30.** All documents concerning the software as a service identified in response to interrogatory No. 7, including, but not limited to, contracts, agreements, instruction manuals, training materials and manuals, and user manuals.

> ***Response:*** *"ADP Workforce is used for payroll processing. Plaintiff's counsel has been provided full access. Defendants have no other documents."*

**Why the responses are inadequate.** Defendants have not furnished <u>any</u> responsive documents. It is unclear what the Defendants mean when they say they have provided

"full access", or that they do not "have" documents. The defendants have not furnished a single contract, agreement, instruction manual, training manual or any other document responsive to these requests. Documents are within a party's control when the party has the legal right to obtain them. *Bank of New York v. Meridien Biao Bank Tanzania,* 171 F.R.D. 135, 146-149 (S.D.N.Y. 1997). Defendants statement that they do not have the legal right to obtain documents from current and past payroll service and software providers, and do not have access to such documents is incredible.

<u>Document Request No. 34</u>

**DOCUMENT REQUEST NO. 34**. All documents concerning Defendants' Tenth Affirmative Defense that "Defendants believed in good faith, and had reasonable grounds to believe that Plaintiffs were properly paid per the requirements of the FLSA and NYLL."

> ***Response:*** *"All the documents followed in the Employee manual attached in Email subject Class Action - Email 2 previously supplied and the communication with the Scher firm that previously were produced."*
>
> **Why the response is inadequate.** Defendants have furnished an email between Perfume Center of America, Inc. (a sister company to Perfume Worldwide, Inc.) and the Scher Law Firm, LLP dating from 2011. Perfume Worldwide is arguing that it followed the same 20-minute break deduction policy as was followed by Perfume Center of America, Inc., at the advice of the Scher Law Firm. However, the Defendants have not furnished any of the employee manuals of Perfume Center of America containing the 20-minute break deduction policy. These documents are especially important because Perfume Worldwide has not furnished any Perfume Worldwide handbooks in effect during the years 2011, 2012 or 2013, claiming that it cannot locate these handbooks.

<u>Document Request No. 41</u>

**DOCUMENT REQUEST NO. 41.** Documents concerning the total number of employees of Perfume Worldwide during the relevant time period, including, but not limited to, redacted payroll tax returns.

> ***First Response Dated February 14, 2018:*** *"N/A"*
>
> ***Supplemental Response Dated February 16, 2018:*** *"Information of all employees below [with a Dropbox link to download an excel spreadsheet prepared in response to this litigation]."*
>
> ***Second Supplemental Response Dated March 22, 2018:*** *"Information of all employees is set forth below and also was included in ADP spreadsheets supplied to plaintiff's counsel.*
> *https://www.dropbox.com/s/a945s7o7w65yflt/Employee%20Personal%20Information.xlsx?dl=O"*

**Why the response is inadequate.**  Defendants have simply not produced all documents responsive to the request.  There are numerous corporate records that would show the total number of employees.  These include (but are not necessarily limited to) quarterly payroll tax returns (NYS-45 and form 941) and annual payroll tax returns (which may be redacted by Defendants if they choose), EEO-1 forms, records of payment of state disability premiums, employee lists kept in the regular course of business, and workers' compensation insurance applications.

## CONCLUSION

Plaintiff requests that the Defendants be directed to respond fully to the Interrogatories and Document requests.

Respectfully submitted,

Steven John Moser