**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
NELSON CASTILLO, MARTA VALLADARES,
ARACELY VALLADARES, CARLOS REYES,
and YOSELY ESPINAL HENRIQUEZ, individually
and on behalf of all others similarly situated,

                               Plaintiffs,

               - against -

PERFUME WORLDWIDE INC. and
PIYUSH GOLIA,

                               Defendants.
-----------------------------------------------------------X

**MEMORANDUM**
**AND ORDER**

CV 17-2972 (JS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.     <u>P</u>RELIMINARY <u>S</u>TATEMENT

      Nelson Castillo, Marta Valladares, Aracely Valladares, Carlos Reyes and Yosely Espinal

Henriquez (collectively, "Plaintiffs") filed this collective action and putative class action on

behalf of themselves and all others similarly situated against Perfume Worldwide Inc. and Piyush

Gola (collectively, "Defendants") for violations of the Fair Labor Standards Act ("FLSA"), 29

U.S.C. §§ 201 et seq., the New York Labor Law ("NYLL"), Article 6 § 191(1) and Article 19 §§

650 et seq., and the New York Codes, Rules, and Regulations ("NYCRR") § 142-2.2, 2.4. *See*

*generally* Complaint ("Compl.") [DE 1]. Plaintiffs seek to recover unpaid overtime

compensation and regular wages as well as other relief. Plaintiffs now move for Conditional

Certification and Court-Authorized Notice pursuant to § 216(b) of the FLSA. For the reasons

which follow, Plaintiffs' motion is GRANTED, in part, and DENIED, in part.

## II.   BACKGROUND

### A.   Factual Background

The following facts asserted by Plaintiffs are taken from the Complaint filed on May 16, 2017 [DE 1].  Defendant Perfume Worldwide Inc. is an online retailer of fragrances, hair and skin care products, cosmetics, candles and accessories.  Compl. ¶ 20.  Defendant Piyush Golia has been the President of Perfume Worldwide during the six-year period preceding the commencement of this action.  *Id*. ¶ 25.  Plaintiffs are former employees of Defendants who worked as warehouse workers or in customer service.  *Id*. ¶¶ 55, 65, 74, 86, 97.  They bring this action on behalf of "themselves and other similarly situated persons who were current and former workers employed by the Defendant, at any time during the three year period prior to the filing of this complaint and who elect to opt-in to this action."  *Id*. ¶ 31.  The Complaint also contains class action allegations on behalf of plaintiffs "and a class consisting of all non-exempt workers who have been employed by the Defendant in the State of New York at any time during the six-year period prior to the filing of this complaint."  *Id*. ¶ 35.

Plaintiffs allege that Defendants implemented a uniform policy of deducting 20 minutes a day from the Plaintiffs' work hours for a morning break.  *Id*. ¶ 49; *see id*. ¶¶ 58, 67, 76, 87.  According to the Complaint, as a result of this policy, the Defendants failed to pay workers for all compensable working hours.  *Id*. ¶ 50.  Plaintiffs aver that, "in most instances," this policy resulted in the defendant's failure to pay employees overtime for hours worked in excess of 40 hours per week, *id*. ¶ 51; *see id*. ¶¶ 60, 68, 78, 89, and, "in some instances," the policy resulted in a failure to pay for all straight hours worked.  *Id*. ¶ 52; *see id*. ¶¶ 61, 70, 80, 91.  Based on these allegations, the Complaint sets forth causes of action for failure to pay overtime in violation of the FLSA, NYLL and NYCRR, failure to pay straight wages in violation of NYLL,

and failure to compensate spread-of-hours pay in violation of the NYCRR. *See generally* Compl.

## B. Procedural Background

Plaintiffs commenced this action against Defendants on May 16, 2017. *See generally* Compl. Plaintiffs filed the instant motion on August 5, 2017. DE 11. Two days later, Plaintiffs filed an application with the Court seeking the ability to file the motion *nunc pro tunc* and requesting that the Court set a briefing schedule for Opposition and Reply papers. *See* DE 14. That same day, counsel for Defendants filed a motion to strike Plaintiffs' motion for conditional certification on the grounds that it was filed in violation of this Court's Individual Practice Rules. DE 15. The Court issued an Order addressing both filings on August 8, 2017. *See* 8/8/17 Electronic Order. The Court held that, in its discretion, it would accept Plaintiffs' motion for conditional certification as filed, denying Defendants' application to strike the motion. *Id.* The Court also set deadlines for the filing of Defendants' Opposition and Plaintiffs' Reply. *Id.* Judge Seybert subsequently referred Plaintiff's motion for conditional certification to this Court for a decision.[1] DE 29.

## III. LEGAL STANDARD

## A. Legal Standard on a Motion for Conditional Certification

The FLSA provides, in pertinent part, as follows:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . . An action to recover . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by

---

[1] The Court notes that the request of the parties, the Court referred this case to mediation on September 6, 2017. DE 20. However, the mediation was only recently scheduled and is set to proceed on April 18, 2018. DE 37.

> any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). Section 216(b) provides an employee with a private right of action to recover overtime compensation and/or minimum wages. *Id*.; *Cabrera v. Stephens*, No. 16CV3234, 2017 WL 4326511, at *4 (E.D.N.Y. Sept. 28, 2017) (citing *Bifulco v. Mortg. Zone, Inc*., 262 F.R.D. 209, 212 (E.D.N.Y. 2009)) ("The FLSA provides a private right of action to recover unpaid overtime compensation and/or minimum wages."); *Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54, 57 (E.D.N.Y. 2011) (citing 29 U.S.C. § 216(b)); *Gjurovich v. Emmanuel's Marketplace, Inc*., 282 F. Supp. 2d 101, 103 (S.D.N.Y. 2003) (quoting *Hoffmann v. Sbarro, Inc*., 982 F. Supp. 249, 260 (S.D.N.Y. 1997)). "Although the FLSA does not contain a class certification requirement, such orders are often referred to in terms of 'certifying a class.'" *Bifulco*, 262 F.R.D. at 212 (quoting *Parks v. Dick's Sporting Goods, Inc*., No. 05 Civ. 6590, 2007 WL 913927, at *3 (W.D.N.Y. Mar. 23, 2007)) (internal quotation marks omitted).

Courts within the Second Circuit apply a two-step analysis to determine whether an action should be certified as an FLSA collective action. *See Myers v. Hertz Corp.*, 624 F.3d 537, 544-45 (2d Cir. 2010) (noting that district courts within this Circuit have "coalesced around a two-step method" for analyzing collective action certification); *see also Keawsri v. Ramen-Ya Inc*., No. 17-CV-2406, 2018 WL 279756, at *5 (S.D.N.Y. Jan. 2, 2018) (citing *Myers*, 624 F.3d 544-45); *Bijoux v. Amerigroup New York, LLC*, No. 14-CV-3891, 2015 WL 4505835, at *2 (E.D.N.Y. July 23, 2015) (citing the same), *report and recommendation adopted* by 2015 WL 5444944 (E.D.N.Y. Sept. 15, 2015). First, the court determines whether the proposed class members are "similarly situated." *Puglisi v. TD Bank, N.A*., 998 F. Supp. 2d 95, 99 (E.D.N.Y.

2014) (quoting *Kalloo v. Unlimited Mech. Co. of NY, Inc*., 908 F. Supp. 2d 344, 346 (E.D.N.Y. 2012)) (citing *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006)); *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012) (quoting *Myers*, 624 F.3d at 555). If the court decides in the affirmative, then the proposed class members must consent in writing to be bound by the result of the suit, or "opt-in." *McGlone,* 867 F. Supp. 2d at 442 (citing *Cunningham v. Elec. Data Sys. Corp*, 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010)); *see* 29 U.S.C. § 216(b). The second step, which typically occurs after the completion of discovery, requires the court to make factual findings whether the class members are actually similarly situated. *Rosario v. Valentine Ave. Discount Store, Co.*, 828 F. Supp. 2d 508, 514 (E.D.N.Y. 2011) (quoting *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)). "At that juncture, the court examines the evidentiary record to determine whether the 'opt-in' plaintiffs are, in fact, similarly situated to the named plaintiff." *Bifulco*, 262 F.R.D. at 212 (quoting *Hens v. ClientLogic Operating Corp*., No. 05-381S, 2006 WL 2795620, at *4 (W.D.N.Y. Sept. 26, 2006)) (internal quotation marks omitted).

