Steven J. Moser (SM1133)
MOSER LAW FIRM, P.C.
Three School Street, Suite 207B
Glen Cove, New York 11542
(516) 671-1150
F (516) 882-5420

| | |
|---|---|
| NELSON CASTILLO, MARTA VALLADARES, ARACELY VALLADARES, CARLOS REYES, YOSELY ESPINAL HENRIQUEZ, individually and on behalf of all others similarly situated, | **SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT** |
| Plaintiffs, | **Case No. 17-cv-2972** |
| *- against -* | |
| PERFUME WORLDWIDE INC., PERFUME CENTER OF AMERICA, INC., SHRI PARSHWA PADMAVATI & CO., LLC, 3OVO LOGISTICS INC., TEXVEL, INC., JOHN DOE CORPORATIONS NOS. 1-5, KANAK GOLIA, PIYUSH GOLIA, PRABHA GOLIA and ROMA GOLIA, | |
| Defendants. | |

## CLASS ACTION AND COLLECTIVE ACTION COMPLAINT

Plaintiffs Nelson Ernesto Castillo Hernandez, Marta Valladares, Aracely Valladares, Carlos Reyes and Yosely Espinal Henriquez, individually and on behalf of all others similarly situated, by the Moser Law Firm, P.C., hereby file this second amended complaint against Perfume Worldwide Inc., Perfume Center of America, Inc., Shri Parshwa Padmavati & Co., LLC, 30V0 Logistics Inc., Texvel, Inc., John Doe Corporations Nos. 1-5, Piyush Golia, and Roma Golia (the "Defendants") and allege as follows:

## INTRODUCTION

1.      This case was originally filed by the Plaintiffs Nelson Ernesto Castillo Hernandez, Marta Valladares, Aracely Valladares, Carlos Reyes and Yosely Espinal Henriquez against

Perfume Worldwide, Inc. and Piyush Golia on May 16, 2017 to recover overtime pay and spread of hours pay under the Fair Labor Standards Act of 1938 (the "FLSA"), as amended, 29 U.S.C. §201 et seq. (29 U.S.C. § 207), and by the New York Labor Law (the "NYLL") Article 19, §§ 650 et seq., and the supporting New York State Codes, Rules and Regulations, 12 NYCRR § 142-2.2.

      2.     This amended complaint is filed by Named Plaintiffs herein against Perfume Center of America, Inc., Perfume Worldwide, Inc, Shri Parshwa Padmavati & Co., LLC, 30V0 Logistics Inc., Texvel, Inc., John Doe Corporations Nos. 1-5 (collectively the "Perfume Enterprise"), Piyush Golia and Roma Golia to recover:

     a.   Overtime premium pay as required by the Fair Labor Standards Act of 1938 (the "FLSA"), as amended, 29 U.S.C. §201 et seq. (29 U.S.C. § 207), and by the New York Labor Law (the "NYLL") Article 19, §§ 650 et seq., and the supporting New York State Codes, Rules and Regulations, 12 NYCRR § 142-2.2;

     b.   Straight wages under NYLL § 191(1);

     c.   Spread of hours pay under 12 NYCRR § 142-2.4.

     d.   Statutory damages for failure to issue wage notices at the time of hiring that comply with NYLL § 195.

      3.     The first, second, and third causes of action arise from the Defendants' uniform policy of not compensating employees for a mandated 20-minute break period each morning;

      4.     The fourth cause of action arises from the Defendants failure to implement a policy and procedure for paying spread of hours pay to employees who work a spread of hours in excess of ten.

5.      The fifth cause of action arises from the Defendants' failure to issue wage notices within 10 days of hiring as required by NYLL § 195(1)(a).

## JURISDICTION AND VENUE

6.      This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, since such claims are so related in this action to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

7.      In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

8.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to the claims in this action occurred within the Eastern District of New York.

## PARTIES

### *Named Plaintiffs*

#### *Nelson Castillo*

9.      Named Plaintiff Nelson Castillo is a natural person who resides in Suffolk County, New York.

10.     Nelson Castillo was an employee of the Defendants within the meaning of 29 U.S.C. § 203(e) and NYLL § 190(3).


#### *Marta Valladares*

11.     Named Plaintiff Marta Valladares is a natural person who resides in Suffolk County, New York.

12.     Marta Valladares was an employee of the Defendants within the meaning of 29 U.S.C. § 203(e) and NYLL § 190(3).

*Aracely Valladares*

13.     Named Plaintiff Aracely Valladares is a natural person who resides in Suffolk County, New York.

14.     Aracely Valladares was an employee of the Defendants within the meaning of 29 U.S.C. § 203(e) and NYLL § 190(3).

*Carlos Reyes*

15.     Named Plaintiff Carlos Reyes is a natural person who resides in Suffolk County, New York.

16.     Carlos Reyes was an employee of the Defendants within the meaning of 29 U.S.C. § 203(e) and NYLL § 190(3).

*Yosely Espinal Henriquez*

17.     Named Plaintiff Yosely Espinal Henriquez is a natural person who resides in Suffolk County, New York.

18.     Yosely Espinal Henriquez was an employee of the Defendants within the meaning of 29 U.S.C. § 203(e) and NYLL § 190(3).

