**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

NELSON CASTILLO, MARTA VALLADARES,
ARACELY VALLADARES, CARLOS REYES, YOSELY
ESPINAL HENRIQUEZ, individually and on behalf of all
others similarly situated,

                               Plaintiffs,

                    - *against* -

PERFUME WORLDWIDE INC., PERFUME CENTER OF
AMERICA, INC., SHRI PARSHWA PADMAVATI &
CO., LLC, 3OVO LOGISTICS INC., TEXVEL, INC.,
JOHN DOE CORPORATIONS NOS. 1-5, KANAK
GOLIA, PIYUSH GOLIA, PRABHA GOLIA and ROMA
GOLIA,

                               Defendants.

**Case No. 17-cv-2972 (AKT)**

---

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT DATED NOVEMBER 19, 2018

Steven John Moser (SM1133)
MOSER LAW FIRM, P.C.
*Attorneys for Plaintiffs*
3 School Street, Suite 207B
Glen Cove, New York  11542
516.671.1150
F 516.882.5420
smoser@moseremploymentlaw.com

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

THE SETTLEMENT AGREEMENT ........................................................................ 2

QUESTIONS PRESENTED ....................................................................................... 4

What is the temporal scope of the release?

What is the subject matter of the release?

Who will be released?

Who has the obligation to pay the settlement amount?

How will current and former employees release these claims?

What will happen if the Court does not approve the settlement?

ARGUMENT ............................................................................................................... 4

I.    LEGAL PRINCIPLES ................................................................................ 4

    A.    Settlement Agreements are Contracts which should be given their plain meaning. ................................................................................. 4

    B.    Courts should not consider extrinsic evidence in determining whether a contract is ambiguous, but should rather look to the four corners of the agreement. ............................................................................. 5

    C.    A contract should not be interpreted in a way that renders a contract provision meaningless. ................................................................ 5

    D.    Contracts should be interpreted so that, read as a whole, their provisions harmonize with each other. ............................................. 6

    E.    Specific terms and exact terms are given greater weight than general contract language. ....................................................................... 7

    F.    *Expressio Unius Est Exclusio Alterius*: The expression of one thing excludes the other. ............................................................................. 7

II.    APPLICATION OF PRINCIPLES TO QUESTIONS PRESENTED. ........................ 7

    A.    What is the temporal scope of the release?

        *The release covers claims which arose on or before the date of the settlement - November 29, 2018.* ............................................. 7

    B.    What Claims Will be Released?

        *Individuals who participate in the class settlement will release wage and hour claims under the NYLL and the FLSA.  In addition, the named plaintiffs and the 90 opt-ins subject to arbitration agreements will release "all EEOC charges and claims, including Title VII claims and claims under the NYSHRL or the anti-retaliation provisions of the NYLL or the FLSA."* .......................... 8

C.    Who has the obligation to pay, and who will be released?

*All Defendants have a joint and several obligation to pay the settlement amounts, and all Defendants will be released.* .................................................. 8

D.    How will employees release these claims?

*Employees will release claims by cashing settlement checks.* .......................... 9

E.    What will happen if the Court does not approve the settlement?

*If the Court does not approve the settlement, the settlement agreement will not be effective and the arbitrations and litigation will resume as if no settlement was reached.* ................................................................................................ 12

**CONCLUSION** .................................................................................................. **12**

## INTRODUCTION

The parties reached a settlement in a mediation session with Andrew Kimler, Esq., a member of the Eastern District mediation panel, on November 19, 2018.[1]

At the mediation, Defendants were represented by two attorneys– Jacques Catafago and Sima Ali[2]:

**About Jacques Catafago.**  Mr. Catafago graduated summa cum laude from the New York Law School.[3]   During law school he was an editor of the law review and member of Phi Beta Kappa.[4]  He later became a member of the New York Law School faculty.[5]  He was admitted to the New York State bar in 1984[6], and is currently admitted in New York, New Jersey, the District of Columbia, and Florida.[7]

"On August 22, 1996, Mr. Catafago obtained the highest punitive damage jury verdict ever in a section 1983 Civil Rights case."[8]  Mr. Catafago has represented numerous high profile clients throughout his career, and "successfully represented Aaron J. Broder in a case against F. Lee Baily in the United States District Court for the Southern District of New York."[9]

**About Sima Ali.**   Ms. Ali received her B.S. from Cornell University, NY School of Industrial and Labor Relations and her J.D. from George Washington University School of Law.[10]  She was admitted to the New York State bar in 1997 and has over 20 years of

