UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NELSON CASTILLO, MARTA VALLADARES, ARACELY VALLADARES, CARLOS REYES, and YOSELY ESPINAL HENRIQUEZ, individually and on behalf of all others similarly situated,<br><br>                                        Plaintiffs,<br><br>                    *-against-*<br><br>PERFUME WORLDWIDE INC., PERFUME CENTER OF AMERICA INC., SHRI PARSHWA PADMAVATI & CO. LLC, 3OVO LOGISTICS INC., TEXVEL INC., JOHN DOE CORPORATIONS NOS. 1-5, KANAK GOLIA, PIYUSH GOLIA, PRABHA GOLIA and ROMA GOLIA,<br><br>                                        Defendants. | 17-CV-02972 (AKT) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO ENFORCE SETTLEMENT AGREEMENT**

CATAFAGO FINI LLP
The Empire State Building
350 Fifth Avenue, Suite 7710
New York, New York 10118
(212) 239-9669
*Attorneys for Defendants*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

PROCEDURAL BACKGROUND ........................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 3

    A.   November 29, 2018 Mediation ................................................................... 3

    B.   The Settlement Term Sheet .......................................................................... 3

    C.   The Settlement Term Sheet was the Product of Extensive Negotiations ........................ 5

ARGUMENT ............................................................................................................................. 6

    I.   THE COURT'S AUTHORITY OVER THE SETTLEMENT AGREEMENT ................... 6

    II.  THE CONCEPT OF A GLOBAL OPT-OUT SETTLEMENT AGREEMENT IS IN
        ACCORDANCE WITH PREVAILING SECOND CIRCUIT LAW ................................. 7

      A.   Because the FLSA Opt-In Procedure Had Been Completed, Only Rule 23 of the Federal
          Rules of Civil Procedure Governs the Settlement Agreement ......................................... 7

      B.   The Second Circuit Has Expressly Rejected the Concept of a Rule 23 "Opt-In" Class
          Action as Advocated by Plaintiffs' Counsel ..................................................................... 9

    III. THE CONCEPT OF AN "OPT-IN" CLASS ALSO FAILS WHEN THE SETTLEMENT
        TERM SHEET IS VIEWED UNDER THE LENS OF TRADITIONAL CONTRACT
        LAW ................................................................................................................................. 11

CONCLUSION ....................................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Acot v. New York Medical College*, 99 F. App'x. 317 (2d Cir. 2004) ........................................... 13

*ADP Dealer Serv., Inc. v. Planet Automall, Inc.*, 2012 WL 95211 (E.D.N.Y. Jan. 12, 2012) ..... 17

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013) .................................................... 7, 8

*Bethlehem Steel Co. v. Turner Constr. Co.*, 2 N.Y.2d 456 (1957) ................................................ 15

*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) ........................................ 7

*Chesapeake Energy Corp. v. Bank of New York Mellon Trust Co., N.A.*, 957 F. Supp. 2d 316 (S.D.N.Y. 2013) ................................................................................................................................ 15

*Chigirinskhiy v. Panchenkova*, 319 F. Supp. 3d 718 (S.D.N.Y. 2018) .......................................... 6

*Clark v. Universal Builders, Inc.*, 501 F.2d 324 (7th Cir. 1974) .................................................. 11

*Comm'n Express Nat'l, Inc. v. Rikhy*, 2006 WL 385323 (E.D.N.Y. Feb. 17, 2006) ..................... 6

*Convergent Wealth Advisors LLC v. Lydian Holding Co.*, 2012 WL 2148221 (S.D.N.Y. June 13, 2012) ................................................................................................................................................. 16

*Corral v. Outer Marker LLC*, 2012 WL 243318 (E.D.N.Y. Jan. 24, 2012) ................................ 16

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ............................................................... 7

*De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301 (3d Cir. 2003) ................................................. 8, 9

*Enter. Wall Paper Mfg. Co. v. Bodman*, 85 F.R.D. 325 (S.D.N.Y. 1980) ................................... 11

*Four Seasons Hotels Ltd. v. Vinnik*, 515 N.Y.S.2d 1 (1st Dept. 1987) ........................................ 11

*Galli v. Metz*, 973 F.2d 145 (2d Cir. 1992) ................................................................................. 17

*Goldman v. C.I.R.*, 39 F.3d 402 (2d Cir. 1994) ..................................................................... 11, 12

*Gortat v. Capala Brothers Inc.*, 2010 WL 1423018 (E.D.N.Y. Apr. 9, 2010) ............................. 9

*Grayson v. K Mart Corp.*, 79 F.3d 1086, (11th Cir. 1996) ........................................................... 9

*Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562 (2002) .................................................... 13, 15

*Greenwich Capital Fin. Prods., Inc. v. Negrin*, 74 A.D.3d 413 (1st Dept. 2010) ....................... 14

*Hall v. ProSource Techs.*, LLC, 2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016) ............................ 8

*Henry v. Little Mint, Inc.*, 2014 WL 2199427 (S.D.N.Y. May 23, 2014) ..................................... 8

*Hillside Metro Assocs, LLC v. JPMorgan Chase Bank, Nat. Ass'n*, 2012 WL 1617157 (E.D.N.Y. May 9, 2012) .................................................................................................................................... 15

*Hostcentric Technologies, Inc. v. Republic Thunderbolt, LLC,* 2005 WL 1377853 (S.D.N.Y. June 9, 2005) ........................................................................................................................................... 12

*Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274 (2d Cir. 1989) .............................. 15, 16

*In re Johns-Manville Corp.,* 759 F.3d 206 (2d Cir. 2014) .......................................................... 12

*In re Lehman Brothers Inc.*, 478 B.R. 570 (S.D.N.Y. 2012) ........................................................ 18

*In re Motors Liquidation Co.*, 460 B.R. 603 (Bankr. S.D.N.Y. 2011) ......................................... 13