The instant motion concerns only the first step — whether the proposed opt-in members are "similarly situated" such that conditional certification should be granted. At this stage, "the evidentiary standard is lenient," *Bifulco*, 262 F.R.D. at 212 (quoting *Rubery v. Buth-Na-Bodhaige, Inc*., 569 F. Supp. 2d 334, 336 (W.D.N.Y. Aug. 8, 2008)), and plaintiffs need only "make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Myers*, 624 F.3d at 555 (quoting *Hoffmann*, 982 F. Supp. at 261); *see, e.g.*, *Perez v. Allstate Ins. Co*., No. 11-CV-1812, 2014 WL 4635745, at *5 (E.D.N.Y. Sept. 16, 2014); *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 552 (S.D.N.Y. 2013); *Cano v. Four M Food Corp*., No. 08-CV-3005, 2009 WL 5710143, at *3

(E.D.N.Y. Feb 3, 2009); *Doucoure v. Matlyn Food, Inc.*, 554 F. Supp. 2d 369, 372 (E.D.N.Y. 2008). "In making this showing, 'nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan' is required." *Sexton v. Franklin First Fin., Ltd.*, No. 08-CV-4950, 2009 WL 1706535, at *3 (E.D.N.Y. June 16, 2009) (quoting *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005)). Moreover, courts have repeatedly stated that Section 216(b)'s "similarly situated" requirement is "considerably less stringent" than the requirements for class certification under Federal Rule of Civil Procedure 23, and "that a party seeking to maintain a collective action need not meet the requirements of Rule 23 for class certification." *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 481 (E.D.N.Y. 2001) (collecting cases); *see Dilonez v. Fox Linen Serv., Inc.*, 35 F. Supp. 3d 247, 252 (E.D.N.Y. 2014) (citing *Puglisi*, 998 F. Supp. 2d at 98–99, at *2; Fed. R. Civ. P. 23) (stating that a collective action under the FLSA "is different than a typical class action under the Federal Rules of Civil Procedure, the strict requirements of which – numerosity, commonality, typicality, and adequate representation – do not apply to a collective action").

At the initial certification stage, courts do not require proof of an actual FLSA violation but rather require the existence of a "'factual nexus' [] between the plaintiff's situation and the situation of other potential plaintiffs." *Sobczak v. AWL Indus., Inc.*, 540 F. Supp. 2d 354, 362 (E.D.N.Y. 2007) (quoting *Wraga v. Marble Lite, Inc.*, No. 05-CV-5038, 2006 WL 2443554, at *1 (E.D.N.Y. Aug. 22, 2006)); *see Fa Ting Wang v. Empire State Auto Corp.*, No. 14-CV-1491, 2015 WL 4603117, at *6 (E.D.N.Y. 2015); *see also Calderon v. King Umberto, Inc.*, 892 F. Supp. 2d 456, 459 (E.D.N.Y. 2012) (quoting *Sobczak*, 540 F.Supp.2d at 362) (citing *Jackson v. N.Y. Telephone Co.*, 163 F.R.D. 429, 431 (S.D.N.Y. 1995)). This determination is typically based on the pleadings, affidavits and declarations submitted by the plaintiff or plaintiffs. *See*

*generally Fa Ting Wang*, 2015 WL 4603117, at *5-6 (citing *Kalloo v. Unlimited Mech. Co. of N.Y., Inc.*, 908 F. Supp. 2d 344, 346 (E.D.N.Y. 2012); *Brabham v. Mega Tempering & Glass Corp.*, No. 13 Civ. 54, 2013 WL 3357722, at *3 (E.D.N.Y. July 3, 2013)); *see also Robles v. Liberty Rest. Supply Corp.*, No. 12-CV-5021, 2013 WL 6684954, at *5 (E.D.N.Y. Dec. 18, 2013) (citing the same).

"Although plaintiff's 'burden of proof is low, it is not non-existent — certification is not automatic.'" *Elamrani v. Henry Limousine, Ltd.*, No. CV20152050, 2016 WL 5477590, at *4 (E.D.N.Y. Sept. 28, 2016) (quoting Sanchez v. JMP Ventures, L.L.C., 2014 WL 465542, at *1 (S.D.N.Y. 2014)). As the Second Circuit has explained, "[t]he 'modest factual showing' cannot be satisfied simply by 'unsupported assertions.'" *Myers*, 624 F.3d at 555 (quoting *Dybach v. State of Fla. Dep't of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991)); *see Morales v. Plantworks, Inc.*, No. 05-CV-2349, 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006) (quoting Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, 7B Federal Practice and Procedure: Civil 3d § 1807, at 487-53 (2005)) (stating that "conclusory allegations are not enough" to meet the "modest factual showing" at the first stage of collective action certification).

The standard of proof, however, should still remain "low . . . because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Myers*, 624 F.3d at 555 (citing *Hoffman*, 982 F. Supp. at 261) (emphasis in original); *see Trinidad*, 962 F. Supp. 2d at 553 (quoting the same). With this in mind, courts have found that the allegations in the pleadings and the "personal observations of one plaintiff's affidavit" are "sufficient to make the modest factual showing necessary to conditionally certify [a] class." *Hernandez v. NGM Mgmt. Grp. LLC*, No. 12-CV-7795, 2013 WL 5303766, at *3 (S.D.N.Y. Sept. 20, 2013) (collecting cases); *see Ella Shillingford v. Astra Home Care, Inc. d/b/a True Care Home*

*Healthcare*, No. 16 CIV. 6785, 2018 WL 1033243, at *3 (S.D.N.Y. Feb. 23, 2018) (citing

*Escobar v. Motorino E. Vill. Inc.*, No. 14 Civ. 6760, 2015 WL 4726871, at *2 (S.D.N.Y. Aug.

10, 2015)) ("Accordingly, an FLSA collective action may be conditionally certified upon even a

single plaintiff's affidavit."); *see also Cabrera v. Stephens*, No. 16CV3234, 2017 WL 4326511,

at *5 (E.D.N.Y. Sept. 28, 2017) (citing *Juarez, v. 449 Restaurant, Inc.*, 29 F. Supp. 3d 363, 369

(S.D.N.Y. 2014); *Doucoure*, 554 F. Supp. 2d at 374) ("Conditional certification is regularly

granted based upon a complaint and one or two affidavits that collectively demonstrate the

requisite nexus."); *see also Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-CV-2625, 2015 WL

4240985, at *3 (S.D.N.Y. July 13, 2015) (finding that the allegations in the complaint and the

affidavit of one named plaintiff "met the minimal burden at this preliminary stage of

demonstrating that [the plaintiffs] were subject to a common policy or practice and were

'similarly situated' to one another and to potential opt-in plaintiffs").

### B. Notice of Pendency

"Neither the [FLSA], nor other courts, have specifically outlined what form court-

authorized notice should take nor what provisions the notice should contain." *Moore v. Eagle

Sanitation, Inc.*, 276 F.R.D. 54, 59 (E.D.N.Y. 2011) (quoting *Fasanelli v. Heartland Brewery,

Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007)) (internal quotation marks omitted). "The

Supreme Court has abstained from reviewing the contents of a proposed notice under § 216(b)

noting 'we decline to examine the terms of the notice ... We confirm the existence of the trial

court's discretion, not the details of its exercise.'" *Id*. (quoting *Hoffmann–La Roche, Inc. v.

Sperling*, 493 U.S. 165, 170, 110 S.Ct. 482, 486, 107 L.Ed.2d 480 (1989)); *Contrera v. Langer*,

278 F. Supp. 3d 702, 721 (S.D.N.Y. 2017) (quoting *Martin v. Sprint/United Mgmt. Co*., No. 15-

5237, 2016 WL 30334, at *15 (S.D.N.Y. Jan. 4, 2016) (internal quotation marks omitted))

("Upon authorizing the distribution of notice to potential opt-in plaintiffs, the district court maintains 'broad discretion' over the form and content of the notice.") (internal quotation marks omitted). "When exercising its broad discretion to craft appropriate notices in individual cases, District Courts consider the overarching policies of the collective suit provisions" and whether the notice provides "accurate and timely notice concerning the pendency of the collective action, so that [an individual receiving the notice] can make an informed decision about whether to participate." *Fasanelli*, 516 F. Supp. 2d at 323 (quoting *Hoffmann-La Roche, Inc.*, 493 U.S. at 170, 110 S. Ct. 482) (internal quotation marks omitted); *Arciello v. Cty. of Nassau*, No. 16CV3974, 2017 WL 4998074, at *8 (E.D.N.Y. Oct. 30, 2017) (quoting *Hernandez v. Immortal Rise, Inc.*, No. 11 CV 4360, 2012 WL 4369746, at *2 (E.D.N.Y. Sept. 24, 2012)). With these principles in mind, the Court turns to Plaintiffs' motion and Defendants' opposition.