***Defendants***

*Perfume Worldwide Inc.*

19.     Defendant Perfume Worldwide Inc. (Perfume Worldwide) is a domestic corporation formed under the laws of the State of New York.

20.     Perfume Worldwide operates a facility at 2020 Ocean Avenue, Ronkonkoma, New York 11779.

21.     Perfume Worldwide sells fragrances and beauty products.

22.     Upon information and belief, Perfume Worldwide has been engaged in commerce as defined in 29 U.S.C. §§ 201 *et. seq*. during the relevant time period.

23.     For each calendar year from January 1, 2014 and up to the present time, Perfume Worldwide's annual gross volume of sales made or business done was not less than $500,000.

24.     Upon information and belief, Perfume Worldwide has been an employer within the meaning of 29 U.S.C. § 203(d) and NYLL § 190(3) during the six-year period preceding the filing of this complaint.

### *Perfume Center of America, Inc.*

25.     Defendant Perfume Center of America, Inc. (Perfume Center) is a domestic corporation formed under the laws of the State of New York.

26.     Perfume Center operates a facility at 2020 Ocean Avenue, Ronkonkoma, New York 11779.

27.     Perfume Center sells fragrances and beauty products.

28.     Upon information and belief, Perfume Center has been engaged in commerce as defined in 29 U.S.C. §§ 201 *et. seq*. during the relevant time period.

29.     Upon information and belief, for each calendar year from January 1, 2014 and up to the present time, Perfume Center's annual gross volume of sales made or business done was not less than $500,000.

### *Shri Parshwa Padmavati & Co., LLC*

30.     Shri Parshwa Padmavati & Co., LLC (SPP) is a New York Limited Liability Company.

31.     SPP maintains a principal place of business and corporate offices at 2020 Ocean Avenue, Ronkonkoma, New York  11779.

32.     SPP owns the plant and equipment located at 2020 Ocean Ave, Ronkonkoma, New York  11779.

33.     Upon information and belief, SPP has been engaged in commerce as defined in 29 U.S.C. §§ 201 *et. seq*. during the relevant time period.

34.     Upon information and belief, for each calendar year from January 1, 2014 and up to the present time, SPP's annual gross volume of sales made or business done was not less than $500,000.

### *3OVO Logistics Inc.*

35.     Defendant 3OVO Logistics Inc. (3OVO) is a domestic corporation formed under the laws of the State of New York.

36.     3OVO Logistics was originally a trade name used by Piyush Golia and Perfume Worldwide.

37.     In April 2018, after the commencement of this action, the Defendants formed 3OVO Logistics.

38.     3OVO operates out of the facility at 2020 Ocean Avenue, Ronkonkoma, New York 11779.

39.     Upon information and belief, 3OVO has been engaged in commerce as defined in 29 U.S.C. §§ 201 *et. seq*. during the relevant time period.

40.     Upon information and belief, 3OVO's annual gross volume of sales will not be less than $500,000 in 2018.

*Texvel, Inc.*

41.     Texvel Inc. (Texvel) is a domestic corporation formed under the laws of the State of New York.

42.     Texvel operates out of the facility at 2020 Ocean Avenue, Ronkonkoma, New York 11779.

43.     Upon information and belief, Texvel has been engaged in commerce as defined in 29 U.S.C. §§ 201 *et. seq*. during the relevant time period.

44.     Upon information and belief, for each calendar year from January 1, 2014 and up to the present time, Texvel's annual gross volume of sales made or business done was not less than $500,000.

*Kanak Golia*

45.     Kanak Golia is a natural person who resides in Nassau County, New York.

46.     Kanak Golia has been the President of Perfume Center during the six-year period preceding the filing of this complaint.

47.     Kanak Golia has been a shareholder of Perfume Center during the six-year period preceding the filing of this complaint.

48.     Kanak Golia has been a shareholder of Perfume Worldwide during the six-year period preceding the filing of this complaint.

49.     Kanak Golia is member of SPP.

50.     Kanak Golia was a signatory on the bank account used to pay the Plaintiffs at times during the six-year period preceding the commencement of this action.

51.     Kanak Golia has signed payroll checks for class and collective action members during the six-year period preceding the commencement of this action.

52.     Upon information and belief, an employment relationship existed within the meaning of the FLSA and NYLL, between Kanak Golia and the Plaintiffs, in that the Defendant Kanak Golia had the power to control the Plaintiffs.

53.     Kanak Golia had the power to determine the pay policies and practices at Perfume Center, and Perfume Worldwide follows the pay practices and policies set by Perfume Center. In this way, Kanak Golia had the power to determine the way in which the Plaintiffs compensation was calculated and determined.

54.     Upon information and belief, Kanak Golia exercised sufficient operational control over the Perfume Enterprise to be deemed the Plaintiffs' employer under the FLSA and the NYLL.

*Piyush Golia*

55.     Piyush Golia is a natural person who resides in Suffolk County, New York.

56.     Piyush Golia is the son of Kanak Golia.

57.     Piyush Golia has been the President of Perfume Worldwide during the six-year period preceding the filing of this complaint.

58.     Piyush Golia has been a shareholder of Perfume Worldwide during the six-year period preceding the filing of this complaint.

59.     Upon information and belief, Piyush Golia is a member of SPP.

60.     Piyush Golia was a signatory on the bank account used to pay the Plaintiffs at times during the six-year period preceding the commencement of this action.