---

[1] *See* Declaration of Steven John Moser in Support of Motion to Enforce Settlement Agreement Dated November 19, 2018 ("Moser Decl."), ¶¶ 3, 9.
[2] Moser Decl. ¶ 4.
[3] Moser Decl. ¶ 5.
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id*.
[9] *Id.*
[10] *Moser Decl. ¶ 6.*

experience.[11]  "After establishing her career as a Labor and Employment attorney, she launched the Ali Law Group in 2011."[12]

The Plaintiffs were represented by Steven J. Moser at the mediation.[13]

**About Steven Moser.**   Steven Moser is a graduate of the Fordham University School of Law.[14]  He has been a member of the New York State Bar since 1997.[15]  He focuses on employee wage and hour and discrimination case.[16]  One of his notable cases was *Lico v. TD Bank*, No. No 14-CV-4729 (JFB) (AKT), 2015 U.S. Dist. LEXIS 70978 (E.D.N.Y. June 1, 2015), in which Judge Bianco found that a nursing mother has a limited private right of action under 29 USC 216 for violations of the nursing mother amendments to the FLSA.[17]

### THE SETTLEMENT AGREEMENT

The material terms of the settlement are contained in a "SUMMARY OF TERMS OF SETTLEMENT – CASTILLO V. PERFUME WORLDWIDE AND 90 MEDIATIONS" (hereinafter "Settlement Agreement" or "Agreement").[18]

The manner in which the Agreement was drafted is as follows:

---

[11] *Id.*

[12] *Id.*

[13] Moser Decl. ¶ 7.

[14] Moser Decl. ¶ 8.

[15] *Id.*

[16] *Id.*

[17] *Id.* Numerous courts have found Judge Bianco's reasoning in *Lico* persuasive, and after *Lico*, a nursing mother's limited right to bring an action under 29 USC 216 for violations of 29 USC 207(r) has been widely recognized. *See Poague v. Huntsville Wholesale Furniture*, No. 7:18-cv-00005-LSC, 2019 U.S. Dist. LEXIS 26670, at *32 (N.D. Ala. Feb. 20, 2019); *Lampkins v. Mitra QSR, L.L.C.*, Civil Action No. 16-647-CFC, 2018 U.S. Dist. LEXIS 201798, at *13 (D. Del. Nov. 28, 2018); *Clark v. City of Tucson*, No. CV 14-02543-TUC-CKJ, 2018 U.S. Dist. LEXIS 69547, at *7 (D. Ariz. Apr. 24, 2018); *Mayer v. Prof'l Ambul., L.L.C.*, 211 F. Supp. 3d 408, 413 (D.R.I. 2016); *Hicks v. City of Tuscaloosa*, No. 7:13-cv-02063-TMP, 2015 U.S. Dist. LEXIS 141649, 2015 WL 6123209 (N.D. Ala. Oct. 19, 2015); *Frederick v. New Hampshire*, No. CV 14-403-SM, 2015 U.S. *Dist. LEXIS 132652*, 2015 WL 5772573 (D.N.H. Sept. 30, 2015).

[18] A copy of the Settlement Agreement is annexed to the Moser Declaration as Exhibit 1.

Counsel for the Plaintiffs typed a first draft on his laptop computer.[19]  However, he did not have access to the printer.[20]  He emailed the first draft of the agreement to Andrew Kimler at 4:48 PM.[21]  Mr. Kimler printed the first draft.[22]  Counsel for the Defendants had the opportunity to review and make handwritten changes to the first draft.[23]  There was discussion between counsel for the parties, and the agreed upon revisions were incorporated into the Agreement.[24]  A second draft was emailed at 4:51 PM.[25]  A third draft was emailed at 5:18 PM.[26]  A fourth draft was emailed at 5:35 PM.[27]  Following each email counsel for the Defendants had the opportunity to review and make changes to the draft agreement, and after discussion between counsel for the parties, the agreed upon revisions were incorporated into the Agreement.[28]  At 5:46 PM the final agreement was emailed to Mr. Kimler.[29]  The Agreement was reviewed by Mr. Catafago, Ms. Ali, Mr. Moser, and was executed by all parties.[30]

The material terms of the agreement are as follows:  "Employer will pay a total amount of $ 1,500,000 (the fund) to a class consisting of all non-exempt employees who were employed at any time from May 19, 2011 to the present." (Settlement Agreement ¶ 1).  "Plaintiffs' counsel will, subject to court approval, distribute the fund[31], including making applications for service awards to the class representatives." (¶ 5). "Any individual who cashes a settlement check will