*In re South Side House, LLC*, 470 B.R. 659 (Bankr. E.D.N.Y. 2012) .......................................... 19

*In re World Trade Center Disaster Site Litigation*, 834 F. Supp. 2d 184 (S.D.N.Y. 2011) ......... 18

*JA Apparel Corp. v. Abboud*, 568 F.3d 390 (2d Cir. 2009) .......................................................... 13

*Joel A. v. Giuliani*, 218 F.3d 132 (2d Cir. 2000) ......................................................................... 7

*Kern v. Siemens Corp.*, 393 F.3d 120 (2d Cir. 2004) ......................................................... 7, 9, 10, 11

*Kinek v. Paramount Communications, Inc.*, 22 F.3d 503 (2d Cir. 1994) ..................................... 13

*Klos v. Lotnicze*, 133 F.3d 164 (2d Cir. 1997) ...................................................................... 12, 13

*Kohl Indus., Park Co. v. County of Rockland,* 710 F.2d 895 (2d Cir. 1983) ................................ 12

*Krauth v. Executive Telecard, Ltd.*, 890 F. Supp. 269 (S.D.N.Y. 1995) ...................................... 12

*LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195 (2d Cir. 2005)............. 14

*Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458 (2d Cir. 2010).....passim

*Little v. Greyhound Lines, Inc.*, 2005 WL 2429437 (S.D.N.Y. Sept. 30, 2005) ........................... 11

*Lockheed Martin Corp. v. Retail Holdings, N.V.,* 639 F.3d 63 (2d Cir. 2011) ................. 13, 14, 15

*Louisiana Mun. Police Employees' Retirement System v. JPMorgan Chase & Co.*, 2013 WL
    3357173 (S.D.N.Y. July 3, 2013) ........................................................................................... 18

*McCarthy v. Am. Int'l Group, Inc.*, 283 F.3d 121 (2d Cir. 2002) ................................................. 18

*Microboard Processing, Inc. v. Crestron Elec., Inc.*, 2011 WL 1213177 (D. Conn. Mar. 29,
    2011)......................................................................................................................................... 19

*Microboard Processing, Inc. v. Crestron Elec., Inc.*, 2011 WL 1213456 (D. Conn. Jan. 11, 2011)
    ................................................................................................................................................... 6

*Newmont Mines Ltd. v. Hanover Ins. Co.*, 784 F.2d 127 (2d Cir.1986) ...................................... 14

*Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437 (2d Cir. 2005).................................................. 6

*Palmer v. County of Nassau*, 977 F. Supp. 2d 161 (E.D.N.Y. 2013)............................................. 6

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985)........................................................... 10, 11

*Prickett v. DeKalb Cty.*, 349 F.3d 1294 (11th Cir. 2003) ............................................................. 8

*Register.Com, Inc. v. Verio, Inc.*, 356 F.3d 393 (2d Cir. 2004) ................................................... 12

*Reyes v. Metromedia Software, Inc.*, 840 F. Supp. 2d 752 (S.D.N.Y. 2012)......................... 15, 18

*Romero v. La Revise Assocs., L.L.C.*, 58 F. Supp. 3d 411 (S.D.N.Y. 2014)................................. 8

*Ruskay v. Waddell*, 552 F.2d 392 (2d Cir. 1977) ........................................................................ 16

*Seiden Assocs., Inc., v. ANC Holdings, Inc.*, 959 F.2d 425 (2d Cir. 1992)................................. 15

*Severstal U.S. Holdings, LLC v. RG Steel, LLC*, 865 F. Supp. 2d 430 (S.D.N.Y. 2012)............. 17

iii

*Sierra v. Spring Scaffolding LLC*, 2015 WL 10912856 (E.D.N.Y. Sept. 30, 2015) ...................... 8

*Spanski Enterprises, Inc. v. Telewizja Polska, S.A.*, 2013 WL 81263 (S.D.N.Y. Jan. 8, 2013) ... 16

*Teachers Ins. & Annuity Ass'n of Am. v. Tribune Co.*, 670 F. Supp. 491 (S.D.N.Y. 1987) ... 11, 12

*United States v. Erie Cty.*, 763 F.3d 235 (2d Cir. 2014) ................................................................ 6

*V'Soke v. Barwick*, 404 F.2d 495 (2d Cir. 1968) ........................................................................ 13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) .......................................... 7

*Weinrech v. Sandhaus*, 850 F. Supp. 1169 (S.D.N.Y. 1994) ........................................................ 12

*Wells Fargo Bank, N.A. v. ESM Fund I, LP*, 2012 WL 3023985 (S.D.N.Y. July 24, 2012) ........ 17

*Westminster Securities Corp. v. Petrocom Energy Ltd.*, 2012 WL 147917 (2d Cir. Jan. 19, 2012) ................................................................................................................................................ 17

*Willgerodt, on Behalf of Majority Peoples' Fund for 21st Century, Inc. v. Hohri*, 953 F. Supp. 557 (S.D.N.Y. 1997) ...................................................................................................................... 6

*World Trade Ctr. Properties, L.L.C. v. Hartford Fire Ins. Co.*, 345 F.3d 154 (2d Cir. 2003) ...... 14

**PRELIMINARY STATEMENT**

Defendants PERFUME WORLDWIDE INC., PERFUME CENTER OF AMERICA INC., SHRI PARSHWA PADMAVATI & CO. LLC, 3OVO LOGISTICS INC., TEXVEL INC., JOHN DOE CORPORATIONS NOS. 1-5, KANAK GOLIA, PIYUSH GOLIA, PRABHA GOLIA and ROMA GOLIA by their undersigned counsel respectfully submit this brief in support of their motion to enforce a global settlement of this matter reached and memorialized on November 29, 2018.  By this motion, defendants seek to enforce the Settlement Term Sheet in accordance with contract law, and in the only way permissible under Second Circuit precedent, requiring class members, as defined in the Settlement Term Sheet, to opt-out rather than opt-in as plaintiffs' counsel has suggested.