## IV. DISCUSSION

### A. Conditional Certification

Plaintiffs seek, among other relief,

> Conditional certification of this action as a representative collective action pursuant to the FLSA, 29 U.S.C. § 216, on behalf of all current and former hourly employees of Perfume Worldwide, Inc. who have been employed at any time during the three (3) year period immediately preceding the filing of the complaint through to the present time (the "Covered Employees").[2]

---

[2]     The Court notes that the scope of the proposed collective set forth in the Complaint appears to differ from that which is sought in Plaintiff's motion for conditional certification. The Complaint states the following:

> The Named Plaintiffs brings the FLSA claim, the First Cause of Action, on behalf of themselves and other similarly situated persons who were current and former workers employed by the Defendant, at any time during the three year period prior to the filing of this complaint and who elect to opt-in to this action

Plaintiff's Memorandum of Law in Support of Motion for Conditional Collective Certification and for Court Facilitation of Notice Pursuant to 29 U.S.C. § 216 ("Pls.' Mem.") [DE 12] at 1; *see* Proposed Notice, annexed as Exhibit 1 to Notice of Plaintiffs' Motion for Conditional Collective Certification and for Court Facilitation of Notice Pursuant to 29 U.S.C. § 216(b) ("Proposed Notice") [DE 11-1]. In moving for conditional certification, Plaintiffs rely on facts alleged in the Complaint as well as their own Declarations. Having reviewed these materials, the Court finds that the named Plaintiffs have made the "modest factual showing" necessary to demonstrate that they and the potential opt-ins together "were victims of a common policy or plan that violated the law." *See Zhenkai Sun v. Sushi Fussion Express, Inc.*, No. 16CV4840, 2018 WL 1168578, at *3 (E.D.N.Y. Mar. 6, 2018) (quoting *Doucoure*, 554 F. Supp. 2d at 372) (citing *Myers*, 624 F.3d at 555).

In their Declarations, Plaintiffs describe the alleged "common policy or plan" which they assert violates the FLSA and NYLL. Their allegations are consistent with the allegations set forth in the Complaint with respect to each named plaintiff. Aracely Valladares ("A. Valladares") states that she was employed as a warehouse worker by Perfume Worldwide, Inc. from June 2015 to January 2016. *See* Declaration of Aracely Valladares ("A. Valladares Decl."), annexed as Exhibit 1 [DE 13-1] to the Declaration of Steven J. Moser, Esq.[3] ("Moser Decl.")

---

Plaintiff's motion papers, however, seek certification of a somewhat more narrow collective of "hourly employees." Since Plaintiffs' seek certification of a smaller rather than a larger collective, and Defendants do not raise an objection to the scope of the collective, the Court finds it unnecessary to address this discrepancy further.

[3] The exhibits relating to Plaintiffs' motion are somewhat unusually compiled and referenced. Attorney Moser's Declaration references only the Complaint as being annexed to his Declaration [DE 13]. However, attached to that Complaint are four Exhibits -- named Plaintiff declarations -- which are not cited in the Complaint at all. Yet the declarations are referenced in Plaintiffs' Memorandum of law, which is filed as a separate document. *See* DE 12. For clarity

[DE 13], ¶ 3; *see* Compl. ¶ 74. Aracely Valladares initially worked at the Defendants' facility in

Syosset until all employees at that location were relocated to the Defendants' Ronkonkoma

facility, which had approximately 200 employees. A. Valladares Decl. ¶¶ 4-5. In her

Declaration, Aracely Valladares states that Defendant Golia "told me that I would start work at 9

a.m., that I would have a 20 minute morning break, a 40 minute meal period, and that I would

work until 7 p.m. A. Valladares Decl. ¶ 8; *see* Compl. ¶ 76. Aracely Valladares further

represents that the morning break was from 10:40 a.m. to 11 a.m. A. Valladares Decl. ¶ 10;

Compl. ¶ 76. She explains that when she received her first paycheck, she noticed that her hours

"were short" and discussed the discrepancy with her colleagues, who informed her that

Defendants were deducting the 20 minute morning break and 40 minute lunch break from their

pay. *Id.* ¶ 11; *see* Compl. ¶ 78. Aracely was also informed that "[i]t has always been like this."

A. Valladares Decl. ¶ 12. At some point, Aracely confronted Osman Chavez, the manager of all

warehouse employees, about the unlawful reduction to her pay. A. Valladares. ¶ 13. According

to the Aracely's Declaration, Chavez too responded that "[i]t's always been that way." *Id.* ¶ 14.

The regular shift for warehouse and office workers is 9 a.m. to 7 p.m. according to Aracely. *Id.*

¶ 8; *see* Compl. ¶ 82. Defendants' failure to compensate employees for the 20-minute break

resulted in reduced overtime wages. A. Valladares Decl. ¶ 15; *see* Compl. ¶ 79. Lastly, Aracely

explains that "she has spoken with other employees of Perfume Worldwide who confirmed that

Perfume Worldwide does not compensate employees for the 20 minute morning break." *Id.* ¶ 16.

Those employees with whom she spoke are identified by name as: Tony Lemus (a manager),

Osman Chávez (the warehouse manager), Fernando Alejandro Cruz, Griselda Reyes, Cristino

_____

and to facilitate finding the portions of the declarations referenced by Plaintiffs more easily, the
Court shall refer to each declaration separately by number as being annexed to the Moser
Declaration.

Gáleas, Maria de la Paz Rivas, José Maldonado, Oscar Palma, Alex Reyes and Mauricio Hernández.  *Id.*

Plaintiffs also submit the supporting Declaration of Yosely Espinal Henriquez. Henriquez was employed by Perfume Worldwide from July 2015 to December 2015 at the company's Syosset location.  *See* Declaration of Yosely Espinal Henriquez ("Henriquez Decl.") [DE 13-2], annexed as Exhibit 2 to the Moser Decl. [DE 13] ¶¶ 3-4; *see* Compl. ¶¶ 95-96.  The Syosset facility had at least 80 employees.  Henriquez Decl. ¶ 4.  From July 2015 to August 2015, Henriquez worked as a warehouse worker, and from August 2015 until December 2015, she worked as an office employee.  Henriquez Decl. ¶ 6-7; *see* Compl. ¶ 97.  Henriquez states that "[e]ach day all warehouse and office employees had a morning break of 20 minutes and a 40 minute meal period."  Henriquez Decl. ¶ 8; *see* Compl. ¶ 98.  She explains that the morning break was announced over the Public Announcement system at 10:40 a.m.  Henriquez Decl. ¶ 11; *see* Compl. ¶ 98.  Like Aracely Valladares, Henriquez noticed from her first paycheck that she was not compensated for the 20-minute morning break.  Henriquez Decl. ¶ 10; *see* Compl. ¶ 28.  Henriquez represents that she as well as most other works worked from 7 a.m. to 5 p.m., Monday through Friday, and therefore worked more than 40 hours per week.  Henriquez Decl. ¶¶ 13-15.  Consequently, the Defendants' failure to pay for the break resulted in a loss of overtime wages.  *Id.* ¶ 15; *see* Compl. ¶ 99.  Henriquez explains that she was present when Aracely Valladares confronted the warehouse manager, Osman Chavez, regarding the company's failure to compensate employees for the morning break and overheard him say in response to Aracely Valladares that "it's always been like that."  Henriquez Decl. ¶ 16.

Plaintiffs also submit the supporting declaration of another employee, Carlos Reyes. Declaration of Carlos Reyes ("Reyes Decl.") [DE 13-3], annexed to the Moser Decl. as

Exhibit 3. Reyes states that he was employed by Perfume Worldwide from approximately August 2012 to March 2016. Reyes Decl. ¶ 3; *see* Compl. ¶ 84. After initially working at a facility operated by Perfume Worldwide in Plainview, New York, Reyes was later transferred to the company's Syosset facility, along with all the other workers from the Plainview facility. Reyes Decl. ¶¶ 4, 6; *see* Compl. ¶ 86. Ultimately, all employees were relocated to a facility in Ronkonkoma, which had approximately 150 to 200 employees. Reyes Decl. ¶¶ 8-9; *see* Compl. ¶ 85. Reyes initially worked as a warehouse worker but later became an office worker, which included customer service duties. Reyes Decl. ¶ 12; *see* Compl. ¶ 86. Reyes maintains that "[a]ll hourly employees, including warehouse and office workers, took a 20 minute morning break and a 40 minute lunch, during my entire employment with Perfume Worldwide." Reyes Decl. ¶ 13; *see* Compl. ¶ 87. As with Aracely Valladares and Yosely Henriquez, when Reyes received his first paycheck, he noticed that Perfume Worldwide was deducting an hour each day from his pay. Reyes Decl. ¶ 14; *see* Compl. ¶ 87. At that time, Reyes was unaware that Perfume Worldwide was required to pay him for the 20-minute break. Reyes Decl. ¶ 15.