61.     Upon information and belief, an employment relationship existed within the meaning of the FLSA and NYLL, between Piyush Golia and the Plaintiffs, in that the Defendant Piyush Golia had the power to control the Plaintiffs.

62.    Upon information and belief, Piyush Golia had the power to hire and fire the Plaintiffs, supervised and controlled their work schedules, the conditions of their employment, determined the rate and method of their pay, and maintained records of their employment.

63.    Upon information and belief, Piyush Golia exercised sufficient operational control over the Perfume Enterprise to be deemed the Plaintiffs' employer under the FLSA and the NYLL.

*Prabha Golia*

64.    Prabha Golia is a natural person who resides in Nassau County, New York.

65.    Prabha Golia is the wife of Kanak Golia and the mother of Piyush Golia.

66.    Prabha Golia has been an officer of Perfume Center during the six-year period preceding the filing of this complaint.

67.    Prabha Golia has been a shareholder of Perfume Center during the six-year period preceding the filing of this complaint.

68.    Prabha Golia has been a shareholder of Perfume Worldwide during the six-year period preceding the filing of this complaint.

69.    Upon information and belief, Prabha Golia is a member of SPP.

70.    Prabha Golia was a signatory on the bank account used to pay the Plaintiffs at times during the six-year period preceding the commencement of this action.

71.    Upon information and belief, an employment relationship existed within the meaning of the FLSA and NYLL, between Prabha Golia and the Plaintiffs, in that the Defendant Piyush Golia had the power to control the Plaintiffs.

72.     Upon information and belief, Prabha Golia had the power to hire and fire the Plaintiffs, supervised and controlled their work schedules, the conditions of their employment, determined the rate and method of their pay, and maintained records of their employment.

73.     Upon information and belief, Prabha Golia exercised sufficient operational control over the Perfume Enterprise to be deemed the Plaintiffs' employer under the FLSA and the NYLL.

*Roma Golia*

74.     Roma Golia is a natural person who resides in Suffolk County, New York.

75.     Roma Golia is the wife of Piyush Golia and the daughter-in-law of Kanak Golia and Prabha Golia.

76.     Roma Golia has been an officer of Perfume Worldwide during the six-year period preceding the filing of this complaint.

77.     Roma Golia has been a shareholder of Perfume Worldwide during the six-year period preceding the filing of this complaint.

78.     Upon information and belief, Roma Golia is a member of SPP.

79.     Upon information and belief, an employment relationship existed within the meaning of the FLSA and NYLL, between Roma Golia and the Plaintiffs, in that the Defendant Roma Golia had the power to control the Plaintiffs.

80.     Upon information and belief, Roma Golia had the power to hire and fire the Plaintiffs, supervised and controlled their work schedules, the conditions of their employment, determined the rate and method of their pay, and maintained records of their employment.

81.     Upon information and belief, Roma Golia exercised sufficient operational control over the Perfume Enterprise to be deemed the Plaintiffs' employer under the FLSA and the NYLL.

*The Perfume Enterprise*

82.     Perfume Center, Perfume Worldwide, SPP, 3OVO, Texvel and John Doe Corporations Nos. 1-5 Constitute a single employer because (1) their operations are related, (2) they share centralized control of labor relations, (3) they are commonly managed, and (4) commonly owned.

83.     More specifically, the following facts demonstrate that Perfume Worldwide, Perfume Center, SPP, 3 OVO and Texvel ("Corporate Defendants") are a "single employer":

   a.   Corporate Defendants are owned and operated and Controlled by the Golia family;

   b.   The Corporate Defendants share personnel;

   c.   Perfume Worldwide, and Perfume Center sell fragrances and beauty products;

   d.   Upon information and belief, all of the corporate entities work as an integrated unit.  For example, Perfume Center is a wholesaler of perfumes and beauty products; Perfume Worldwide sells the stock obtained by Perfume Center online through online retailers such as Amazon, Target and Sears; Texvel salvages damaged warehouse product of Perfume Worldwide and Perfume Center for resale; SPP owns the warehouse, plant and equipment used by Perfume Worldwide, Perfume Center, 3OVO and Texvel to store and ship products; 3 OVO Logistics makes the warehouse, storage, and shipping capabilities of the warehouse at 2020 Ocean Avenue available to third party online retailers;

-11-

e.  Perfume Worldwide and Perfume Center share common pay policies and pay practices;

f.  Corporate Defendants share plant, facilities and other resources,

g.  Employees of Perfume Worldwide, Perfume Center, and SPP were covered by a common workers' compensation insurance policy in the name of Perfume Center during the 6-year period preceding the commencement of this action;

h.  Employees of Perfume Worldwide, Perfume Center, and SPP were covered by a common disability insurance policy in the name of Perfume Center during the 6-year period preceding the commencement of this action;

i.  Perfume Worldwide and Perfume Center use the same employee handbook;

j.  Perfume Worldwide and Perfume Center share and follow the advice of the same attorneys.

k.  Perfume Worldwide has asserted as an affirmative defense in this lawsuit that it followed the legal advice given to Perfume Center;

l.  Employees of Perfume Center and Perfume Worldwide were paid using the same ADP "master account";

m.  Employees of Perfume Center and Perfume Worldwide are now covered by the same "master account" with a California-Based payroll provider – TriNet.

n.  Perfume Center, Perfume Worldwide and Texvel share the same payroll processing services and payroll practices.  For example, Perfume Worldwide and Perfume Center both originally used ADP easypay.   All of the employees of both companies were switched as a group to ADP enterprise.  Then, all of the employees were moved as a group to TriNet;

o.  SPP owns the plant and facilities used by Perfume Center and Perfume

Worldwide.