---

[19] Moser Decl. ¶ 12.
[20] Moser Decl. ¶ 13.
[21] *Id.* .
[22] Moser Decl. ¶ 14.
[23] *Id.*
[24] *Id.*
[25] Moser Decl. ¶ 15.
[26] Moser Decl. ¶ 17.
[27] Moser Decl. ¶ 19.
[28] Moser Decl. ¶¶ 16, 18, 20.
[29] Moser Decl. ¶ 21.
[30] *Id.*
[31] A claims administrator will be used to distribute the fund based upon a predetermined formula (subject to Court approval).

be deemed to have released their claims." (¶ 7(c)).  "Uncashed checks will revert to the employer

after 30 days." (¶ 7(c)).  "All class members shall release wage and hour claims under the NYLL

and the FLSA.  In addition, the 90 opt-ins subject to arbitration agreements shall release the

claims described in paragraph 4." (¶ 1).  The claims described in paragraph 4 are "[a]ll EEOC

charges and claims including Title VII claims and claims under the NYSHRL or the anti-

retaliation provisions of the NYLL or the FLSA, threatened or filed." (¶ 4). "This summary is

intended to bind the parties, subject to approval by the Court." (¶ 8).

## QUESTIONS PRESENTED

The questions presented regarding enforcement of the agreement are as follows:

1.  What is the temporal scope of the release?

2.  What is the subject matter of the release?

3.  Who will be released?

4.  Who has the obligation to pay the settlement amount?

5.  How will current and former employees release these claims?

6.  What will happen if the Court does not approve the settlement?

## ARGUMENT

I.  **LEGAL PRINCIPLES**

   **A.  Settlement Agreements are Contracts which should be given their plain
        meaning.**

Settlement agreements are contracts, and therefore are governed by contract law.

*Goldman v. Commissioner*, 39 F.3d 402, 405 (2d Cir. 1994).  When interpreting a contract,

"words and phrases are given their plain meaning." *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193,

1199 (2d Cir. 1996) (quotation marks omitted) (applying New York law).

"Under New York law, therefore, a court must enforce that plain meaning, 'rather than rewrite an unambiguous agreement." *Krumme v. Westpoint Stevens Inc.*, 238 F.3d 133, 139 (2d Cir. 2000) (quoting *Am. Express Bank, Ltd. v. Uniroyal, Inc.*, 164 A.D.2d 275, 277, 562 N.Y.S.2d 613, 614 (1st Dep't 1990)).

> **B. Courts should not consider extrinsic evidence in determining whether a contract is ambiguous, but should rather look to the four corners of the agreement.**

Principles of contract interpretation dictate that where the language of a contract is unambiguous, "'its meaning must be determined from the four corners of the instrument without resort to extrinsic evidence of any nature.'" *Goodheart Clothing Co. v. Laura Goodman Enters.*, 962 F.2d 268, 272 (2d Cir. 1992) (quoting John D. Calamari & Joseph M. Perillo, Cont*racts 166-67 (3d ed. 1987)); *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) (ambiguity is determined by looking at the agreement "as a whole."); *Kass v. Kass*, 91 N.Y.2d 554, 696 N.E.2d 174, 180, 673 N.Y.S.2d 350 (1998) ("Ambiguity is determined by looking within the four corners of the document, not to outside sources.").

"As the New York Court of Appeals admonished, extrinsic evidence should never 'be considered in order to <u>create</u> an ambiguity in the agreement.'" *Barclays Capital Inc. v. Giddens* (*In re Lehman Bros.*), 478 B.R. 570, 586 (S.D.N.Y. 2012) (citing *W.W.W. Assocs. v. Giancontieri*, 566 N.E.2d 639, 642 (N.Y. 1990)).

> **C. A contract should not be interpreted in a way that renders a contract provision meaningless.**

A court should "give full meaning and effect to all of [the contract's] provisions." *Katel Ltd. v. AT&T Corp., 60*7 F.3d 60, 64 (2d Cir. 2010). "Courts must avoid 'interpretations that render contract provisions meaningless or superfluous.'" *In re Lehman Bros.*, 478 B.R. 570, 585-586 (citing *Manley v. AmBase Corp.*, 337 F.3d 237, 250 (2d Cir. 2003)); *see also Verzani v.*

*Costco Wholesale Corp.*, 641 F. Supp. 2d 291, 299 (S.D.N.Y. 2009)("[T]he [C]ourt may not read the agreement to make any of its terms meaningless, or construe its language to render particular provisions mere surplusage."); *Del Global Techs. Corp. v. Park*, No. 03 Civ. 8867 (PGG), 2008 U.S. Dist. LEXIS 101757, 2008 WL 5329963, at *4 (S.D.N.Y. Dec. 15, 2008) (describing treating contractual language "as meaningless surplusage" as "violating the cardinal rule of contract interpretation" (internal quotation marks omitted)).