**PROCEDURAL BACKGROUND**

Plaintiffs commenced this action against Defendants on May 16, 2017, alleging purported violations of the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), and the New York Codes, Rules, and Regulations ("NYCRR").  See Doc. 1.  Specifically, plaintiffs have alleged claims for wage notice violations, unpaid wages, and spread of hours.

On August 5, 2017, Plaintiffs filed a motion to certify the collective action.  See Doc. 11. Two days later, Plaintiffs filed an application with the Court seeking the ability to file the motion nunc pro tunc and requesting that the Court set a briefing schedule for Opposition and Reply papers.  See Doc 14.  On August 8, 2017, the Court issued an Order holding that, in its discretion, it would accept Plaintiffs' motion for conditional certification as filed, and also setting the deadlines for the filing of Defendants' Opposition and Plaintiffs' Reply.  See 8/8/17 Electronic Order.  Judge Seybert subsequently referred Plaintiff's motion for conditional certification to Magistrate Judge A. Kathleen Tomlinson for a decision.  See 10/13/2017 Referral Order (Doc. 29).

On March 30, 2018, Magistrate Judge Tomlinson issued an Order (the "3/30/2018 Order") (Doc. 47), granting in part and denying in part Plaintiff's motion for conditional certification. In the 3/30/2018 Order, Magistrate Judge Tomlinson addressed the issue that Defendants' had raised regarding the potential plaintiffs who had signed arbitration agreements, noting "that although Defendants do not challenge the conditional certification sought by Plaintiffs, they do reserve all defenses….In this regard, Defendants explain that 'hundreds of defendants' employees who otherwise potentially could join this suit entered into binding arbitration agreements requiring them to arbitrate all such disputes and so precluding their participation in this case.'" 3/30/2018 Order at 16 fn. 5.

In addition, the 3/30/2018 Order clearly held that the opt-in period for potential plaintiffs would be 60 days. 3/30/2018 Order at 22-23 ("The Notice shall therefore provide that opt-ins have 60 days to return the consent to join form to the Clerk of the Court."). Accordingly, the FLSA opt-in procedure had been completed once the Court granted plaintiffs' motion for conditional certification. All of the FLSA putative class members were afforded an opportunity to opt-in, which is the recognized procedure to proceed to class settlement or class determination.

On July 27, 2018, the Court held a pre-motion conference to discuss defendants' request for leave to file a motion to dismiss, as well as plaintiffs' request for leave to file yet another amended complaint. At the pre-motion conference, the Court granted plaintiffs leave to file a SAC in order to remedy certain defects in the First Amended Complaint, but specifically directed plaintiffs that no additional amendments would be permitted. Following the conference, the Court entered an Order ("7/27/2018 Order") directing plaintiffs to file their SAC by August 24, 2018. See Doc. 272.

Following the plaintiffs' filing of their SAC, the parties sought a stay of the class action

lawsuit to allow the parties to proceed in mediation.  See Doc. 281.  The Court granted the request

for a stay and the mediation was held on November 29, 2018.  As discussed below, a settlement

agreement was reached and reduced to writing in the "Settlement Term Sheet."  Following a

disagreement that arose between the parties regarding the procedures that would apply to the

settlement, the Court ordered briefing on the issues.  See Doc. 284.

**STATEMENT OF FACTS**

**A.    November 29, 2018 Mediation**

The November 29, 2018 mediation was in front of in front of Andrew Kimler, a court-

appointed mediator for the Eastern District of New York.  All of the parties and their counsel were

present, including all of the named plaintiffs.  The mediation lasted eight hours and involved

extensive negotiation regarding the terms of the settlement.  By the resolution of the mediation,

the parties had agreed upon the key terms of the settlement.  These terms were reduced to writing

in the Settlement Term Sheet, which was drafted by plaintiffs' counsel.  The Settlement Term

Sheet was signed by all named plaintiffs and by counsel for all parties in this action and in the

related arbitral proceedings filed by plaintiffs' counsel.

**B.    The Settlement Term Sheet**

The Settlement Term Sheet at issue (Catafago Dec.[1] Ex. A) at paragraph 8 expressly

provided that it is binding on the parties, subject to this Court's approval.    As stated above, the

Settlement Term Sheet was signed by all named plaintiffs and by counsel for all parties in this

action and in the related arbitral proceedings filed by plaintiffs' counsel.  (Pursuant to paragraph

4 of the Term Sheet, all parties expressly consented to the dismissal of the arbitral proceedings so

that they too could be resolved as part of the global settlement agreement reflected by the Term

[1] "Catafago Dec." refers to the Declaration of Jacques Catafago, dated April 17, 2019, submitted in support of defendants' motion to enforce the settlement agreement.

3

Sheet.)  *Id*.

Paragraph 1 of the Settlement Term Sheet describes the funds to be paid by the employer (Perfume Worldwide Inc.).[2]  The same paragraph defines the class consisting of "all non-exempt employees who were employed at any time from May 9, 2011 to the present" and this expressly includes "the 90 opt ins who signed arbitral agreements as well as those who signed arbitration agreements but did not opt in."  Further "[a]ll class members shall release wage and hour claims, under the NYLL and FLSA."  *Id*.

In addition to filing arbitration claims, plaintiff's counsel prior to settling had threatened to bring even more claims, paragraph 4 was negotiated and agreed to, providing that "[a]ll EEOC charges and claims involving Title VII claims and claims under the NYSHRL or the anti-retaliation provisions of the NYLL or the FLSA, threatened or filed, of the Named Plaintiffs or 90 opt-in[] [plaintiffs] subject to arbitration agreements shall be resolved in the context of this settlement and shall be presented to Judge Tomlinson for approval."  *Id*.