The final declaration submitted by Plaintiffs in support of their motion is that of Marta Valladares ("M. Valladares"). *See* Declaration of Marta Valladares ("M. Valladares Decl.") [DE 13-4], annexed as Exhibit 4 to the Moser Decl.[4] Perfume Worldwide employed Marta Valladares as a warehouse worker from August 2014 to February 2016. M. Valladares Decl. ¶ 3; *see* Compl. ¶ 65. Marta Valladares began working for Perfume Worldwide at its Plainview location. M. Valladares Decl. ¶ 5; Compl. ¶ 66. Like the other named Plaintiffs, she states that

---

[4] Marta Valladares did not sign her Declaration. However, even if the Court excludes her declaration from consideration, certification of the collective sought by Plaintiffs would still be appropriate in light of the allegations set forth in the Complaint and the three other declarations submitted. The Court also notes that Defendants have not filed any objection to certification of the collective Plaintiffs seek.

the company later moved to a location in Syosset and then to a facility in Ronkonkoma. M. Valladares Decl. ¶ 5; *see* Compl. ¶ 67. According to Marta, "[t]here were at least 70 employees at the Plainview facility, 100 employees at the Syosset facility, and 150 employees at the Ronkonkoma facility." M. Valladares Decl. ¶ 6. She further states that during her entire employment with Perfume Worldwide, there was a break from 10:40 a.m. to 11 a.m. and a 40-minute lunch break. M.Valladares Decl. ¶ 7; *see* Compl. ¶ 67. At the Defendants' Plainview location, Marta recalls that, the breaks were signaled by a bell and at the Syosset and Ronkonkoma facilities, they were signaled by an announcement. M. Valladares Decl. ¶ 8. After her first week, she noticed that Perfume Worldwide was deducting a full hour each day from her pay. *Id.* ¶ 10. This resulted in Marta's not being paid overtime wages. Compl. ¶ 68. When Marta inquired with the warehouse manager, Osman, about the deduction, she was told that "the workers had said that 15 minutes was not enough for the morning break so Piyush Golia (the owner) decided to give all employees a 20 minute break and a 40 minute meal period, but the entire hour would be deducted." M. Valladares Decl. ¶ 11. According to Marta, when she told Osman that she thought the defendant's conduct was illegal, he responded "it is what it is." *Id.* ¶ 12.

Although Plaintiffs have not provided the Court with a Declaration completed by Nelson Castillo, the fifth and final named plaintiff in this case, Plaintiffs do set forth allegations with regard to Nelson Castillo in the Complaint. Defendants employed Nelson Castillo as a warehouse worker from November 2013 until April 2017. Compl. ¶ 55. He initially worked at Defendants' Plainview location but was later relocated to its facility in Ronkonkoma. *Id.* ¶ 56. Like the other named plaintiffs, Castillo took a 20 minute uncompensated break each morning from 10:40 a.m. to 11 a.m. *See id.* ¶¶ 57-58. Castillo worked from 7 a.m. to 7 p.m. Monday

through Friday, and often worked on Saturday as well. *Id.* ¶ 59. As such, his workweek typically exceeded 40 hours each week. *Id.* According to the Complaint, in most instances, Defendants' deduction of the 20-minute morning break resulted in the failure to pay Castillo overtime wages. *Id.* ¶ 60.

The Court finds that these allegations as set forth in Plaintiffs' Declarations as well as in the Complaint support an inference that Plaintiffs have been subjected to a common policy of failing to compensate hourly employees for the 20-minute morning break. *See generally, Keawsri,* 2018 WL 279756, at *5 (quoting *Myers*, 624 F.3d at 554–55) (At the conditional certification stage, "plaintiffs need only 'make a modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law.'"); *Bhumithanarn*, 2015 WL 4240985, at *3; *Kemper*, 2012 WL 4976122, at *2; *Khamsiri*, 2012 WL 1981507, at *1; *Klimchak v. Cardrona, Inc*., No. CV–09–4311, 2011 WL 1120463, at *4–6 (E.D.N.Y. Mar. 24, 2011) (granting conditional certification at the initial stage of discovery where the two named plaintiffs and two opt-in plaintiffs submitted affidavits); *Cano v. Four M Food Corp*., No. 08–CV–3005, 2009 WL 5710143, at *6 (E.D.N.Y. Feb. 3, 2009) (granting conditional certification, finding that sworn statements from the plaintiffs "set[ ] forth defendants' common denial of overtime pay, the named plaintiffs' personal knowledge of and the names of other coworkers who were allegedly subject to the same denial of overtime pay."); *Iriarte v. Redwood Deli & Catering, Inc*., No. 07–cv–5062, 2008 WL 2622929, at *3 (E.D.N.Y. June 30, 2008) (granting certification on the basis of plaintiff's one affidavit).

Moreover, an employer's failure to count a 20-minute break towards an employee's working hours violates the FLSA. "Under both the FLSA and NYLL, 'all of the time worked during a continuous workday is compensable, save for bona fide meal breaks.'" *Hernandez v.*

15

*Jrpac Inc.*, No. 14 CIV. 4176, 2016 WL 3248493, at *27 (S.D.N.Y. June 9, 2016) (citing *Hart v. Rick's Cabaret Intern., Inc.*, 60 F. Supp. 3d 447, 475 n.15 (S.D.N.Y. 2014); 29 C.F.R. § 785.19(a), *recognized as invalid on other grounds by Havrilla v. United States*, 125 Fed. Cl. 454, 464 (2016) (Circuit Courts of Appeals have rejected the "complete relief" portion of the regulation's definition of "meal" and instead "examine[] the totality of the circumstances to determine whether the employee spends his meal period engaged in activities that are predominantly for his own benefit or activities that instead inure predominantly to the benefit of his employer." (collecting cases)). Short rest periods running from "5 minutes to about 20 minutes" must be counted toward an employee's "working hours." 29 C.F.R. § 785.18; *see Melgadejo v. S & D Fruits & Vegetables Inc.*, No. 12CIV6852, 2015 WL 10353140, at *9 n.7 (S.D.N.Y. Oct. 23, 2015), *report and recommendation adopted sub nom. Melgadejo v. S&D Fruits & Vegetables Inc.*, No. 12-CV-6852, 2016 WL 554843 (S.D.N.Y. Feb. 9, 2016); *see also Solis v. Cindy's Total Care, Inc.*, No. 10 CIV. 7242, 2012 WL 28141, at *9 (S.D.N.Y. Jan. 5, 2012); *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 121 n.34 (S.D.N.Y. 2011); *Daniels v. 1710 Realty LLC*, No. 10-CV-0022, 2011 WL 3648245, at *6 n.6 (E.D.N.Y. Aug. 17, 2011) ("Rest periods ... of 5 minutes to about 20 minutes [ ] are common in industry ... [t]hey must be counted as hours worked.") (internal quotation marks omitted), *aff'd*, 497 Fed. App'x. 137 (2d Cir. 2012); *Wong v. Hunda Glass Corp.*, 09 Civ. 4402, 2010 WL 2541698, at *3 (S.D.N.Y. June 23, 2010).

The allegations in the Complaint and Plaintiffs' Declarations support an inference that Plaintiffs and other potential opt-ins are similarly situated. So does Defendants' representation that they do not challenge the conditional certification sought by Plaintiffs.[5] *See* Defendants'

---

[5] The Court notes that although Defendants do not challenge the conditional certification sought by Plaintiffs, they do reserve all defenses. Defs.' Opp'n. at 1-2. In this regard, Defendants explain that "hundreds of defendants' employees who otherwise potentially could

Memorandum of Law in Limited Opposition to Motion for Conditional Certification ("Defs.' Opp'n.") [DE 24] at 1; *see also Johnson v. Carlo Lizza & Sons Paving, Inc.*, 160 F. Supp. 3d 605, 611 (S.D.N.Y. 2016) ("[D]efendants' decision not to oppose the motion for conditional certification, even in part, is persuasive reason to authorize notice as requested."). The Court notes that Defendants will have an opportunity later in the litigation to move for de-certification of the collective should they believe that members of the collective are not actually similarly situated.

### B. Proposed Notice to Opt-ins

Although Defendants do not object to certification of Plaintiffs' proposed collective, they do vigorously contest certain aspects of Plaintiffs' proposed notice to potential opt-ins. Defendants' argue that Plaintiffs' notice "unfairly amounts to an advertisement of the services of plaintiff's counsel." Defs.' Opp'n. at 2; Declaration of Jacques Catafago in Limited Opposition ("Catafago Decl.") [DE 23] ¶ 4. In particular, Defendants' object to what they believe to be the improper use of "Moser Employment Law" as opposing counsel's firm name and the use of that name throughout the proposed notice. Defs.' Opp'n. at 2-3; Catafago Decl. ¶ 4. Defendants further object to the placement of "Questions? Contact Nadia Estrada" and Ms. Estrada's contact information at the bottom of each page of the notice, and to Plaintiffs' directive that opt-ins mail

---

join this suit entered into binding arbitration agreements requiring them to arbitrate all such disputes and so precluding their participation in this case." *Id.* Defendants do not assert this defense as to the named Plaintiffs since they are not signatories to the arbitration agreement. *Id.* Defendants acknowledge that the question whether an opt-in is precluded from pursuing his or her claim by virtue of his/her signing an arbitration agreement is premature. *Id.* at 2; *Racey v. Jay-Jay Cabaret, Inc.*, No. 15 CIV. 8228, 2016 WL 3020933, at *5 (S.D.N.Y. May 23, 2016) (quoting *Romero v. La Revise Assocs., L.L.C.*, 968 F. Supp. 2d 639, 647 (S.D.N.Y. 2013) (internal quotation marks omitted)) (citing *Lloyd v. J.P. Morgan Chase & Co.*, No. 11 Civ. 9305, 2014 WL 2109903, at *7 (S.D.N.Y. Apr. 1, 2014)) ("[C]ourts have consistently held that the existence of arbitration agreements is irrelevant to collective action approval because it raises a merits-based determination.").