## COLLECTIVE ACTION ALLEGATIONS

84.     The Plaintiffs bring the FLSA claim, the First Cause of Action, on behalf of themselves and other similarly situated persons who were current and former workers employed by the Defendant, at any time during the three year period prior to the filing of this complaint and who elect to opt-in to this action (the "FLSA Collective"), pursuant to 29 U.S.C. §§ 201 *et seq*. and specifically, the collective action provision of 29 U.S.C. § 216(b), to remedy violations of the overtime wage provisions of the FLSA.

85.     Through the conduct described in this Complaint, the Defendants have violated the FLSA by failing to pay the Named Plaintiffs and the FLSA Collective, proper overtime wages as required by law for a 20-minute break each morning.  These violations arose out of the Defendant's uniform, company-wide policies, pattern and/or practice of violating wage and hour law.

86.     The FLSA claims in this lawsuit should be adjudicated as a collective action. Upon information and belief, the FLSA Collective consists of at least 300 similarly situated current and former employees of the Defendants who have been victims of the Defendants' common policies and practices that have violated the rights of the FLSA Collective under the FLSA by, *inter alia,* willfully denying full overtime wages.

## CLASS ACTION ALLEGATIONS

### *The New York Class*

87.     The Named Plaintiffs bring the Second, Third and Fourth Causes of Action under Fed. R. Civ. P 23 on behalf of themselves and a class consisting of all non-exempt workers who

have been employed by Perfume Worldwide, Inc. in the State of New York at any time during the six-year period prior to May 16, 2017 and up to the present time (the "New York Class").

88.     Excluded from the New York Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in the Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

89.     The persons in the New York Class identified above are so numerous that joinder of all members is impracticable.

90.     Upon information and belief, the size of the New York Class is estimated to be at least 1,000 workers. Although the precise number of such persons is not known to the Named Plaintiffs, the facts on which the calculation of that number can be based are presently within the sole control of the Defendants.

91.     There are questions of law and fact common to the Class that predominate over any questions solely affecting Named members of the Class individually and include, but are not limited to, the following:

      a.   whether the 20-minute uncompensated break each morning constituted compensable work time;

      b.   whether deducting the 20 minutes from the pay of the employees constituted a failure to pay for all hours worked;

      c.   whether Defendants failed and/or refused to pay the Named Plaintiffs and the New York Class overtime pay for all hours worked in excess of 40 hours per workweek within the meaning of NYLL Article 19, §§ 650 et seq., and the

supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part
142;

d.  whether Defendants failed and/ or refused to pay the Named Plaintiffs and the
New York Class straight wages to which they are entitled under NYLL §§ 191
and 198;

e.  Whether the Defendants failed to implement policies and procedures for paying
spread of hours pay to employees, when the interval between the beginning and
ending of the employees' workday exceeded ten.

92.     The claims of the Named Plaintiffs are typical of the claims of the New York
Class they seek to represent. The Named Plaintiffs and the class members work, or have worked,
for Perfume Worldwide, Inc.  as workers in the State of New York.  The Named Plaintiffs and
the class members enjoy the same statutory rights under the NYLL, to be paid overtime
premiums, straight pay, and spread of hours pay.  The Named Plaintiffs and the class members
have all sustained similar types of damages as a result of the Defendants' failure to comply with
the NYLL. The Named Plaintiffs and the class members have all been injured in that they have
been subject to the Defendants' uniform policies of (1) failing to compensate employees for a 20
minute morning break, and (2) failing to pay spread of hours pay when the interval between the
beginning and ending of the employees' workday exceeded 10 hours.

93.     The Named Plaintiffs will fairly and adequately represent and protect the interests
of the New York Class. The Named Plaintiffs understand that, as class representatives, they
assume a fiduciary responsibility to the New York Class to represent the classes' interests fairly
and adequately. The Named Plaintiffs recognize that as class representatives, they must represent
and consider the interests of the New York Class just as they would represent and consider their

-15-

own interests. The Named Plaintiffs understand that in decisions regarding the conduct of the litigation and its possible settlement, they must not favor their own interest over those of the class. The Named Plaintiffs recognize that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the class. The Named Plaintiffs understand that in order to provide adequate representation, they must remain informed of developments in the litigation, cooperate with counsel by providing them with information and any relevant documentary material in their possession, and testify, if required, in a deposition and at trial. The Named Plaintiffs have retained counsel competent and experienced in complex class action employment litigation. There is no conflict between the Named Plaintiffs and the class members.