Therefore, "[a]n interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless is not preferred and will be avoided if possible." *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005).

### D.  Contracts should be interpreted so that, read as a whole, their provisions harmonize with each other.

A corollary of the rule that each provision of a contract has meaning is the rule that the agreement should be read as whole so that its provisions are in harmony.   "[I]t is a sound principle of construction to interpret a contract so that all its provisions dwell in harmony with each other, to the greatest extent possible." *Remy Amerique, Inc. v. Touzet Distrib., S.A.R.L.*, 816 F. Supp. 213, 217 (S.D.N.Y. 1993).  "Simply put, the 'whole agreement' or 'harmonize' rule expresses the preference that the interpretation of the contract that renders all portions of the contract valid and enforceable, or in harmony, as opposed to rendering any portion of the contract superfluous, inoperative, or void, is preferred."  James J. Sienicki and Mike Yates, *Contract Interpretation: How Courts Resolve Ambiguities in Contract Document*s (March 12, 2012), available at https://www.lexology.com/library/detail.aspx?g=3e97d26c-bf45-4358-8106-c8f75840f91c.

**E.  Specific terms and exact terms are given greater weight than general contract language.**

"It is axiomatic that courts construing contracts must 'give specific terms and exact terms ... greater weight than general language.'" *County of Suffolk v. LILCO*, 266 F.3d 131, 139 (2d Cir. 2001)(citing *Aramony v. United Way*, 254 F.3d 403, 413 (2d Cir. 2001) (quoting Restatement (Second) of Contracts § 203(c) (1981))); *see also Aramony* at 413-14 ("[E]ven when there is no 'true conflict' between two provisions, specific words will limit the meaning of general words if it appears from the whole agreement that the parties' purpose was directed solely toward the matter to which the specific words or clause relate.")

**F.  *Expressio Unius Est Exclusio Alterius*: The expression of one thing excludes the other.**

*Expressio unius est exclusio alterius* is a maxim, or canon of construction, providing that "the expression of one thing is the exclusion of the other." *Realtime Data, L.L.C. v. Melone*, 104 A.D.3d 748, 751, 961 N.Y.S.2d 275 (2d Dep't 2013) (citing *Matter of Petersen v. Inc. Vil. of Saltaire*, 77 A.D.3d 954, 909 N.Y.S.2d 750 (2d Dep't 2010)).

"The New York Court of Appeals has stated that where the 'parties to a contract omit terms . . . that are readily found in other, similar contracts[,] the inescapable conclusion is that the parties intended the omission.'" *Sony Corp. v. Fujifilm Holdings Corp.*, No. 16 Civ. 5988 (PGG), 2017 U.S. Dist. LEXIS 164127, at *17 (S.D.N.Y. Sept. 28, 2017); *Quadrant Structured Prods. Co. v. Vertin*, 23 N.Y.3d 549, 560, 992 N.Y.S.2d 687, 16 N.E.3d 1165 (2014).

## II.  APPLICATION OF PRINCIPLES TO QUESTIONS PRESENTED.

**A.  What is the temporal scope of the release?**

> **The release covers claims which arose on or before the date of the settlement - November 29, 2018.**

The class defined in the agreement signed on November 29, 2018, includes "all non-exempt employees who were employed at any time from May 19, 2011 to the present." The parties could have defined the class to include those employed up to and including the date of execution of a more formal agreement. They did not. They could have stated that class members would release claims up to and including the date of final approval of the settlement. They did not. Therefore, a release with a larger temporal scope should not be read into the agreement. Reading a release with a larger temporal scope would be inconsistent with the definition of the class.