To make it abundantly clear that all such claims were being released for the total consideration to be paid by the defendant employer, paragraph 1 carefully concluded that "[i]n addition, the 90 opt-ins subject to arbitration agreements shall release the claims described in paragraph 4."  *Id*.

The Term Sheet at paragraph 1 calls for a payment of $1.5 Million by the employer (Perfume Worldwide Inc.).  There is absolutely no provision for any opt-in by any class member.  The word "opt-in" (other than what already transpired in the case) is absent from the document.  The opt-in procedure under the FLSA was already completed before the settlement was reached.

---

[2] The parties did not provide that any other defendant would make payment.  Indeed, the settlement was reached with all defendants, but plaintiffs' counsel had still not had summonses issued for Roma Golia or Texvel Inc., and the time for all other defendants to respond to the Second Amended Complaint (Doc. 277) had not yet expired at the time the settlement was reached.

Indeed, because the FLSA opt-in procedure had been completed, only Rule 23 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") governs, and Rule 23 does not allow for "opt-in" provisions.

Plaintiffs' counsel focuses on paragraph 7 (c) of the Settlement Term Sheet. However, this clause does not define or limit the already defined class, nor does it create an opt in procedure (which in any event would be unenforceable as set forth in this brief). Rather, this paragraph deals with payment procedures only, and merely gives class members a deadline by which to cash their distribution. The clause simply provides that once a class member cashes his or her check, any claim is released. In other words, there can be no subsequent claim that the computation was in error or that the Settlement is objected to.

Under no stretch can it reasonably be argued that this clause allows class members to opt out. Such a result would render paragraph 1 meaningless. Further, as discussed below, such an interpretation runs directly contrary to Second Circuit case law and contrary to a vital interest in Rule 23 class action settlements - closure and an end to a multiplicity of future suits.

### C.   The Settlement Term Sheet was the Product of Extensive Negotiations

Here, the parties, represented by counsel after almost two years of discovery, engaged in responsible, arm's-length negotiations before and during a mediation session that lasted several hours to reach an early settlement (Catafago Decl. ¶¶ 4-6). The parties exchanged information and documents that enabled both sides to assess plaintiffs' claims and calculate potential damages (Catafago Decl. ¶ 4). During the mediation, the parties engaged in vigorous discussions regarding their respective claims and defenses (Catafago Decl. ¶ 4). At the mediation, the parties reached an agreement on the settlement amount and several other key terms (Catafago Decl. ¶ 5). The parties memorialized all of the material provisions of the settlement in a written, signed Settlement Term Sheet (Catafago Decl. ¶ 6).

## ARGUMENT

## I.    THE COURT'S AUTHORITY OVER THE SETTLEMENT AGREEMENT

This action is now before the Honorable Magistrate Judge A. Kathleen Tomlinson for all purposes, including determination of this motion, pursuant to paragraph 3 of the Term Sheet, and pursuant to the parties' filed formal consent (Doc. 288).

A district court may enforce, on motion, a settlement agreement reached in a case that was pending before it.  *Palmer v. County of Nassau*, 977 F. Supp. 2d 161, 166 (E.D.N.Y. 2013) (quoting *Comm'n Express Nat'l, Inc. v. Rikhy*, 2006 WL 385323, at *2 (E.D.N.Y. Feb. 17, 2006)).

Moreover, "[s]ettlement agreements to end litigation are strongly favored by courts and are not lightly to be cast aside."  *Palmer*, 977 F. Supp. 2d at 161 (citing *Willgerodt, on Behalf of Majority Peoples' Fund for 21st Century, Inc. v. Hohri*, 953 F. Supp. 557, 560 (S.D.N.Y. 1997)).

It is well-established that, where, as here, a court retains subject matter jurisdiction, "a district court has the power to enforce summarily, on motion, a settlement agreement that was reached in a case that was pending before it."  *Chigirinskhiy v. Panchenkova*, 319 F. Supp. 3d 718, 728 (S.D.N.Y. 2018).

Indeed, a summary enforcement proceeding is the judicially preferred course, as "summary enforcement is not only essential to the efficient use of judicial resources but also preserves the integrity of settlement in a meaningful way to resolve legal disputes."  *Microboard Processing, Inc. v. Crestron Elec., Inc.*, 2011 WL 1213456, at *2 (D. Conn. Jan. 11, 2011) (quoting *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 444 (2d Cir. 2005)); *see also United States v. Erie Cty.*, 763 F.3d 235, 240 (2d Cir. 2014) ("the Court may be moved by one of the parties to enforce the terms" of a stipulated order of settlement).

By this motion, defendants seek to enforce the Settlement Term Sheet in the only way permissible under Second Circuit precedent, requiring class members, as defined in the Settlement

Term Sheet,[3] to opt-out rather than opt-in as plaintiffs' counsel has suggested.  *See Kern v. Siemens Corp.*, 393 F.3d 120 (2d Cir. 2004) (reversing the district court in light of substantial authority indicating that Rule 23 precludes certification of "opt in" classes).

Pursuant to Fed. R. Civ. P. 23(e), the settlement of a class action is not effective until judicially approved.  Although there is a general policy favoring settlements, the Court may approve a class action settlement only if it "is fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000).  This requires consideration of both procedural and substantive fairness.  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement.") (citing *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)).  Additionally, "courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474 (S.D.N.Y. 2013).