their forms to Plaintiffs' counsel rather than directly to the Court.  Defs.' Opp'n. at 2; Catafago

Decl. ¶ 4.  These objections are set forth in the body of Defendants' Memorandum opposing

portions of the Notice of Pendency as well as in Attorney Catafago's Declaration.  Moreover,

Attorney Catafago's Declaration includes Defendants' own version of the proposed notice and

opt-in form.  *See* Defendants' Proposed Notice, annexed as Exhibit A [DE 23-1] to Catafago

Decl.  The objections set forth in Defendants' proposed notice go well beyond the three areas

noted here.[6]

### i. *Improper Use of Trade Name*

In support of their argument that "Moser Employment Law" constitutes an improper

trade name, Defendants cite, in part, 22 NYCRR § 1200.7[B], which prohibits a lawyer in private

practice from practicing "under a trade name…or a firm name containing names other than those

of one or more of the lawyers in the firm."  Defendants' counsel Catafago explains that he

"raised with plaintiffs' counsel the issue of the repeated and *improper use* of the trade name

'Moser Employment Law' but could not reach any resolution."  Catafago Decl. ¶¶ 4, 6.

According to the representations made in Plaintiffs' Reply Memorandum, it appears that

Defendants' objection was subsequently resolved.  Steven Moser, counsel for Plaintiffs,

represents to the Court that he changed the name of his firm to "Moser Law Firm, P.C.,"

effective September 20, 2017, after defense counsel brought the issue regarding the use of the

term "employment" to his attention.  Plaintiffs' Reply Memorandum of Law in Support of

Motion for Conditional Certification of FLSA Claims ("Pls.' Reply") [DE 27] at 2.  Based on

this information, the Court directs Attorney Moser to submit a revised proposed notice to the

---

[6]     The Court points out that Defendants' proposed notice is not a red-lined version of
Plaintiffs' version.   However, in his Reply papers, Plaintiffs' counsel provides a red-lined
version received from Defendants, which is different from the proposed notice that Defendants
provided with their Opposition.

Court reflecting his firm's name change, as well as other revisions discussed below, within 15 days of the entry of this Memorandum and Order.

### ii. Placement of "Questions? Contact Nadia Estrada"

Defendants further object to the placement of the following message at the bottom of each page of Plaintiffs' proposed notice:

**Questions?**
**Contact Nadia Estrada**
nadia@moseremploymentlaw.com
**(516) 671-1150**

Defendants argue that this message constitutes an improper solicitation for employees to call Plaintiffs' counsel. Defs.' Opp'n. at 2; Catafago Decl. ¶ 4. In reply, Plaintiffs' counsel states that the inclusion of this message is supported by the Federal Judicial Center's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (the "Guide"). https://www.fjc.gov/sites/default/files/2012/ NotCheck.pdf. Pls.' Reply at 2-3. Specifically, counsel cites the following provision of the Guide:

> Can the class get answers from a trained administrator or from class counsel?
>
> Even the best notice will generate questions from class members. A toll-free number call center, an interactive website staffed by trained administrators, and class counsel who are accessible to the people they represent are reasonable steps to help class members make informed decisions.

*Id.* Plaintiffs' counsel also provides links to various template notices drafted by the Federal Judicial Center in the class action settlement context which include, at the bottom of each page, contact information for class members to obtain more information. *See id.* at 3. Moreover, counsel represents that courts within this district have adopted proposed opt-in forms containing a similar message. *See id.* (citing *De Los Santos v. New Food Corp.*, 14-4541; *see also* Pls.'

Mem. at 11 (citing *Perez v. Allstate Ins. Co.*, No. 11-CV-1812, 2014 WL 4635745 (E.D.N.Y. Sept. 16, 2014)).

At the outset, the Court notes that the Federal Judicial Center's Guide and sample notices are just that — guidance and samples. A review of those notices reveals that the contact information set forth at the bottom of each page appears to be that of the third-party claims administrator, not counsel for the plaintiffs. The Court also points out that as to *Perez v. Allstate Ins. Co.*, CV 11-1812, a review of the docket entries shows the parties negotiated the defendant's objections to the proposed notice and the defendants eventually *consented* to the version which contained a message similar to the one at issue in this case. *See* CV 11-8112 at docket entry 44; *see also* July 26, 2012 Electronic Order. Further, in *De Los Santos v. New Food Corp.*, CV 14-4541, defendants challenged the proposed notice on the grounds that it was premature — not on the basis of any message at the bottom of each page of the notice. *See* CV 14-4541 at docket entry 84, pp.13-14. According to the transcript, the parties ultimately agreed on the notice. *See* Transcript of November 23, 2015 Hearing before Judge Bianco in *De Los Santos v. New Food Corp*, CV 14-4541, docket entry 91 at 20. Judge Bianco granted the motion for conditional certification and approved the proposed notice from the bench. CV 14-4541 at docket entries 90 and 91.

This Court has previously rejected the placement of a message similar to the one at issue here. *See Tanski v. Avalon Bay*, CV 15-6260, docket entry 56 at 41 (directing the plaintiff to remove the language "For Questions, Please Contact: Frank Schirrpa" [the plaintiff's counsel] from the bottom of each page of the Notice.). Likewise, the Court is directing Plaintiffs in the instant case to remove "Questions? Contact Nadia Estrada," as well as her contact information, from the bottom of each page of the proposed notice. The Court finds this contact information

inappropriate in any event because the domain name used (*i.e.*,

"[nadia@moseremploymentlaw.com](mailto:nadia@moseremploymentlaw.com)" carries with it the same issue which caused counsel to

change the name of his law firm in the first instance.

### iii. Submission of Opt-in Forms

Plaintiffs' proposed notice instructs opt-ins to mail their completed form to Plaintiffs'

counsel. Defendants challenge this directive, pointing out that this Court has previously rejected

such instruction even when its inclusion was unopposed. Defs.' Opp'n. at 2. Instead,

Defendants seek an Order directing opt-ins to mail the form to the Court. *See id.* Plaintiffs argue

that requiring the opt-ins to mail their forms to the Court "is likely to have a chilling effect on

participation." Pls' Reply at 4. Plaintiffs' counsel explains that he represents "hundreds of

immigrant workers," and they are more comfortable dealing with an attorney than with the

Court. *Id.* Moreover, counsel adds, he is willing to assume the burden of redacting and filing the

forms on ECF. *Id.*

"Courts within this Circuit have split on whether the consent forms should be returned

to the Clerk of the Court or to plaintiff's attorney." *Hotaranu v. Star Nissan Inc.*, 16 CV 5320,

2017 WL 1390808, at *6 (E.D.N.Y. Apr. 12, 2017) (quoting *Dilonez*, 35 F. Supp. 3d at 257)

(internal quotation marks omitted); *Arciello v. Cty. of Nassau*, No. 16-cv-3974, 2017 WL

4998074, at *7 (E.D.N.Y. Oct. 30, 2017) (collecting cases) ("Although courts in this Circuit are

split on this issue, where the notice states that potential plaintiffs may select their own attorney,

as the Proposed Notice does here, 'there is only a minimal risk that opt-in plaintiffs will be

discouraged from seeking their own counsel.'"); *Martin v. Sprint/United Mgmt. Co.*, 15 Civ.

5237, 2016 WL 30334, at *18 (S.D.N.Y. Jan. 4, 2016) (colleting cases) ("The majority of courts

[ ] have directed opt-in plaintiffs to mail the consent forms to plaintiffs' counsel."); *Dilonez*, 35

F. Supp. 3d at 257 (collecting cases); *Velasquez v. Digital Page, Inc.*, No. CV 11-3892, 2014 WL

2048425, at *14 (E.D.N.Y. May 19, 2014) ("The common practice in the Eastern District is to have opt-in plaintiffs send their consent forms to the Clerk of the Court rather than to plaintiffs' counsel.") (collecting cases).

Courts have directed that opt-in forms be sent to the Clerk of the Court even in cases in which the collective was comprised of immigrant workers, as Plaintiffs' counsel represents is the case here. *See Hanming Feng v. Soy Sauce LLC*, No. 15 CV 3058, 2016 WL 1070813, at *6 (E.D.N.Y. Mar. 14, 2016) (citing *Lujan*, 2011 WL 317984, at *13 ("[r]ecent cases in this district have suggested that such a procedure [(mailing opt-in forms to plaintiff's counsel)] implicitly discourages opt-in plaintiffs from selecting other counsel")) (directing that opt-in forms be sent to the Court where the "majority of the employees of the Defendants are Chinese and Hispanic immigrants whom [*sic*] are not well versed in the English language....") (internal quotation marks omitted); *see also Hernandez v. Immortal Rise, Inc*., No. 11 CV 4360, 2012 WL 4369746, at *2, *9 (E.D.N.Y. Sept. 24, 2012) (directing that the notice and consent to join form be mailed directly to the Clerk of the Court where plaintiffs represented that many of their co-workers "are immigrants and are thus unaware of their right to fair wages or afraid to raise their claims against defendants") (citing the same).  In light of these cases, this Court, in its discretion, is directing that opt-in forms be mailed to the Clerk of the Court.  **The Court is also directing the Clerk of the Court to redact the address and telephone number of each opt-in prior to filing the forms on ECF**.