94.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation - particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court. The members of the New York Class have been damaged and are entitled to recovery as a result of Defendants' violations of the NYLL, as well as the Defendants' uniform policies, practices, and procedures. Although the relative damages suffered by the members of the New York Class are not *de minimis,* such damages are small compared to the expense and burden of individual prosecution of wage and hour litigation. The class members lack the financial resources to conduct a thorough examination of the Defendants' timekeeping and compensation practices and to prosecute vigorously a lawsuit against the Defendant to recover such damages. In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

-16-

95.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2) in that the Defendants have acted or refused to act on grounds that apply generally to the New York Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

96.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(1)(B) in that prosecuting separate actions by individual class members would create a risk of adjudications with respect to class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the adjudications or would substantially impair or impede their ability to protect their interests.

97.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3) in that the questions of law or fact common to class members predominate over any question affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

### *The Wage Notice Class*

98.     The Named Plaintiffs bring the Fifth Cause of Action under Fed. R. Civ. P 23 on behalf of themselves and a class consisting of all non-exempt workers who were hired by Perfume Worldwide, Inc. at any time from April 9, 2011 to the present (the "Wage Notice Class").

99.     Excluded from the Wage Notice Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in the Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

100.    The persons in the Wage Notice Class identified above are so numerous that joinder of all members is impracticable.

101.    Upon information and belief, the size of the Wage Notice Class is estimated to be at least 1,000 workers. Although the precise number of such persons is not known to the Named Plaintiffs, the facts on which the calculation of that number can be based are presently within the sole control of the Defendants.

102.    There are questions of law and fact common to the Class that predominate over any questions solely affecting Named members of the Class individually and include whether the form of notice issued by the Defendants at the time of hiring complied with NYLL 195 as amended by the Wage Theft Prevention Act.

103.    The claims of the Named Plaintiffs are typical of the claims of the Wage Notice Class they seek to represent. The Named Plaintiffs and the class members were hired in the state of New York on or after April 9, 2011.  The Named Plaintiffs and the class members enjoy the same statutory rights under NYLL 195, as amended by the New York Wage Theft Prevention Act, to receive a form of notice at the time of hiring that complies with the NYLL.  The Named Plaintiffs and the class members have all sustained similar statutory damages as a result of the Defendants' failure to comply with the NYLL. The Named Plaintiffs and the class members are all entitled to statutory damages as they have been subject to the Defendants' uniform policy of failing to issue wage notices that comply with NYLL section 195 as amended by the New York Wage Theft Prevention Act.

104.    The Named Plaintiffs will fairly and adequately represent and protect the interests of the Wage Notice Class. The Named Plaintiffs understand that, as class representatives, they assume a fiduciary responsibility to the Wage Notice Class to represent the classes' interests

-18-

fairly and adequately. The Named Plaintiffs recognize that as class representatives, they must represent and consider the interests of the Wage Notice Class just as they would represent and consider their own interests. The Named Plaintiffs understand that in decisions regarding the conduct of the litigation and its possible settlement, they must not favor their own interest over those of the class. The Named Plaintiffs recognize that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the class. The Named Plaintiffs understand that in order to provide adequate representation, they must remain informed of developments in the litigation, cooperate with counsel by providing them with information and any relevant documentary material in their possession, and testify, if required, in a deposition and at trial. The Named Plaintiffs have retained counsel competent and experienced in complex class action employment litigation. There is no conflict between the Named Plaintiffs and the class members.

105.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation - particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court. The members of the Wage Notice Class are entitled to recovery as a result of Defendants' violations of the NYLL, as well as the Defendants' uniform policies, practices, and procedures.  The statutory damages to which the Wage Notice Class members are entitled are small compared to the expense and burden of individual prosecution of wage and hour litigation.  In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

106.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2) in that the Defendants have acted or refused to act on grounds that apply

generally to the Wage Notice Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

107.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(1)(B) in that prosecuting separate actions by individual class members would create a risk of adjudications with respect to class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the adjudications or would substantially impair or impede their ability to protect their interests.

108.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3) in that the questions of law or fact common to class members predominate over any question affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## WILLFULNESS ALLEGATIONS

109.    As part of its regular business practice, Defendants have willfully engaged in a pattern, practice, and/or policy of violating the FLSA and state wage and hour laws.

110.    This pattern, practice, and/or policy includes willfully failing to pay its employees overtime wages, straight wages, and spread of hours pay.  Upon information and belief, Defendants were or should have been aware that its actions as described in this complaint violated both state and federal law.

## FACTUAL ALLEGATIONS

### *Defendants' Policies*

111.    Beginning at a time more than six years before the commencement of this action, the Named Plaintiffs, New York Class and FLSA Collective were scheduled for a 20-minute break each morning.

112.    The Defendants had a uniform policy of deducting 20 minutes a day from the work hours of the Named Plaintiffs, New York Class and FLSA Collective for the morning break.

113.    As a result of this policy, the Defendants failed to pay workers for all compensable working hours.

114.    In most instances, the failure to compensate for all working hours resulted in the Defendants' failure to pay overtime for all hours worked by employees in excess of 40 hours per week.

115.    Upon information and belief, in some instances, the failure to compensate for all working hours resulted in the Defendants' failure to pay for all straight hours worked.

116.    The Named Plaintiffs and the New York Class regularly worked a spread of hours in excess of 10 hours per day.

117.    Pursuant to uniform policy, the Defendants did not pay employees spread of hours pay when the interval between the beginning and ending of the workday exceeded ten.

118.    Defendants had a de-facto policy of failing to issue <u>wage notices within ten days of the date of hire</u> on and after April 9, 2011.