**B.   What Claims Will be Released?**

> *Individuals who participate in the class settlement will release wage and hour claims under the NYLL and the FLSA. In addition, the named plaintiffs and the 90 opt-ins subject to arbitration agreements will release "all EEOC charges and claims, including Title VII claims and claims under the NYSHRL or the anti-retaliation provisions of the NYLL or the FLSA."*

The agreement states that "[a]ll class members shall release wage and hour claims under the NYLL and the FLSA. In addition, the 90 opt-ins subject to arbitration agreements shall release the claims described in paragraph 4", which includes "all EEOC charges and claims, including Title VII claims and claims under the NYSHRL or the anti-retaliation provisions of the NYLL or the FLSA."

**C.   Who has the obligation to pay, and who will be released?**

> *All Defendants have a joint and several obligation to pay the settlement amounts, and all Defendants will be released.*

The agreement states that the "Employer" will pay. Unfortunately, the term "Employer" is not defined in the agreement. Also, while paragraph 1 of the agreement describes the categories of claims that will be released, it does not separately list all parties that will be released.

The operative pleading (the Second Amended Complaint) states that each of the named defendants is an "Employer."

However, the court need not look outside the four corners to resolve the issue of who is to pay, and who is to be released.  The payment provision and the provision describing the categories of claims to be released are contained in the same paragraph.  The "releasee" is the "Employer."  If the Defendants do not wish to assume the obligation to pay, then they are not entitled to be released.

Stated another way, to the extent that the named defendants seek to be released, they are also jointly and severally under an obligation to make the payments described in the settlement agreement.  The litigation should be permitted to continue against those Defendant Employers who do not wish to participate in this settlement by being jointly and severally liable for the payment of the settlement amount.

### D.  How will employees release these claims?

#### *Employees will release claims by cashing settlement checks.*

The contract plainly states that "[a]ny individual who cashes a settlement check will be deemed to have released their claims." ¶ 7(c).

#### 1.  Defendants have taken issue with the method for releasing claims.

Defendants take issue with this mechanism for releasing claims.  They have articulated several reasons why, despite the plain language of the agreement, all class members, including those who do not cash their settlement checks, should release their claims.

Defendants point to paragraph 1 of the agreement, which states that "[a]ll class members shall release wage and hour claims under the NYLL and the FLSA."  According to the Defendants, this mandatory language requires a release by all class members.  They believe that the language does not only refer to the subject matter of claims that may be released (e.g. NYLL,

FLSA, Title VII, etc.) by different groups.  Instead, they believe it means that all individuals who do not "opt-out" will be bound by the release, even if they do not cash their checks.

Defendants also suggest that any individual who does not "opt-out" of the settlement should be deemed to have released their claims, because Rule 23 is a mechanism for binding all class members who do not "opt out."  Therefore, the parties *must* have intended that all class members who did not opt-out would release their claims.

### 2. The Defendants' proposed interpretation of the agreement violates the principles of contract interpretation.

Defendants' proposed interpretation of the agreement violates the principles of contract interpretation.  First, Defendants' interpretation would render the release language of 7(c) "meaningless surplusage."  Second, Defendants' interpretation puts paragraphs 1 and 7 in conflict, rather than in harmony.  Third, their interpretation violates the rule that the expression of one thing (that employees will release claims by cashing checks), excludes the other (that employees will release claims by failing to opt-out). Although the settlement agreement does not contain an opt-out procedure, they believe that such a procedure should be read into the agreement in place of the release procedure contained in paragraph 7(c).

### 3. Plaintiffs' proposed interpretation follows basis principles of contract interpretation.

Plaintiffs' position is that paragraph 1 describes the *categories* of claims that are to be released by different groups, while paragraph 7(c) provides the *mechanism* for releasing these claims.  The Plaintiffs' suggested reading puts paragraphs 1 and 7 in harmony and avoids construing paragraph 7(c) as meaningless surplusage.   The agreement explicitly mentions only one mechanism for release of claims – cashing a check.

In short, the mechanism for release of claims contained in the agreement (cashing a check) should not be "read out" of the agreement, and an alternate mechanism (an "opt-out" procedure) be "read into" the agreement

### 4.   The Plaintiffs' interpretation is not in conflict with Rule 23.

The reference to a "class" does not automatically mean that the parties intended that all class members who did not "opt out" would release their claims.  Nothing in Rule 23(e), which governs the settlement of a class action, requires an "opt-out" settlement.  In fact, the provisions of Rule 23 relating to settlement or compromise of a class action envision settlements which do not bind all class members.  *See* FRCP Rule 23(e)(2)(stating that court approval of a proposed settlement is only required if the proposal "bind[s] class members.").