## II.  THE CONCEPT OF A GLOBAL OPT-OUT SETTLEMENT AGREEMENT IS IN ACCORDANCE WITH PREVAILING SECOND CIRCUIT LAW

### A.  Because the FLSA Opt-In Procedure Had Been Completed, Only Rule 23 of the Federal Rules of Civil Procedure Governs the Settlement Agreement

A settlement in an FLSA collective action is not effective unless it is approved by either a district court or the United States Department of Labor. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015).  However, settlement of a collective action does not implicate the same due process concerns as the settlement of a class action because, unlike in Rule 23 class

---

[3] Paragraph 1 of the Settlement Term Sheet defines the class as "all non-exempt employees who were employed at any time from May 19, 2011 to the present, including the 90 opt-ins who signed arbitral agreements as well as those who signed arbitration agreements but did not opt in."

actions, the failure to opt in to an FLSA collective action does not prevent a plaintiff from bringing suit at a later date.  *See Romero v. La Revise Assocs., L.L.C.*, 58 F. Supp. 3d 411, 421 (S.D.N.Y. 2014); *Beckman v. KeyBank, N.A.*, 293 F.R.D. at 476.  Accordingly, an FLSA settlement is examined with less scrutiny than a class action settlement, and "satisfaction of the Grinnell factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement."  *Henry v. Little Mint, Inc.*, 2014 WL 2199427, at \*7 (S.D.N.Y. May 23, 2014); *accord Hall v. ProSource Techs.*, LLC, 2016 WL 1555128, at \*9 (E.D.N.Y. Apr. 11, 2016); *Sierra v. Spring Scaffolding LLC*, 2015 WL 10912856, at \*4 (E.D.N.Y. Sept. 30, 2015).

The FLSA "opt-in" requirement — mandating that each individual must file an affirmative consent to join the collective action — is the most conspicuous difference between the FLSA collective action device and a class action under Rule 23.  *See De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 306 (3d Cir. 2003).  "This difference means that every plaintiff who opts in to a collective action has party status, whereas unnamed class members in Rule 23 class actions do not."  Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1807 (3d ed. 2016); *see also Prickett v. DeKalb Cty.*, 349 F.3d 1294, 1297 (11th Cir. 2003) ("[B]y referring to them as 'party plaintiff[s],' Congress indicated that opt-in plaintiffs should have the same status in relation to the claims of the lawsuit as the named plaintiffs.").

In this case, the FLSA opt-in procedure had been completed once the Court granted plaintiffs' motion for conditional certification.  All of the FLSA putative class members were afforded an opportunity to opt-in, which the recognized procedure to proceed to class settlement or class determination.  Because, here, the FLSA opt-in procedure had been completed, only Rule 23 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") governs.

**B.      The Second Circuit Has Expressly Rejected the Concept of a Rule 23 "Opt-In" Class Action as Advocated by Plaintiffs' Counsel**

While plaintiffs' counsel argues that the Settlement Agreement Term Sheet should be interpreted as providing an "opt-in" mechanism for determining the class members, the law in this Circuit stands directly contrary to the stance advocated by plaintiffs' counsel.  The Second Circuit has explicitly averred that it "cannot envisage *any* circumstances when Rule 23 would authorize an 'opt in' class in the liability stage of a litigation." *Kern v. Siemens Corp.*, 393 F.3d 120, 128 (2d Cir. 2004) (reversing the district court in light of substantial authority indicating that Rule 23 precludes certification of "opt in" classes) (emphasis added).

The policy favoring the resolution of related claims in a single litigation lies behind the availability of "opt-out," but not "opt-in" class action under Rule 23. *Kern*, 393 F.3d at 124-25. As stated by Judge Glaser in *Gortat v. Capala Brothers Inc.*, "[i]t is for this Court, not the defendants, to designate the appropriate means by which class members may opt out of a certified class."  2010 WL 1423018, at *3 (E.D.N.Y. Apr. 9, 2010).

In *Kern*, the Second Circuit observed that unlike Rule 23, the FLSA provides that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Kern*, 393 F.3d at 128 (quoting 29 U.S.C. § 216(b)); *see also De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 306 (3d Cir. 2003) ("The principal difference between FLSA class actions and Fed.R.Civ.P. 23 class actions is that prospective plaintiffs under the FLSA must consent to join the class.").  The District Court, in *Kern* and in the instant case, however, was asked to certify a class under Rule 23, not under the FLSA.  This is something the Second Circuit explicitly rejected in *Kern*, citing to citing to *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 n.12 (11th Cir. 1996): "[I]t is clear that the requirements for pursuing a § 216(b) class action are independent of, and unrelated to, the

9

requirements for class action under Rule 23 of the Federal Rules of Civil Procedure." *Kern*, 393 F.3d at 128.  If anything, the *Kern* Court noted, the language of the FLSA suggests that, should Congress seek to authorize certification of "opt in" classes, it can do so with unambiguous language.  All parties herein, as in *Kern*, concede that Rule 23 contains no such language.

The Second Circuit in *Kern* rested its holding on crystal clear grounds:

> We first consider whether the District Court erred by certifying what it described as an "opt in" class.  Rule 23(c) contains a so-called "opt out" requirement, mandating that members of a class certified under Rule 23(b)(3) be afforded an opportunity to "request exclusion" from that class.  The language of Rule 23 does not, however, require members of any class affirmatively to opt into membership.  Nor is such an "opt in" provision required by due process considerations.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985) ("We reject [the] contention that the Due Process Clause of the Fourteenth Amendment requires that absent plaintiffs affirmatively 'opt in' to the class, rather than be deemed members of the class if they do not 'opt out.'").