### iv.      *Opt-in Period*

Plaintiffs' proposed notice provides for a 60-day opt-in period.  Defendants state in the body of their opposition that they "have withdrawn their objection to the 60 day period that plaintiffs have proposed for the opt in period."  Defs.' Opp'n. at 2 n.1.  However, in their

proposed notice attached as Exhibit A to the Catafago Declaration, Defendants demand a revision limiting the opt-in period to 30 days from the date of the notice (although Defendants' proposed notice reverts back to a 60 day opt-in period in subsequent sections).  *See* Defs.' Proposed Notice.  The Court points out that "a 60–day notice period for potential plaintiffs is common practice under the FLSA," and finds the same to be appropriate and reasonable.  *Cohan v. Columbia Sussex Mgmt., LLC*, No. 12-3203, 2013 WL 8367807, at *12 (E.D.N.Y. Sept. 19, 2013) (collecting cases); *see, e.g.*, *Perez v. La Abundancia Bakery & Rest. Inc*., No. 17-CV-0656, 2017 WL 3382068, at *9 (E.D.N.Y. Aug. 4, 2017) (citing *Robles*, 2013 WL 6684954, at *10 (collecting cases)) ( "Courts in this Circuit have frequently permitted opt-in periods of 60 days, particularly where there may be difficulty reaching some of the potential opt-in plaintiffs."); *Fa Ting Wang*, 2015 WL 4603117, at *11 (quoting *Velasquez*, 2014 WL 2048425, at *12) (collecting cases) ("Courts in this Circuit 'routinely restrict the opt-in period to sixty days.'"); *Whitehorn*, 767 F. Supp. 2d at 451-52.  The Notice shall therefore provide that opt-ins have 60 days to return the consent to join form to the Clerk of the Court. [7]

### v.        *Language of Notice and Consent to Join Forms*

The Court now addresses each page of Plaintiffs' proposed notice separately.  The Court directs the parties to the Proposed Notice attached as Exhibit 1 to the Notice of Plaintiffs' Motion for Conditional Collective Certification and for Court Facilitation of Notice [DE 11] and Defendants Proposed Notice which is attached as Exhibit A to the Catafago Declaration [DE 23], as the operative documents from which the Court is working.

---

[7]        The Court notes that the Notice of Plaintiffs' Motion for Conditional Collective Certification and for Court Facilitation of Notice seeks an opt-in period of 90 days.  DE 11.  It appears that this is a typo, however, since Plaintiffs' Memorandum of Law and Proposed Notice both seek an opt-in period of 60 days, which is customary, as demonstrated.

### a. Page One

With regard to the first page of Plaintiffs' proposed notice, the Court adopts two of the revisions proposed by Defendants' counsel: (1) in the first bullet point, the following language shall be included: "these claims are being contested by Perfume Worldwide Inc. and Piyush Golia,"; and (2) in the box entitled "YOUR LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT," next to the column "ASK TO BE INCLUDED," counsel is directed to insert the name of defendant "Piyush Golia" after "Perfume Worldwide, Inc." All other changes to page one proposed by Defendants are overruled and shall not be implemented. However, as noted, the section listing contact to being made to Nadia Estrada is to be removed.

### b. Page Two

With regard to Section 1, "Why Did I Get This Notice," the Court directs counsel to amend the first sentence by replacing the phrase "on or after May 16, 2014" with "after May 16, 2014" in order to ensure that this provision is consistent with the other Sections of the Notice. Counsel are then directed to delete the two sentences which follow and replace them with the following language: "The federal court in the Eastern District of New York has authorized this Notice. The Court has taken no position regarding the merits of the Plaintiffs' claims or the Defendants' defenses." *See Fa Ting Wang*, 2015 WL 4603117, at *18-*19 (collecting cases) (requiring this language and collecting cases which required this language); *Velasquez*, 2014 WL 2048425, at *14 (same); *Alvarez v. IBM Restaurants Inc.*, 839 F. Supp. 2d 580, 588 (E.D.N.Y. 2012).

The Court directs that Section 2 ("What are the claims in this lawsuit?") shall remain as is.

Under Section 3 ("What are the Federal Overtime Claims?), the first paragraph shall remain the same since Defendants have not raised an objection. The Second paragraph shall be amended to read: "Perfume Worldwide Inc. and Piyush Golia strongly deny these claims."

Section 4 ("What are the New York State Labor Law Claims?") shall be amended in the same manner as Section 3.

With regard to Section 5 ("How has Perfume Worldwide responded?"), the Court adopts Defendants' proposed change, in part. The phrase "denies that workers were scheduled for a morning break" shall be removed since Defendants are in the best position to determine what their defenses are. However, the language regarding any determination by the Court is precluded since that issue is addressed in Section 6. Section 5 shall read as follows: "Perfume Worldwide, Inc. strongly denies that it failed to properly pay workers. In addition, through counsel, the company has interposed other defenses." The Court declines to adopt the remainder of Defendants' proposed changes.

Since Sections 6 through 9 are not contested, the Court adopts these sections as they appear in Plaintiff's Proposed Notice.

### c.    Page Three

Under Section 10 ("Can I join this lawsuit?"), counsel disagree at to the contents of the single sentence which makes up this Section. Defendants seek inclusion of the phrase "you must not be subject to an arbitration agreement." Whether an opt-in is precluded from pursuing his or her claim by virtue of their signing an arbitration agreement is premature at this stage — Defendants acknowledge this fact in their Opposition. Defs'. Opp'n. at 2 ("Defendants concede that such a defense is not ripe for determination at this preliminary stage."); *D'Antuono v. C & G of Groton, Inc*., No. 3:11CV33, 2011 WL 5878045, at *4 (D. Conn. Nov. 23, 2011) (collecting

cases) (a determination as to whether an employee signed an arbitration agreement and whether that agreement is enforceable "is irrelevant to class certification, because it raises a merits-based determination even though the courts must understand that the enforceability of those agreements will eventually need to be determined on an individual basis"); *Racey*, 2016 WL 3020933, at *5 (quoting *Romero*, 968 F. Supp. 2d at 647 (internal quotation marks omitted)) (citing *Lloyd*, 2014 WL 2109903, at *7) ("[C]ourts have consistently held that the existence of arbitration agreements is irrelevant to collective action approval because it raises a merits-based determination."). The Court will therefore "not limit recipients of the Notice on this ground." *Racey*, 2016 WL 3020933, at *5.

However, the Court finds that a phrase should have been included in Plaintiffs' version of Section 10 and directs the parties to revise Section 10 as follows:

> To be eligible to join this lawsuit, you must either be currently employed by Perfume Worldwide or have worked for Perfume Worldwide **as an hourly employee** after May 16, 2014.

As to Section 11 ("I'm still not sure if I am included"), the Court finds this provision unnecessary and therefore strikes it. Plaintiff's counsel may add the following sentence to Section 17 below ("How do I ask to be included in the case?"): "If you have questions about any information in this Notice, you may contact the Moser Law Firm."

Both sides disagree as to some of the language in Section 12 ("What happens if I join this lawsuit). The Court is amending Section 12 to read as follows:

> If you join this lawsuit, you will be bound by any ruling, settlement, or judgment, whether favorable or unfavorable. If there is a favorable resolution, either by settlement or judgment, and you qualify under the law, you will be entitled to some portion of the recovery.

> If you join this lawsuit and send your "Consent to Join" form to the Clerk of the Court of the United States District Court, Eastern District of New York, 100 Federal Plaza, Central Islip, NY 11722, you agree to have the Plaintiff and his counsel, The Moser Law Firm, P.C., 3 School Street, Suite 207B, Glen Cove, NY 11542, to act as your representative and make decisions on your behalf concerning the case, including approving any settlement. Decisions made and agreements entered into by the Plaintiff and his counsel will be binding on you if you join this lawsuit, subject only to the Court's discretion. If you hire your own attorney, you will be bound by decisions and agreements that your attorney makes on your behalf in this lawsuit.

> If you join this lawsuit, you may be asked to give testimony and information about your work for Perfume Worldwide, Inc. to help the Court decide whether you are owed any money. Plaintiff's counsel will assist you with this process. For this reason, if you join this lawsuit, you should preserve all documents relating to your employment which are currently in your possession.