119.    Even assuming, arguendo, that the Defendants had issued wage notices, those notices did not comply with NYLL § 195(1), because they were only in in English, did not contain "an affirmation by the employee that the employee accurately identified  his or her primary language to the employer, and that the notice provided by the employer to such employee pursuant to this subdivision was in the language so identified" and were not in the employee's primary language.

### *Named Plaintiffs*

-21-

*Nelson Castillo*

120.   Plaintiff Nelson Castillo was employed as a warehouse worker by the Defendants from November 2013 until April 2017.

121.   Nelson Castillo initially worked at a facility operated by Perfume Worldwide Inc. located at 100 Commercial Street, Plainview, New York 11803 and later at a facility located at 2020 Ocean Avenue, Ronkonkoma, New York 11779.

122.   Nelson Castillo took a break each morning from 10:40 a.m. to 11:00 a.m.

123.   Nelson Castillo was not paid for the 20-minute morning break.

124.   Nelson Castillo worked from 7:00 a.m. until 7:00 p.m. from Monday through Friday, and often worked on Saturday as well.   His typical workweek exceeded 40 hours.

125.   In most instances, the deduction for the morning break resulted in the failure to pay overtime wages to Nelson Castillo.

126.   Upon information and belief, in some instances, the deduction for the morning break resulted in the failure to pay straight wages to Nelson Castillo.

127.   The interval between the beginning and ending of Nelson Castillo's workday was often more than ten.

128.   Nelson Castillo's typical shift on weekdays was from 7:00 a.m. to 7:00 p.m.

129.   Nelson Castillo was not paid spread of hours pay.

130.   Nelson Castillo was not issued a wage notice within ten days of the date of hire.

*Marta Valladares*

131.   Plaintiff Marta Valladares was employed as a warehouse worker by the Defendants from August 2014 to February 2016.

132.   Marta Valladares initially worked at a facility operated by Perfume Worldwide Inc. located at 100 Commercial Street, Plainview, New York 11803 and later at a facility located at 2020 Ocean Avenue, Ronkonkoma, New York 11779.

133.   Maria Valladares was required to take a 20-minute uncompensated break each morning from 10:40 a.m. to 11:00 a.m.

134.   In most instances, the deduction for the morning break resulted in the failure to pay overtime wages.

135.   For example, during the pay period from February 22, 2016 to February 28, 2016, Marta Valladares' pay stub reflects that she worked 40 hours at her regular hourly rate of pay and 3.90 hours at one and one-half times her regular hourly rate of pay.  Marta Valladares was not compensated at one and one-half times her regular hourly rate of pay for the daily, 20-minute break.

136.   Upon information and belief, in some instances, the deduction for the morning break resulted in the failure to pay straight wages.

137.   The interval between the beginning and ending of Marta Valladares's workday was often more than ten.

138.   Marta Valladares's regular shift on weekdays was from 6:00 a.m. or 7:00 a.m. to approximately 7:00 p.m.

139.   Marta Valladares was not paid spread of hours pay.

140.   Marta Valladares was not issued a wage notice within ten days of the date of hire.

*Aracely Valladares*

141.   Named Plaintiff Aracely Valladares was employed as a warehouse worker by the Defendants from June 2015 to January 2016.

142.     Aracely Valladares worked at a facility operated by Perfume Worldwide Inc. located at 2020 Ocean Avenue, Ronkonkoma, New York 11779.

143.     Aracely Valladares was required to take a 20-minute uncompensated break each morning from 10:40 a.m. to 11:00 a.m.

144.     Aracely Valladares regularly worked in excess of 40 hours per workweek.

145.     Aracely Valladares was not compensated at the overtime rate of one and one-half her regular hourly rate of pay for the 20-minute mandated break.

146.     For example, during the pay period from January 18, 2016 to January 24, 2016, Aracely Valladares' pay stub reflects that she worked 40 hours at her regular hourly rate of pay and 9.13 hours at one and one-half times her regular hourly rate of pay.  Aracely Valladares was not compensated at one and one-half times her regular hourly rate of pay for the daily, 20-minute break she was required to take.

147.     Upon information and belief, in some instances, the deduction for the morning break resulted in the failure to pay straight wages.

148.     The interval between the beginning and ending of Aracely Valladares's workday was more than ten.

149.     Aracely Valladares's weekday schedule was from 9:00 a.m. to 7:00 p.m.

150.     Aracely Valladares was not paid spread of hours pay.

151.     Aracely Valladares was not issued a wage notice within ten days of the date of hire.

*Carlos Reyes*

152.     Named Plaintiff Carlos Reyes was employed by the Defendants from August 2012 to March 2016.

-24-

153.    Carlos Reyes initially worked at a facility operated by the Defendants located at 100 Commercial Street, Plainview, New York 11803 and later at a facility located at 2020 Ocean Avenue, Ronkonkoma, New York 11779.

154.    After the first three months of employment as a warehouse helper, Carlos Reyes worked in customer service.  He was responsible for website design, online transactions, customer complaints, processing transactions, completing billing and packing orders for distribution.

155.    Carlos Reyes was required to take a 20-minute uncompensated break each morning from 10:40 a.m. to 11:00 a.m.

156.    Carlos Reyes already regularly worked in excess of 40 hours per week.

157.    Carlos Reyes was not compensated at the overtime rate of one and one-half times his regular hourly rate of pay for the 20-minute mandated break.