Courts have approved proposed settlements of class actions which involve mechanisms other than traditional "opt-out" classes**.**  See Lindsey v. Dow Corning Corp, Civil Action No. CV 94-P-11558-S, 1994 U.S. Dist. LEXIS 12521, at *81 (N.D. Ala. Sep. 1, 1994)(approving class settlement in which claimants must "opt-in" by filing a form with claims administrator); *In re Elec. Carbon Prods. Antitrust Litig.*, 447 F. Supp. 2d 389, 406 (D.N.J. 2006) (approving opt-in settlement); *Abbott Labs. v. Alpha Therapeutic Corp.*, No. 97 C 1292, 2000 U.S. Dist. LEXIS 20833, at *5 (N.D. Ill. June 6, 2000) (approving mailing of opt-in form to class members); *Georgine v. Amchem Prods.*, 83 F.3d 610, 633 n.16 (3d Cir. 1996) (observing that due process concerns could be ameliorated if the class action settlement agreement provided for an opt-in rather than opt-out procedure); *Briggs v. United States*, No. C 07-05760 WHA, 2010 U.S. Dist. LEXIS 50990, at *9 (N.D. Cal. Apr. 30, 2010) (approving settlement in which certain class members were required to take affirmative steps to "opt-in"); *Vallabhapurapu v. Burger King Corp.*, No. C 11-00667 WHA, 2012 U.S. Dist. LEXIS 154867, at *6-7 (N.D. Cal. Oct. 26, 2012) (approving class settlement in which class members had an opportunity to "opt-in" to a class

action settlement, and noting that "Class members who do not opt in to receive damages claims do not release their rights to pursue such damages claims separately.")

Here, the parties clearly intended that class members would <u>only</u> release their claims when they cashed their settlement checks.  The purpose of Court review of class settlements is to assure that the settlement is fair to the class.  *See Amchem Prods. v. Windsor*, 521 U.S. 591, 605, 117 S. Ct. 2231, 2241 (1997); *Blatch v. Hernandez,* 2008 U.S. Dist. LEXIS 92984, at *17 (S.D.N.Y. Nov. 3, 2008).  Of course, the procedure described in the agreement may in fact be more favorable to the plaintiff employees than a traditional opt-out procedure.  It guarantees that an individual will only release his claims if he receives compensation.

### E.  What will happen if the Court does not approve the settlement?

*If the Court does not approve the settlement, the settlement agreement will not be effective and the arbitrations and litigation will resume as if no settlement was reached.*

Defendants have suggested that the settlement is binding on the parties, regardless of whether it is approved by the Court.  Of course, the agreement was made subject to Court Approval. (Settlement Agreement ¶ 8).  Therefore, if the Settlement is not approved, the litigation and arbitration should resume as if no settlement was reached.

## CONCLUSION

For the foregoing reasons, plaintiffs move for an order enforcing the settlement agreement between the parties dated November 19, 2019, and further requests leave to file a motion for preliminary approval consistent with the Court's Order interpreting the settlement agreement within 30 days of the Court's order on this motion.  In the Motion for Preliminary Approval the Plaintiff will:

(a)   submit a proposed class notice to each class member *inter alia* (1) advising them of the pendency of the case, the claims made, the proposed settlement terms, and

their approximate individual share, (2) stating the date on which they can expect to receive a settlement check, and how to notify the claims administrator of any changes in address or contact information, (3) explaining that if they cash their settlement check they will be giving up certain rights, (4) advising them of their right to seek individual counsel, and (5) notifying them of their right to object to the settlement and to appear at the fairness hearing;

(b)      request preliminary approval of the proposed distribution formula;

(c)      request preliminary approval of attorneys' fees and costs of administration; and

(d)      request that the Court set a date for a fairness hearing.

Plaintiffs also seek leave to file, within 7 days prior to the fairness hearing, a motion for final approval of the settlement along with a proposed order (1) reporting the class member's response to the settlement; (2) seeking final approval of the terms of the settlement as determined by the Court; (3) seeking final approval of attorneys' fees and administrative costs; (4) dismissing this case with prejudice, subject to the terms of the settlement agreement; (5) dismissing the claims of the opt-ins who are subject to arbitration agreement with prejudice pursuant to the terms of the settlement agreement.

Dated: Glen Cove, New York
　　　　June 17, 2019.

Moser Law Firm, P.C.

By: Steven J. Moser
3 School Street, Suite 207 B
Glen Cove, New York 11542
(516) 671-1150
F (516) 882-5420
smoser@moseremploymentlaw.co