> Not only is an "opt in" provision not required, but substantial legal authority supports the view that by adding the "opt out" requirement to Rule 23 in the 1966 amendments, Congress *prohibited* "opt in" provisions by implication.  Professor Benjamin Kaplan of Harvard Law School, who served as Reporter of the Advisory Committee on Civil Rules from 1960 to 1966, and later as a Justice of the Supreme Judicial Court of Massachusetts, explained that the Committee rejected the suggestion "that the judgment in a (b)(3) class action, instead of covering by its terms all class members who do not opt out, should embrace only those individuals who in response to notice affirmatively signify their desire to be included ...." Benjamin Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I)*, 81 Harv. L.Rev. 356, 397 (1967).  He elaborated the rationale of the Committee's decision:

>> [R]equiring the individuals affirmatively to request inclusion in the lawsuit would result in freezing out the claims of people—especially small claims held by small people—who for one reason or another, ignorance, timidity, unfamiliarity with business or legal matters, will simply not take the affirmative step.  The moral justification for treating such people as null quantities is questionable.  For them the class action serves something like the function of an administrative proceeding where scattered individual interests are represented by the Government.  In the circumstances delineated in subdivision (b)(3), it seems fair for the silent to be considered as part of the class.  Otherwise the (b)(3) type would become a class action which was not that at all—a prime point of discontent with [the pre–1966 version of Rule 23].

*Id*. at 397–98, *cited with approval in Shutts*, 472 U.S. at 813 n. 4, 105 S.Ct. 2965. Courts have generally echoed Justice Kaplan's view that "opt in" provisions are contrary to Rule 23. *See Clark v. Universal Builders, Inc.*, 501 F.2d 324, 340 (7th Cir. 1974) ("[T]he requirement of an affirmative request for inclusion in the class is contrary to the express language of Rule 23(c)(2)(B) ...."); *Enter. Wall Paper Mfg. Co. v. Bodman*, 85 F.R.D. 325, 327 (S.D.N.Y. 1980) ("Rule 23(c)(2)(B) calls for a notice that enables prospective members to opt-out, in language strongly suggesting the impropriety of opt-in requirements (i.e. 'the judgment, whether favorable or not, will include all members who do not request exclusion'). This reading of the rule has been accepted by most courts essentially for the reasons stated by Justice Kaplan ....").

*Kern*, 393 F.3d at 124-25.

Thus, it is clear that the Court must reject the Rule 23 "opt-in" provision that Plaintiffs' counsel advocates.

## III.   THE CONCEPT OF AN "OPT-IN" CLASS ALSO FAILS WHEN THE SETTLEMENT TERM SHEET IS VIEWED UNDER THE LENS OF TRADITIONAL CONTRACT LAW

General principles of contract law must govern the interpretation of a settlement agreement. *Goldman v. C.I.R.*, 39 F.3d 402, 405 (2d Cir. 1994). As settlement agreements are contracts, once reached they are binding and enforceable. *Little v. Greyhound Lines, Inc.*, 2005 WL 2429437, at *1 (S.D.N.Y. Sept. 30, 2005). Preliminary contracts can have binding force. *Teachers Ins. & Annuity Ass'n of Am. v. Tribune Co.*, 670 F. Supp. 491, 498 (S.D.N.Y. 1987).

In determining whether a preliminary commitment should be considered binding, a court looks to the manifested intent of the parties at the time of contracting. *See id.* at 499. Whether such intent exists is a mixed question of law and fact. This means that the question is to be decided by the court if determinable from the language employed in the written instrument, and if not so determinable – if resort must be had to disputed evidence or inferences outside the written words of the instrument – then by the finder of the facts. *Four Seasons Hotels Ltd. v. Vinnik*, 515 N.Y.S.2d 1, 5 (1st Dept. 1987).

"To determine whether a settlement was agreed to, the Court looks first to the plain

language of the agreement." *Goldman*, 39 F.3d at 405 (citing *Kohl Indus., Park Co. v. County of Rockland,* 710 F.2d 895, 903 (2d Cir. 1983) (internal quotations omitted)).  For a contract to be valid under New York law there must be an offer, acceptance, consideration, mutual assent, and an intent to be bound.  *Hostcentric Technologies, Inc. v. Republic Thunderbolt, LLC,* 2005 WL 1377853, at *4 (S.D.N.Y. June 9, 2005) (quoting *Register.Com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004) (collecting cases)).  When the terms of a contract are clear, the subjective intent of the Parties is irrelevant.  *Klos v. Lotnicze*, 133 F.3d 164, 168 (2d Cir. 1997); *accord In re Johns-Manville Corp.,* 759 F.3d 206, 216 (2d Cir. 2014).  All of these elements are easily satisfied by the Settlement Term Sheet.

Further, the fact that the document is preliminary, as required, and subject to Court approval, makes it no less binding.  "A preliminary agreement is binding, despite the desire for a later formal document, 'when the [P]arties have reached complete agreement (including the agreement to be bound) on all issues perceived to require negotiation.  Such an agreement is preliminary only in form — only in the sense that the Parties desire a more elaborate formalization of the agreement.  The second stage is not necessary; it is merely considered desirable.'" *Hostcentric Technologies, Inc.,* 2005 WL 1377853, at *5 (S.D.N.Y. June 9, 2005) (quoting *Teachers Ins. & Annuity Assoc. v. Tribune Co.,* 670 F. Supp. 491, 498 (S.D.N.Y. 1987); *accord Krauth v. Executive Telecard, Ltd.*, 890 F. Supp. 269, 293 (S.D.N.Y. 1995); *Weinrech v. Sandhaus*, 850 F. Supp. 1169, 1176-77 (S.D.N.Y. 1994)).

The Second Circuit has established two principles regarding the binding nature of a preliminary agreement: (1) "if the [P]arties intend not to be bound until the signing of a formal document embodying their agreement, they will not be bound until then; and (2) the mere fact that the [P]arties contemplate memorializing their agreement in a formal document does not prevent

12

their informal agreement from taking effect prior to that event." *V'Soke v. Barwick*, 404 F.2d 495, 499 (2d Cir. 1968); *see also Acot v. New York Medical College*, 99 F. App'x. 317, 318 (2d Cir. 2004).