### d.    Page Four

Section 13 ("What happens if I do nothing at all?") shall be revised to remove defendants' inclusion of the phrase "AM I OBLIGATED TO JOIN?" from the header. The Court finds the inclusion of this statement to be unnecessary and the emphasis placed on the statement by utilizing capital letters to be unwarranted. Further, this information is repeated in the first sentence which the defendants seek to insert in Section 13. The Court will permit the insertion of the following sentence as the opening sentence of Section 13: "You are not

obligated to join the lawsuit."  The remaining language of Section 13 is identical in both the Plaintiffs' version and the Defendants' version and therefore shall remain as is.  The Court points out that this Section also properly informs the reader that he/she may retain his/her own counsel for this litigation or for a separate individual lawsuit.

The Court finds Plaintiffs' statement in the first sentence of Section 14 ("Can Perfume Worldwide retaliate against me if I join the lawsuit?") to be an accurate statement of the law which may remain as part of the Notice.  However, counsel are directed to replace "Perfume Worldwide" with "anyone."  Plaintiffs' second sentence is stricken, as is the alternative language proposed by the Defendants.

Defendants have omitted Section 15 ("I am an undocumented immigrant. Can I still participate?") and Section 16 ("I don't speak English. Can I still participate?").  However, the Court finds it appropriate to include both Sections.  Courts regularly permit notices to include a statement informing recipients that immigration status is irrelevant to their right to recover under the FLSA.  *See e.g.*, *Keawsri*, 2018 WL 279756, at *7; *Gomez v. Terri Vegetarian LLC*, No. 17-CV-213, 2017 WL 2628880, at *3 (S.D.N.Y. June 16, 2017) ("[T]he Notice should be modified to advise recipients that their immigration status does not affect their entitlement to recover back wages or to participate in the lawsuit and that they have a right to participate in the action even if they are undocumented immigrants."); *Sanchez v. El Rancho Sports Bar Corp.*, No. 13 CIV. 5119, 2014 WL 1998236, at *4 (S.D.N.Y. May 13, 2014); *Kemper*, 2012 WL 4976122, at *5 (collecting cases).  The Court directs counsels' attention to *Colon v. Major Perry St. Corp.*, 987 F. Supp. 2d 451 (S.D.N.Y. 2013).  In *Colon,* the court approved the following language for inclusion in the notice of pendency:  "Federal law also permits you to join in this lawsuit and share in any recovery regardless of your immigration status. You will not be asked to disclose

whether you are a citizen or have a green card in order to participate in this collective action." 987 F. Supp. 2d at 464.  The Court hereby directs the parties to substitute this specific language for what currently appears in Section 15.  Section 16 may remain as it currently appears.

There are several disagreements among the parties as to the language in Section 17 ("How do I ask to be included in the case?").  In the header, Defendants have inserted the following question, all in capital letters:  "DO I HAVE TO CONSENT?"   Once again, the Court finds the inclusion/placement of this statement and the emphasis applied to it to be both unnecessary and unwarranted.  Further, the instruction as to where the "Consent To Join" forms should be sent must be amended to reflect the Court's earlier ruling that the forms are to be mailed to the Clerk of the Court.  The import of Defendants' proposed addition concerning consent is addressed in the final language the Court here directs the parties to use in Section 17, as follows:

> Enclosed is a form called "Consent to join." If you choose to join the Federal Claims, it is extremely important that you read, sign and promptly return the Consent to Join Form.
>
> You are not required to consent and you do not have to join this lawsuit.  That is your choice.
>
> If you do wish to join this lawsuit, an addressed envelope is enclosed for your convenience. Should the enclosed envelope be lost or misplaced, the Consent to Join Form must be sent to:
>
> **Clerk of the Court**
> **United States District Court**
> **Eastern District of New York**
> **Long Island Courthouse**
> **100 Federal Plaza**
> **Central Islip, NY 11722**
>
> The signed Consent to Join form must be postmarked by [60 days from mailing of this Notice]. If your signed Consent to Join Form is not postmarked by [60 days from mailing of the Notice], you will not participate in this lawsuit.

The Court declines to approve the other proposed changes sought by Defendants in Section 17.

### e.    Page Five

Under Section 18 ("Do I have a lawyer in this case?"), Plaintiffs' counsel is directed to replace "If you choose to join this lawsuit you will be represented by" with "If you choose to join this lawsuit and to be represented by the Plaintiffs' counsel, then your attorney will be." *See Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 91, 99 (S.D.N.Y. 2003) ("If you choose to join this suit, and agree to be represented by the named Plaintiff through his attorney, your counsel in this action will be: [*Insert Plaintiff's Counsel's name, mailing address, and phone number here*]").  Plaintiffs are further directed to include the following language: "If you decide to join this lawsuit you may retain counsel of your choosing or you may represent yourself."   Also, Plaintiffs' counsel must revise "Moser Employment Law Firm, P.C." to read "Moser Law Firm, P.C." and must also revise the e-mail address given for the same reason as previously noted.

The parties do not have any dispute concerning the wording of Section 19 ("How will the lawyers be paid?").  However, the Court requires that the following boldface and underlined phrase be inserted in the section regarding the contingency arrangement:  "The named Plaintiffs have entered into a contingency fee agreement with Plaintiffs' counsel, which means that if you **choose to be represented by Plaintiffs' counsel,** and do not win. . . ."  Once inserted, the boldface and underlining is to be removed.

Defense counsel requests that his name and contact information be included in the notice and the Court finds this request reasonable.  *See Bittencourt v. Ferrara Bakery & Cafe Inc.*, 310 F.R.D. 106, 118 (S.D.N.Y.2015) (quoting *Slamna v. API Rest. Corp.*, No. 12 CIV. 757, 2013 WL 3340290, at *1 (S.D.N.Y. July 2, 2013)) ("Courts in this Circuit have generally concluded that

[the contact information of defendants' counsel] is appropriate for inclusion in a notice of collective action."); *see also Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 486-87 (S.D.N.Y. 2016). The Court is directing counsel to add a Section 20 with the title "Do the defendants have counsel in this matter?" Underneath the header, the following language is to be included:

> Counsel for Perfume Worldwide, Inc. and Piyush Golia is:
>
>> Jacques Catafago, Esq.
>> Catafago Fini LLP
>> The Empire State Building
>> 350 5th Avenue, Suite 7710
>> New York, NY 10118

Defendants also seek the inclusion of a provision setting forth resources where opt-ins may obtain further information regarding this case. The Court adopts Defendants' proposal but notes that it contains several typos. Counsel are directed to insert the following passage in what would be Section 21:

> **21**. **Further Information**
>
> You may also examine the Court file in this case, in person, at the U.S. Courthouse, 100 Federal Plaza, Central Islip, NY 11722. You may also view the case file via the Internet, for a fee, using the Court's PACER service. Go to www.pacer.psc.uscourts.gov for more information.

*Francis v. A & E Stores, Inc.*, No. 06 CIV 1638, 2008 WL 4619858, at *4 (S.D.N.Y. Oct. 16, 2008).

### vi. *Spanish Translation*

Plaintiffs seek permission to disseminate a Spanish translation of the notice and consent to join form. Defendants have not objected to this request. In light of the "broad remedial purpose" of the FLSA, Courts have ordered the translation of notice and opt-in forms into the

mother tongue of opt-ins. *See e.g.*, *Robles*, 2013 WL 6684954, at *11; *Hanming Feng*, 2016 WL 1070813, at *6. The Court is therefore directing that the notice and consent to join form, as modified here, be circulated in English and Spanish.

### vii. Limitations Period

Plaintiffs argue that it is proper to give notice to hourly workers who were employed at any time during the three year period preceding the filing of the Complaint and up to the present time. Pls.' Mem. at 11-12. Defendants' do not object to this relief. The FLSA has a two-year statute of limitations except in the case of willful violations, for which the statute of limitations is three years. *See* 29 U.S.C. § 255(a). "At the conditional certification stage, allegations of willful conduct are sufficient to apply the three-year statute of limitations for purposes of certifying the class." *Jie Zhang v. Wen Mei, Inc.*, No. 14-1647, 2015 WL 6442545, at *5 (E.D.N.Y. Oct. 23, 2015) (citing *Summa v. Hofstra Univ.*, 715 F.Supp.2d 378, 388 (E.D.N.Y.2010); *see also Francis v. A & E Stores, Inc.*, No. 06–CV–1638, 2008 WL 2588851, at *3 (S.D.N.Y. June 26, 2008), *adopted as modified*, 2008 WL 4619858 (S.D.N.Y. Oct.16, 2008). Here, the Complaint contains allegations of willful conduct by Defendants. Compl. ¶¶ 46-47. Therefore, a three-year limitations period is appropriate for purposes of the notice.