158.    For example, during the pay period from February 22, 2016 to February 28, 2016, Mr. Reyes' pay stub reflects that he worked 40 hours at his regular hourly rate of pay and 14.88 hours at one and one-half times his regular hourly rate of pay.  Mr. Reyes was not compensated at one and one-half times his regular hourly rate of pay for the daily, 20-minute break he was required to take.

159.    Upon information and belief, during some workweeks, the failure to compensate for all working hours resulted in the Defendants' failure to pay straight wages.

160.    The interval between the beginning and ending of Carlos Reyes's workday was more than ten.

161.    Carlos Reyes's regular schedule during weekdays was from 6:00 a.m. to 7:00 p.m.

162.    Carlos Reyes was not paid spread of hours pay.

163.     Carlos Reyes was not issued a wage notice within ten days of the date of hire.

*Yosely Espinal Henriquez*

164.     Named Plaintiff Yosely Espinal Henriquez was employed by the Defendants from July 2015 to December 2015.

165.     Yosely Espinal Henriquez worked at a facility operated by the Defendants located at 109 Lafayette Drive, Syosset New York 11791.

166.     After approximately her first month of employment as a warehouse helper, Yosely Espinal Henriquez worked in customer service.  She was responsible for taking customer orders via the telephone and processing transactions.

167.     Yosely Espinal Henriquez was required to take a 20-minute uncompensated break each morning from 10:40 a.m. to 11:00 a.m.

168.     In most instances, the failure to compensate for the morning break resulted in the Defendant's failure to pay Yosely Espinal Henriquez overtime.

169.     Upon information and belief, during some workweeks, the failure to compensate for all working hours resulted in the Defendants' failure to pay straight wages.

170.     The interval between the beginning and ending of Yosely Espinal Henriquez's workday was more than ten.

171.     Yosely Espinal Henriquez's weekday schedule was from 9:00 a.m. to 7:00 p.m.

172.     Yosely Espinal Henriquez was not paid spread of hours pay.

173.     Yosely Espinal Henriquez was not issued a wage notice within ten days of the date of hire.

**FIRST CAUSE OF ACTION**
**Overtime Violations**
**Fair Labors Standards Act**
**29 U.S.C. §§ 201, *et. seq.*; 29 U.S.C. §§ 207(a) & 126**
**On behalf of the Named Plaintiffs and the FLSA Collective**

174.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

175.     Defendants engaged in a widespread pattern, policy, and/or practice of violating the FLSA, as detailed in this Complaint.

176.     Defendants were an employer engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

177.     Upon information and belief, the Defendants have made at least $500,000 of annual gross volume of sales.

178.     At all times relevant, Named Plaintiffs and the members of the FLSA Collective were or have been employees within the meaning of 29 U.S.C. §§ 203(e) and 207(a).

179.     The Defendants employed the Named Plaintiffs and the FLSA Collective as an employer.

180.     At all times relevant, Named Plaintiffs and the members of the FLSA Collective were engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

181.     The overtime wage provisions set forth in the FLSA apply to Defendants and protect the Named Plaintiffs and the FLSA Collective.

182.     The Defendants failed to compensate the Named Plaintiffs and members of the FLSA Collective for the mandated, 20-minute break each morning.

183.     As a result of this policy, the Defendants failed to pay workers for all compensable hours.

184. In most instances, the failure to compensate for all working hours resulted in the failure to pay overtime for all hours worked in excess of 40 hours per week.

185. The Defendant failed to pay the Named Plaintiffs and members of the FLSA Collective the overtime wages to which they are entitled under the FLSA. .

186. Defendants' violations of the FLSA have been willful, in that it knew or should have known that its actions, as described herein, violated the FLSA.

187. Defendants did not make a good faith effort to comply with the FLSA with regard to overtime compensation to the Named Plaintiffs and the members of the FLSA Collective. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133-35 (1988). Therefore, a three-year statute of limitations applies. 29 U.S.C. § 255.

188. As a result of Defendants' violations of the FLSA, the Named Plaintiffs and the members of the FLSA Collective have suffered damages by being denied overtime wages in accordance with the FLSA in amounts to be determined at trial, including liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 et seq.

**SECOND CAUSE OF ACTION**
**Unpaid Overtime Violation**
**Article 19 §§ 650 et seq.; 12 N.Y.C.R.R. § 142-2.2**
**On behalf of the Named Plaintiffs and the New York Class**

189. Plaintiffs reallege and incorporate by reference each allegation contained in the paragraphs above as though fully set forth herein.

190. Defendants engaged in a widespread pattern, policy, and/or practice of violating the NYLL, as detailed in this Complaint.

-28-

191.    At all times relevant, the Named Plaintiffs and the members of the New York Class have been employees and Defendants have been the employer within the meaning of the NYLL § 190(3).

192.    The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants and protect the Named Plaintiffs and the members of the New York Class.

193.    The Defendants failed to compensate the Named Plaintiffs and members of the New York Class for the mandated, 20-minute break each morning.

194.    As a result of this policy, the Defendants failed to pay workers for all compensable hours.

195.    In most instances, the failure to compensate for all working hours resulted in the failure to pay overtime for all hours worked in excess of 40 hours per week.

196.    The Named Plaintiffs and the New York Class was entitled to overtime wages for hours worked in excess of 40 hours weekly under NYLL Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R. Part 142.

197.    The Defendants' violations of the NYLL, as described in this Class Action Complaint, have been willful and intentional.

198.    Through Defendants' knowing or intentional failure to pay the Named Plaintiffs and members of the New York Class overtime wages for hours worked in excess of 40 hours per week, the Defendants have willfully violated the NYLL Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations.

199.     Due to the Defendants' violations of the NYLL, the Named Plaintiffs and the New York Class Members are entitled to recover from the Defendants their unpaid overtime wages, liquidated damages, reasonable attorneys' fees, costs of the action, and pre-judgment and post-judgment interest.

### THIRD CAUSE OF ACTION
### Unpaid Straight Wages
### New York Labor Law § 191
### On behalf of the Named Plaintiffs and the New York Class

200.     Plaintiffs reallege and incorporate by reference each allegation contained in the paragraphs above as though fully set forth herein.

201.     The Defendants failed to compensate the Named Plaintiffs and members of the New York Class for the mandated, 20-minute break each morning.

202.     As a result of this policy, the Defendant failed to pay workers for all compensable hours.

203.     Upon information and belief, in some instances, the failure to compensate for all working hours resulted in the failure to pay straight wages.

204.     The Named Plaintiffs and the New York Class are entitled to straight wages for hours worked up to 40 hours weekly under NYLL § 191.

205.     The Defendants' violations of the NYLL, as described in this Class Action Complaint, have been willful and intentional.

206.     Through Defendants' knowing or intentional failure to pay the Named Plaintiffs and members of the New York Class straight wages, the Defendants have willfully violated the NYLL.

207.     Due to the Defendants' violations of the NYLL, the Named Plaintiffs and the New York Class Members are entitled to recover from the Defendant their unpaid straight

-30-

wages, liquidated damages, reasonable attorneys' fees, costs of the action, and pre-judgment and post-judgment interest.

## FOURTH CAUSE OF ACTION
### Spread of Hours Pay
### 12 NYCRR § 142-2.4
### On behalf of the Named Plaintiffs and the New York Class

208.    Plaintiffs reallege and incorporate by reference each allegation contained in the paragraphs above as though fully set forth herein.

209.    The Named Plaintiffs and the members of the New York Class worked a spread of hours in excess of ten.

210.    Defendants did not have a policy or procedure for the payment of spread of hours pay when the interval between the beginning and ending of the workday exceeded ten.

211.    As a result of this policy, the Defendant failed to pay workers spread of hours pay to which they were entitled.

212.    The Defendants' violations of the NYLL, as described in this Class Action Complaint, have been willful and intentional.

213.    Due to the Defendants' violations of the NYLL, the Named Plaintiffs and the New York Class Members are entitled to recover from the Defendant their unpaid spread of hours pay, liquidated damages, reasonable attorneys' fees, costs of the action, and pre-judgment and post-judgment interest.

## FOURTH CAUSE OF ACTION
### Wage Notice Claim
### NYLL §§ 195(1) & 198
### On behalf of the Named Plaintiffs and the Wage Notice Class

214.    Plaintiffs reallege and incorporate by reference each allegation contained in the paragraphs above as though fully set forth herein.

215.    The Named Plaintiffs and the members of the Wage Notice Class were hired on or

after April 9, 2011.

216.     Defendants had a de-facto policy of not issuing any wage notices within 10 days of hiring as required by NYLL § 195.

217.     Assuming, arguendo, that the Defendants had furnished wage notices, the wage notices furnished did not comply with NYLL § 195, because they did not contain "an affirmation by the employee that the employee accurately identified  his or her primary language to the employer, and that the notice provided by the employer to such employee pursuant to this subdivision was in the language so identified."

218.     Assuming, arguendo, that the Defendants had furnished wage notices, the wage notices furnished did not comply with NYLL § 195, because they were not furnished in the primary language of the employees.

<b>PRAYER FOR RELIEF</b>

WHEREFORE, the Named Plaintiffs respectfully request that this Court grant the following relief:

A.     That, at the earliest possible time, the Named Plaintiffs be allowed to give notice of this collective action;

B.     Certification of the state law claims in this action as class actions;

C.     Unpaid overtime wages under the FLSA;

D.     An amount equal to unpaid overtime as liquidated damages under the FLSA;

E.     Unpaid overtime wages under the NYLL;

F.     Unpaid straight wages under the NYLL;

G.     Unpaid spread of hours pay under the NYLL;

H.     Liquidated damages under the NYLL;

I.      Statutory damages for violations of NYLL § 195(1);

J.      An injunction requiring Defendant to pay all statutorily required wages and cease

        the unlawful activity described herein pursuant to the NYLL;

K.      Attorney's fees and costs of the action;

L.      Pre-judgment and post-judgment interest as provided by law; and

M.      Such other relief as this Court shall deem just and proper.

Dated: Glen Cove, New York
        August 24, 2018

                                        Moser Law Firm, P.C.

                                        By:  Steven J. Moser
                                        3 School Street, Suite 207 B
                                        Glen Cove, New York 11542
                                        (516) 671-1150
                                        F (516) 882-5420
                                        smoser@moseremploymentlaw.co

-33-