The cardinal rule of contract interpretation is to ascertain and "give effect to the expressed intentions of the parties." *In re Motors Liquidation Co.*, 460 B.R. 603, 619 (Bankr. S.D.N.Y. 2011) (vacated on other grounds); *see also Lockheed Martin Corp. v. Retail Holdings, N.V.,* 639 F.3d 63, 69 (2d Cir. 2011) ("It is axiomatic under New York State law…that '[t]he fundamental objective of contract interpretation is to give effect to the expressed intentions of the parties.'" (quoting *Klos v. Lotnicze,* 133 F.3d 164, 168 (2d Cir.1997))).

Here, it cannot be rationally contended that the employer or its counsel, after committing to a multi-million dollar payout (with more than three-quarters of a million dollars going to plaintiffs' counsel), would ever agree to a free-floating Rule 23 opt-in class, with all sorts of future claims reserved.  "The best evidence of what parties to a written agreement intend is what they say in their writing." *Greenfield v. Philles Records, Inc.,* 98 N.Y.2d 562, 569 (2002) (internal quotation marks omitted).  The canons of contract construction "require that all provisions of a contract be read together as a harmonious whole, if possible." *Kinek v. Paramount Communications, Inc.*, 22 F.3d 503, 509 (2d Cir. 1994).

In a dispute over the meaning of a contract, "the threshold question is whether the contract is ambiguous." *Lockheed Martin,* 639 F.3d at 69.  "Ambiguity is determined by looking within the four corners of the document, not to outside sources." *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396 (2d Cir. 2009) (internal quotation marks and citation omitted).  Whether a contract is ambiguous is a question of law for the Court. *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir. 2010).  Here, as discussed there really is no ambiguity.

13

It is well settled that a contract is unambiguous "if the language it uses has a definite and precise meaning, as to which there is no reasonable basis for a difference of opinion." *Lockheed Martin*, 639 F.3d at 69. "A written agreement that is complete, clear and unambiguous on its face must be [interpreted] according to the plain meaning of its terms, without the aid of extrinsic evidence." *Law Debenture Trust Co.*, 595 F.3d at 467 (internal quotation marks and citations omitted).

To determine whether a contract is ambiguous, a Court must accord the language of the contract its plain meaning: "In interpreting a contract under New York law, words and phrases ... should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (internal quotations omitted). However, under New York law, "a contract should not be interpreted to produce a result that is absurd, commercially unreasonable or contrary to the reasonable expectations of the parties." *Greenwich Capital Fin. Prods., Inc. v. Negrin*, 74 A.D.3d 413, 415 (1st Dept. 2010) (internal quotation marks omitted); *see also World Trade Ctr. Properties, L.L.C. v. Hartford Fire Ins. Co.*, 345 F.3d 154, 183–84 (2d Cir. 2003), *abrogated on other grounds by Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006) ("Applying New York law ... '[t]he cardinal principle for the construction and interpretation of insurance contracts-as with all contracts-is that the intentions of the parties should control. Unless otherwise indicated, words should be given the meanings ordinarily ascribed to them and absurd results should be avoided.'" (emphasis added) (quoting *Newmont Mines Ltd. v. Hanover Ins. Co.*, 784 F.2d 127, 135 (2d Cir.1986))).

The intent here as manifested in paragraph 1 of the Settlement Term Sheet was to forever settle all claims of the subject class. "The fundamental, neutral precept of contract interpretation

14

is that agreements are construed in accord with the parties' intent." *Hillside Metro Assocs, LLC v. JPMorgan Chase Bank, Nat. Ass'n*, 2012 WL 1617157, at *3 (E.D.N.Y. May 9, 2012) (vacated on other grounds) (citing *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002)).

A fair reading of paragraphs 1 and 7 of the subject document leads to the conclusion that there really is no ambiguity. A contractual provision is ambiguous only "when it is reasonably susceptible to more than one reading." *Reyes v. Metromedia Software, Inc.*, 840 F. Supp. 2d 752, 755 (S.D.N.Y. 2012). "No ambiguity exists where the contract language has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.'" *Chesapeake Energy Corp. v. Bank of New York Mellon Trust Co., N.A.*, 957 F. Supp. 2d 316, 331 (S.D.N.Y. 2013) (reversed on other grounds) (quoting *Law Debenture Trust Co. of NY. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010)). A contract is ambiguous "if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context" of the entire agreement as a whole. *Lockheed Martin Corp. v. Retail Holdings, N.V.,* 639 F.3d 63, 69 (2d Cir. 2011). Here, however, plaintiffs' counsel is asking or what is legally impermissible, so that cannot be the basis for creating an ambiguity. "Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation" (*Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989)) unless each is a "reasonable" interpretation (*Seiden Assocs., Inc., v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992)). Courts should not find the contract language to be ambiguous when an interpretation urged by one party would "strain[] the contract language beyond its reasonable and ordinary meaning." *Bethlehem Steel Co. v. Turner Constr. Co.*, 2 N.Y.2d 456, 459 (1957).

"When the plain, common, and ordinary meaning of the words lends itself to only one reasonable interpretation, that interpretation controls the litigation." *Convergent Wealth Advisors LLC v. Lydian Holding Co.*, 2012 WL 2148221, at *3 (S.D.N.Y. June 13, 2012); *see also Spanski Enterprises, Inc. v. Telewizja Polska, S.A.*, 2013 WL 81263, at *4 (S.D.N.Y. Jan. 8, 2013) ("When Clause IE is viewed in light of the circumstances surrounding settlement, it is clear the intent of the parties was to release all claims between them arising under the Contract."); *Ruskay v. Waddell*, 552 F.2d 392, 395 (2d Cir. 1977) (stating courts should look to the literal language and the circumstances surrounding execution when determining the intention of the parties as to the scope of a release). Here, the plain text of the binding agreement calls for the release of all claims, which under Rule 23 requires an opt-out procedure.

As noted, there is no genuine ambiguity in the document that plaintiffs' counsel drafted. Even if there were a genuine ambiguity, however, the position of plaintiffs' counsel must fail as it is patently unreasonable and would lead to a result not sanctioned by law. "Where a contract provision lends itself to two interpretations, a court will not adopt an interpretation that leads to unreasonable results, but instead will adopt the construction that is reasonable and that harmonizes the affected contract provisions. An unreasonable interpretation produces an absurd result or one that no reasonable person would have accepted when entering the contract." *Convergent Wealth Advisors LLC v. Lydian Holding Co.*, 2012 WL 2148221, at *4 (S.D.N.Y. June 13, 2012). "Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation." *Corral v. Outer Marker LLC*, 2012 WL 243318, at *3 (E.D.N.Y. Jan. 24, 2012) (quoting *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir.1989)).

The threshold issue of determining if an ambiguity, as claimed by plaintiffs' counsel,

actually exists in the Settlement Term Sheet is an issue for this Court to resolve.  *See ADP Dealer Serv., Inc. v. Planet Automall, Inc.*, 2012 WL 95211, at *4 (E.D.N.Y. Jan. 12, 2012) ("Whether the language of a contract is ambiguous is a matter of law for determination by the Court, and the Court concludes that none of the agreements at issue in this case is ambiguous or requires the consideration of extrinsic evidence by the jury.").

Because plaintiffs' tortured construct would render paragraph 1 meaningless, it must fail. "The rules of contract construction require us to adopt an interpretation which gives meaning to every provision of the contract." *Westminster Securities Corp. v. Petrocom Energy Ltd.*, 2012 WL 147917, at *1 (2d Cir. Jan. 19, 2012); *see also Wells Fargo Bank, N.A. v. ESM Fund I, LP*, 2012 WL 3023985, at *2 (S.D.N.Y. July 24, 2012) (explaining that a contract should be read as a whole to ensure that undue emphasis is not placed on particular words and phrases and to avoid an interpretation that would render a provision superfluous); *Law Debenture Trust Co. v. Maverick Tube Corp.*, 595 F.3d 458, 468 (2d Cir. 2010).  This rule also requires rejection of the position of plaintiffs' counsel.  This interpretation would render paragraph 1 entirely meaningless.

*Severstal U.S. Holdings, LLC v. RG Steel, LLC*, 865 F. Supp. 2d 430, 443 (S.D.N.Y. 2012) ("[A]n interpretation of the exclusive-remedy provision … would render the 'exceptions' … superfluous.  Such an interpretation must be rejected according to rules of contract construction."); *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992) ("when interpreting this contract we must consider the entire contract and choose the interpretation … which best accords with the sense of the remainder of the contract.").

It is a familiar proposition of contract law that courts enforce the intentions of the parties to a contract, and that the best expression of the parties' intent is their writing.  Thus, where, as here, a contract is clear on its face, the court's obligation is to enforce it according to its terms.

17

A contract is to be understood in relation to the manifest intention of the parties.  "This means that the manifestation of a party's intention rather than the actual or real intention is ordinarily controlling, for a contract is an obligation attached, by the mere force of law, to certain acts of the parties, usually words, which ordinarily accompany and represent a known intent."  *In re World Trade Center Disaster Site Litigation*, 834 F. Supp. 2d 184, 194 (S.D.N.Y. 2011) (vacated on other grounds).  Here, the intent was to achieve closure – not a continuation of a multitude of claims.

 Because there is no ambiguity, it is respectfully submitted that the Court should rule on the record before it.  "Where contract language is unambiguous, extrinsic evidence of the parties' subjective intent may not be considered."  *Louisiana Mun. Police Employees' Retirement System v. JPMorgan Chase & Co.*, 2013 WL 3357173, at *6 (S.D.N.Y. July 3, 2013); (citing *Law Debenture Trust Co.*, 595 F.3d at 466).

"The proper interpretation of an unambiguous contract is a question of law for the court," and "courts are to enforce them as written."  *Reyes v. Metromedia Software, Inc.*, 840 F. Supp. 2d 752, 755 (S.D.N.Y. 2012).

Only "when the meaning of the contract is ambiguous and the intent of the parties becomes a matter of inquiry, a question of fact is presented."  *Reyes v. Metromedia Software, Inc.*, 840 F. Supp. 2d 752, 755 (S.D.N.Y. 2012).

A Court first examines language for ambiguity; in absence of ambiguity, a court is required to give words of contract their plain meaning; only if a court finds ambiguity does the extrinsic evidence become relevant.  *In re Lehman Brothers Inc.*, 478 B.R. 570, 590 (S.D.N.Y. 2012).  Any ambiguity in a contract is interpreted against the drafter.  *See, e.g., McCarthy v. Am. Int'l Group, Inc.*, 283 F.3d 121, 124 (2d Cir. 2002); *see also In re South Side House, LLC*, 470 B.R. 659, 678

18

(Bankr. E.D.N.Y. 2012).

If, however, the Court somehow finds an ambiguity, and it is necessary to decide which side is correct as to what the Settlement Term Sheet lawfully may allow, Magistrate Judge Tomlinson may conduct an evidentiary hearing. *See, e.g., Microboard Processing, Inc. v. Crestron Elec., Inc.*, 2011 WL 1213177, **2-3 (D. Conn. Mar. 29, 2011) (affirming Magistrate Judge's conclusion that it had authority to conduct summary evidentiary proceeding to enforce settlement agreement).

## CONCLUSION

Based on the foregoing, it is respectfully submitted that the Court should enforce the global settlement of this matter, as advocated herein, that was reached and memorialized in the Settlement Term Sheet.

Dated:  New York, New York
      June 17, 2019

CATAFAGO FINI LLP

By:  *Jacques Catafago*
      Jacques Catafago, Esq.
      The Empire State Building
      350 Fifth Avenue, Suite 7710
      New York, New York 10118
      (212) 239-9669
      *Attorneys for Defendants*