With respect to the calculation of the limitations period, courts often begin counting back from the date of the conditional certification order or the notice since the FLSA statute of limitations continues to run until a plaintiff consents to join the action. *See* 29 U.S.C. § 256; *Ritz v. Mike Rory Corp.*, No. 12 Civ. 367, 2013 WL 1799974, at *3 (E.D.N.Y. 2013) (citing *Hernandez v. Immortal Rise, Inc.*, 2012 WL 4369746, at *6–7) ("[U]nder the FLSA, the notice period generally should be measured from the date of the court's order granting the motion for conditional certification, not from the date that the complaint was filed."). "However, 'because

equitable tolling issues often arise as to individual opt-in plaintiffs, courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date.'" *Gaspar v. Pers. Touch Moving, Inc*., No. 13-CV-8187, 2014 WL 4593944, at *7 (S.D.N.Y. Sept. 15, 2014) (quoting *Trinidad*, 962 F. Supp. 2d at 564 n.14) (internal alteration omitted); *see e.g., Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 356 (E.D.N.Y. 2012) (citing *Whitehorn v. Wolfgang's Steakhouse*, Inc., 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011)). "[T]he remedial purposes of the FLSA are best served" here by keying notice to the three-year statute of limitations from the date of the filing of the Complaint in this action. *Fa Ting Wang*, 2015 WL 4603117, at *13 (quoting *Winfield v. Citibank, N.A*., 843 F. Supp. 2d 397, 410 (S.D.N.Y.2012)).

### viii.    Eligible Employment Dates

Although Plaintiffs' complaint sets forth NYLL claims, the proposed notice is directed solely to "employees who worked for Perfume Worldwide, Inc. at any time after May 16, 2014," three years prior to the filing of the Complaint in this action. Since the parties do not dispute that the applicable period is "any time after May 16, 2014" as the start of the period of eligibility, the Court finds that no changes are necessary.

### C.    Consent to Join Form

In Defendants' Memorandum of Law, counsel explains that the only change Defendants propose is the removal of "Moser Employment Law Firm." Defs.' Opp'n. at 4. Based on the Court's earlier ruling, Plaintiffs' counsel shall substitute "Moser Law Firm, P.C." for the existing language.

### D.     Production of Identifying Information

At the start of Plaintiffs' Memorandum of Law and in their Notice of Motion, they seek:

> Production of the Covered Employees in a computer readable data
> file containing their names, last known mailing addresses, telephone
> numbers and dates of employment within ten (10) business days of
> this Court's order (the "Opt-In List")

Pls.' Mem. at 1; Pls.' Notice.  However, in the body of their Memorandum of Law, Plaintiffs

seek production of each employee's date of birth and work locations, in addition to the

identifying information set forth above.  Defendants have not filed any objection to this request.

"In general, it is appropriate for courts in collective actions to order the discovery of names,

addresses, telephone numbers, email addresses, and dates of employment of potential collective

members."  *Velasquez*, 2014 WL 2048425, at *15 (citing *Puglisi*, 998 F. Supp. 2d at 102;

*Rosario*, 828 F. Supp. 2d at 522; *In re Penthouse Executive Club Comp. Litig*., No. 10-CV-1145,

2010 WL 4340255, at *5-6, (S.D.N.Y. Oct. 26, 2010)); *see, e.g., Fa Ting Wang*, 2015 WL

4603117, at *14 (collecting cases from the Eastern and Southern Districts of New York).  Courts

have also ordered the discovery of work locations.  *Jie Zhang*, 2015 WL 6442545, at *7; *Jacob

v. Duane Reade, Inc*., No. 11-CV-0160, 2012 WL 260230, at *10 (S.D.N.Y. Jan. 27, 2012); *Hens

v. ClientLogic Operating Corp*., No. 05-CV-381S, 2006 WL 2795620, at *5 (W.D.N.Y. Sept. 26,

2006).

Courts are reluctant, however, to authorize disclosure of private information, such as

dates of birth and social security numbers without a showing that the information is necessary for

the plaintiff to notify potential opt-ins of the collective action.  *See, e.g., Jie Zhang*, 2015 WL

6442545, at *7 (granting the plaintiffs' request for a list of the names, addresses, phone numbers,

last known email addresses, work locations, and dates of employment for potential plaintiffs, but

declining request for social security numbers because the plaintiffs "have not established a

particularized need" for this information); *Velasquez*, 2014 WL 2048425, at *15 (directing the defendants to provide the plaintiffs with a list of the names, addresses, telephone numbers, email addresses, and dates of employment for all potential class members, but not their dates of birth and social security numbers); *Brabham v. Mega Tempering & Glass Corp.*, No. 13–CV–54, 2013 WL 3357722, at *8 (E.D.N.Y. July 3, 2013) ("The purpose of the production of potential opt-in plaintiffs is to enable Plaintiffs to notify them of the collective action ... The production of names, addresses, phone numbers and email addresses plainly serves that purpose, while birth dates and Social Security numbers are not necessary for Plaintiffs to perform their notification task.") (internal citation omitted); *Rosario*, 828 F. Supp. 2d at 522 (citing *Whitehorn*, 767 F.Supp.2d at 448) ("In light of the privacy concerns regarding employees' dates of birth and social security numbers, the production of such information is unnecessary at this juncture. If plaintiff is unable to effectuate notice on some potential opt-in plaintiffs with the information that is produced, plaintiff may renew his application for additional information regarding those specific employees.").

The Court finds no reason to deviate from the common practice here. Defendants are to provide Plaintiffs' counsel with a computer readable data file containing the collective's names, last known mailing addresses, telephone numbers, work locations and dates of employment **<u>within 14 days of entry of this Order</u>**. The list is to be treated by the parties as confidential. To the extent that the parties have not previously entered into a Stipulation and Order of Confidentiality, they are ordered to do so forthwith for this purpose.

### E.    Methods of Dissemination

In addition to sending notice to potential class members via regular mail, Plaintiffs seek an Order directing Defendants to post the Court-approved Notice and the court-approved Opt-In Consent forms "immediately adjacent to each punch clock/biometric time clock used by Covered Employees who are presently employed for the entire duration of the opt-in period."  Pls.' Mem. at 2.  Defendant does not object to this request.  *See generally* Defs.' Opp'n.  Courts regularly approve plaintiffs' requests to post notices and consent forms in "non-public areas" where potential collective members are likely to congregate, such as clock-in stations or break rooms. *Trinidad*, 962 F. Supp. 2d at 564 (collecting cases); *Barbato v. Knightsbridge Properties*, No. 14-7043, 2015 WL 5884134, * (E.D.N.Y. Oct. 8, 2015) ("Defendant shall post the Proposed Notice and Consent to Join forms in a non-public common area in each of the Knightsbridge Properties.");  *Fa Ting Wang*, 2015 WL 4603117, at *17 (recommending the defendants "be ordered to post, in a reasonable location at each of Defendants' worksites for drivers, one copy of the Notice of Pendency and Consent to Join form in English, Chinese, Korean and Spanish"); *Hernandez*, 2013 WL 3199292, at *5 (collecting cases).  Consistent with the above case law, the Court grants Plaintiffs' request to post notice and consent forms "immediately adjacent to each punch clock/biometric time clock used by Covered Employees who are presently employed for the entire duration of the opt-in period."  Posting of Notice in locations of Defendants' facilities that are primarily frequented by customers is not permitted.  The Court is further directing Defendants to file an affidavit of compliance with the posting requirement within 14 days of the close of the opt-in period.  *Id*.

### F. Equitable Tolling

Pursuant to 29 U.S.C. Section 256(b), the statute of limitations applicable to a plaintiff's claim continues to run until he or she has filed a written consent with the court to join the lawsuit. However, "[a] district court may toll the limitations period to avoid inequitable circumstances…." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170 (S.D.N.Y. 2014) (citing *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)). "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass v. New York City Transit Authority*, 333 F. 3d 74, 80-81 (2d Cir. 2003) (quoting *Chapman*, 288 F. 3d at 512).

Courts in the Second Circuit "have permitted equitable tolling while the motion for conditional certification is before the court." *Fa Ting Wang*, 2015 WL 4603117, at *14 (citing *Robles*, 2013 WL 6684954, at *13; *Colon*, 2013 WL 3328223, at *8; *McGlone*, 867 F. Supp. 2d at 445 (Potential plaintiffs "whose putative class representatives and their counsel are diligently and timely pursuing the claims should also not be penalized due to the courts' heavy dockets and understandable delays in rulings.")). Given the length of time that has passed since the instant motion was filed, and the diligence of Plaintiffs' counsel in pursuing certification, the Court is granting equitable tolling from the date the motion was filed. *See Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 188 (E.D.N.Y. 2015) (citing *Kassman v. KPMG LLP*, 11–CV–3743, 2015 WL 5178400, at *8 (S.D.N.Y. Sept. 4, 2015)).

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs' motion for conditional certification as an FLSA collective action pursuant to Section 216(b) is GRANTED, in part, and DENIED, in part, as set forth in this Memorandum and Order.  The Court directs counsel to revise Plaintiffs' proposed notice to comply with the directives set forth here.

The Court further orders that within 14 days of entry of this Order, Defendants are to produce a computer-readable list of the names, last known addresses, telephone numbers, and dates of employment for current and former hourly employees of Perfume Worldwide, Inc. who have been employed at any time after May 16, 2014.

**SO ORDERED.**

Dated: Central Islip, New York
          March 30, 2018

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge