UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NELSON CASTILLO, MARTA VALLADARES, ARACELY VALLADARES, CARLOS REYES, and YOSELY ESPINAL HENRIQUEZ, individually and on behalf of all others similarly situated,<br><br>         Plaintiffs,<br><br>       -*against*-<br><br>PERFUME WORLDWIDE INC., PERFUME CENTER OF AMERICA INC., SHRI PARSHWA PADMAVATI & CO. LLC, 3OVO LOGISTICS INC., TEXVEL INC., JOHN DOE CORPORATIONS NOS. 1-5, KANAK GOLIA, PIYUSH GOLIA, PRABHA GOLIA and ROMA GOLIA,<br><br>         Defendants. | 17-CV-02972 (AKT) |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION TO ENFORCE SETTLEMENT AGREEMENT**

                                CATAFAGO FINI LLP
                                The Empire State Building
                                350 Fifth Avenue, Suite 7710
                                New York, New York 10118
                                (212) 239-9669
                                *Attorneys for Defendants*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.   THE RELEASE COVERS THE CLASS MEMBERS' FEDERAL AND STATE WAGE AND HOUR CLAIMS WITHOUT TEMPORAL LIMITATION ........................................ 2

    II.  THE TERM "EMPLOYER" IN THE SETTLEMENT TERM SHEET CLEARLY REFERS TO DEFENDANT PERFUME WORLDWIDE INC. ........................................... 3

    III. UNDER THE PREVAILING SECOND CIRCUIT CASE LAW AND THE PLAIN LANGUAGE OF THE SETTLEMENT TERM SHEET, ANY PLAINTIFF WHO DOES NOT "OPT-OUT" OF THE SETTLEMENT AGREEMENT RELEASES HIS OR HER CLAIMS ................................................................................................................................ 5

        A.  Plaintiffs Ignore the Prevailing Second Circuit Law that Expressly Rejects the Concept of a Rule 23 "Opt-In" Class Action ................................................................................... 5

        B.  Contrary to Plaintiffs' Assertion, the Defendants' Position is Consistent with the Principles of Contract Interpretation ................................................................................ 9

CONCLUSION .............................................................................................................................. 11


## TABLE OF AUTHORITIES

**Cases**

*Ackal v. Centennial Beauregard Cellular L.L.C.*, 700 F.3d 212 (5th Cir. 2012) ........................... 5

*Alpha Capital Anstalt v. Oxysure Sys., Inc.*, 216 F. Supp. 3d 403 (S.D.N.Y. 2016) ...................... 3

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) .......................................................... 7, 8

*Aramony v. United Way of America*, 254 F.3d 403 (2d Cir. 2003) .................................................. 3

*Briggs v. U.S.*, 2010 WL 1759457 (N.D. Cal. Apr. 30, 2010) .......................................................... 9

*Chevron TCI, Inc. v. Talleyrand Assocs., LLC*, 2003 WL 22977498 (S.D.N.Y. Dec. 19, 2003) ... 2

*Clark v. Universal Builders, Inc.*, 501 F.2d 324 (7th Cir. 1974) ................................................. 5, 7

*Convergent Wealth Advisors LLC v. Lydian Holding Co.*, 2012 WL 2148221 (S.D.N.Y. June 13, 2012) ............................................................................................................................................ 3

*Enter. Wall Paper Mfg. Co. v. Bodman*, 85 F.R.D. 325 (S.D.N.Y. 1980) ...................................... 7

*Georgine v. Amchem Products, Inc.*, 83 F.3d 610 (3d Cir. 1996) .............................................. 7, 8

*Halle v. West Penn Allegheny Health System Inc.*, 842 F.3d 215 (3d Cir. 2016) .......................... 5

*In re Electrical Carbon Products Antitrust Litigation*, 447 F. Supp. 2d 389 (D.N.J. 2006) .......... 9

*Kern v. Siemens Corp.*, 393 F.3d 120 (2d Cir. 2004) ............................................................. 5, 6, 7

*Lindsey v. Dow Corning Corp.*, 1994 WL 578353 (N.D. Ala. Sept. 1, 1994) ............................ 8, 9

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ............................................................... 6, 7

*Vallabhapurapu v. Burger King Corp.*, 2012 WL 5349389 (N.D. Cal. Oct. 29, 2012) ................. 8

Defendants Perfume Worldwide Inc., Perfume Center of America Inc., Shri Parshwa Padmavati & Co. LLC, 3OVO Logistics Inc., Texvel Inc., John Doe Corporations Nos. 1-5, Kanak Golia, Piyush Golia, Prabha Golia and Roma Golia (collectively "Defendants"), by their undersigned counsel, respectfully submit this brief in opposition to the motion to enforce the settlement agreement filed by plaintiffs Nelson Castillo, Marta Valladares, Aracely Valladares, Carlos Reyes and Yosely Espinal Henriquez (collectively, "Plaintiffs").

## PRELIMINARY STATEMENT

Plaintiffs brought this action on over two years ago – on May 16, 2017 – in order to recover damages for alleged violations of the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), and the New York Codes, Rules, and Regulations ("NYCRR"). *See* Doc. 1. Specifically, Plaintiffs have alleged claims for wage notice violations, unpaid wages, and spread of hours.

Following the Plaintiffs filing their second amended complaint ("SAC" or "Complaint"), the Defendants notified the Plaintiffs and the Court that they intended to file a motion to dismiss. In light of this information, even before any party depositions were held, counsel engaged in settlement negotiations and the parties sought a stay of the class action lawsuit to allow the parties to proceed in mediation. *See* Doc. 281. The Court granted the request for a stay and the mediation was held on November 29, 2018 in front of Andrew Kimler, a court-appointed mediator for the Eastern District of New York.

The mediation lasted all day and involved extensive negotiation regarding the terms of the settlement. By the resolution of the eight-hour mediation, the parties appeared to be in agreement on the key terms of the settlement and had reduced them to writing in the Settlement Term Sheet, which was drafted by Plaintiffs' counsel. Defendants and undersigned counsel left the mediation on November 29th truly believing that the resolution of this action was all but complete.

Now, nearly seven months after the November 29, 2018 mediation, Plaintiffs' counsel has submitted moving papers that read like a thinly veiled attempt by Plaintiffs' counsel to blow up the Settlement Agreement.

Given the extensive time and effort that the parties and the Court have put into resolving this action, the Court should reject the Plaintiffs' absurd interpretation of the Settlement Agreement, which would only operate to prolong this litigation, and instead require the Plaintiffs' to honor the terms that they agreed to at the November 29, 2018 mediation.

## ARGUMENT

### I. THE RELEASE COVERS THE CLASS MEMBERS' FEDERAL AND STATE WAGE AND HOUR CLAIMS WITHOUT TEMPORAL LIMITATION

While the Defendants agree with the Plaintiffs that the Release covers the claims of all those employed from May 19, 2011 through November 29, 2018 (*see* Pls. Op. Br. at 8[1]), they dispute the Plaintiffs' position that the Release is therefore somehow limited to claims that arise on or before November 29, 2018 (*id.*). Paragraph 1 of the Settlement Term Sheet clearly provides that all class members shall release their Federal and State wage and hour claims, *without temporal limitation*. Pls. Op. Ex. 1, ¶ 1 ("All class members shall release wage and hour claims under the NYLL and the FLSA.").

What the Plaintiffs appear to be arguing is that, because the class members are temporally limited to those employed from May 19, 2011 through November 29, 2018, their claims should be as well. However, this interpretation requires the Court to go beyond the four corners of the Settlement Term Sheet in violation of general principles of contract law. *Chevron TCI, Inc. v. Talleyrand Assocs., LLC*, 2003 WL 22977498, at *5 (S.D.N.Y. Dec. 19, 2003) ("Where the terms

---

[1] "Pls. Op. Br." refers to the Plaintiffs' opening brief in support of their motion to enforce the settlement agreement filed on June 17, 2019 (Doc. 297).

of an agreement are clear and unambiguous, the Court will not look beyond the 'four corners' of the agreement[.]").

Accordingly, the Court should reject the Plaintiffs' position and hold that the Release applies, without temporal limitation, to the class members' Federal and State wage and hour claims.

## II.  THE TERM "EMPLOYER" IN THE SETTLEMENT TERM SHEET CLEARLY REFERS TO DEFENDANT PERFUME WORLDWIDE INC.

Paragraph 1 of the Settlement Term Sheet states that the "Employer" (singular) will pay. In comparison, Paragraph 6 of the Settlement Term Sheet refers to "Defendants" (plural), and not just the "Employer." This juxtaposition reveals the parties' intention to differentiate between defendant Perfume Worldwide Inc., the actual employer, and the remaining defendants, for whom there has never been any finding of employer status.[2]

Additionally, it is well settled that under New York law, "[w]here a contract provision lends itself to two interpretations, a court will not adopt an interpretation that leads to unreasonable results, but instead will adopt the construction that is reasonable and that harmonizes the affected contract provisions. An unreasonable interpretation produces an absurd result or one that no reasonable person would have accepted when entering the contract." *Convergent Wealth Advisors LLC v. Lydian Holding Co.*, 2012 WL 2148221, at *4 (S.D.N.Y. June 13, 2012). Here, the Plaintiffs' claim that "[t]he litigation should be permitted to continue against those Defendant Employers who do not wish to participate in this settlement by being jointly and severally liable

---

[2] The argument could also be made that the specific term "Employer" limits the meaning of the more general term "defendants." Indeed, "[i]t is a 'fundamental rule of contract construction that specific terms and exact terms are given greater weight than general language' and that 'specific words…limit the meaning of general words if it appears from the whole agreement that the parties' purpose was directed solely toward the matter to which the specific words or clause relate.'" *Alpha Capital Anstalt v. Oxysure Sys., Inc.*, 216 F. Supp. 3d 403, 410 (S.D.N.Y. 2016) (quoting *Aramony v. United Way of America*, 254 F.3d 403, 413-14 (2d Cir. 2003)).

3

for the payment of the settlement amount" (Pls. Op. Br. at 9) is ludicrous. Not only does this assertion beg the question, but its effect – requiring some of the defendants to continue in this litigation – is absurd and entirely inconsistent with the purpose of the settlement agreement as a resolution of this action.

Indeed, the pleadings in this action highlight the absurdity of holding all of the defendants jointly and severally liable as "Employers." In their Second Amended Complaint (the "SAC" or "Complaint"), the Plaintiffs fail to allege that all of the named defendants were involved in the business at all.[3] For example, while the Complaint names Kanak Golia and Prahba Golia as defendants, it does not assert any claim against these individuals. SAC ¶ 2. In addition, the Complaint does not include them in the definition of Defendants against whom relief is sought (*see* SAC at 1) and it does not seek any particular relief from them in the section titled "Prayer for Relief" (*see* SAC at 32-33). Similarly, the Complaint names "Texvel, Inc." as a defendant (*see* SAC ¶¶ 41-44), despite the fact that there is no entity by the name of "Texvel, Inc." with any affiliation to the other defendants. Thus, it is clear that requiring these individuals to either continue in this litigation or commit to being held jointly and severally liable is not only absurd, it cannot be what the parties intended.

Accordingly, under the principles of contract law and the terms of the Settlement Term Sheet, the Court should reject the Plaintiffs' position and find that Perfume Worldwide Inc. is the sole "Employer" and the only defendant liable under the Settlement Agreement and that all of the other defendants are thereby released.

---

[3] Defendants were prepared to file a motion to dismiss, in part to address this issue, but delayed the filing in light of the settlement negotiations.

### III. UNDER THE PREVAILING SECOND CIRCUIT CASE LAW AND THE PLAIN LANGUAGE OF THE SETTLEMENT TERM SHEET, ANY PLAINTIFF WHO DOES NOT "OPT-OUT" OF THE SETTLEMENT AGREEMENT RELEASES HIS OR HER CLAIMS

**A.    Plaintiffs Ignore the Prevailing Second Circuit Law that Expressly Rejects the Concept of a Rule 23 "Opt-In" Class Action**

As the Defendants discussed in their opening brief, the Second Circuit, like numerous other Federal Courts of Appeals, has held that requiring Rule 23 class members to "opt-in" to a settlement is contrary to law. *See* Defs. Op. Br.[4] at 9-11; Fed. R. Civ. P. 23(c)(2)(B)(v) ("the court will exclude from the class any member who requests exclusion"); *Kern v. Siemens Corp.*, 393 F.3d 120, 124 (2d Cir. 2004) ("Not only is an 'opt-in' provision not required, but substantial legal authority supports the view that by adding the 'opt-out' requirement to Rule 23 in the 1966 amendments, Congress prohibited 'opt-in' provisions by implication."); *see also Halle v. West Penn Allegheny Health System Inc.*, 842 F.3d 215, 225 (3d Cir. 2016) ("This 'opt-in' requirement – mandating that each individual must file an affirmative consent to join the collective action – is the most conspicuous difference between the FLSA collective action device and a class action under Rule 23."); *Ackal v. Centennial Beauregard Cellular L.L.C.*, 700 F.3d 212, 217 (5th Cir. 2012) ("Simply put, there is no authority for establishing 'opt-in' classes in which the class members must take action to be included in the class.") (citation and internal quotation marks omitted); *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 340 (7th Cir. 1974) ("The requirement of an affirmative request for inclusion in the class is contrary to the express language of Rule 23(c)(2)(b).").

Indeed, as the Defendants explained in their opening brief (Defs. Op. Br. at 9), the Second Circuit has explicitly averred that it "cannot envisage *any* circumstances when Rule 23 would

---

[4] "Defs. Op. Br." refers to Defendants' opening brief in support of their motion to enforce the settlement agreement filed on June 17, 2019 (Doc. 300).

5

authorize an 'opt in' class in the liability stage of a litigation." *Kern v. Siemens Corp.*, 393 F.3d 120, 128 (2d Cir. 2004) (reversing the district court in light of substantial authority indicating that Rule 23 precludes certification of "opt in" classes) (emphasis added).[5]

> The Second Circuit in *Kern* rested its holding on crystal clear grounds:
>
> We first consider whether the District Court erred by certifying what it described as an "opt in" class. Rule 23(c) contains a so-called "opt out" requirement, mandating that members of a class certified under Rule 23(b)(3) be afforded an opportunity to "request exclusion" from that class. The language of Rule 23 does not, however, require members of any class affirmatively to opt into membership. Nor is such an "opt in" provision required by due process considerations. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985) ("We reject [the] contention that the Due Process Clause of the Fourteenth Amendment requires that absent plaintiffs affirmatively 'opt in' to the class, rather than be deemed members of the class if they do not 'opt out.'").
>
> Not only is an "opt in" provision not required, but substantial legal authority supports the view that by adding the "opt out" requirement to Rule 23 in the 1966 amendments, Congress *prohibited* "opt in" provisions by implication. Professor Benjamin Kaplan of Harvard Law School, who served as Reporter of the Advisory Committee on Civil Rules from 1960 to 1966, and later as a Justice of the Supreme Judicial Court of Massachusetts, explained that the Committee rejected the suggestion "that the judgment in a (b)(3) class action, instead of covering by its terms all class members who do not opt out, should embrace only those individuals who in response to notice affirmatively signify their desire to be included ...." Benjamin Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I)*, 81 Harv. L.Rev. 356, 397 (1967). He elaborated the rationale of the Committee's decision:
>
>> [R]equiring the individuals affirmatively to request inclusion in the lawsuit would result in freezing out the claims of people—especially small claims held by small people—who for one reason or another, ignorance, timidity, unfamiliarity with business or legal matters, will simply not take the affirmative step. The moral justification for treating such people as null

---

[5] The Defendants further noted in their opening brief that in *Kern*, the Second Circuit observed that unlike Rule 23, the FLSA provides that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Defs. Op. Br. at 9-11 (quoting *Kern*, 393 F.3d at 128). However, the District Court in *Kern*, like in the instant case, was asked to certify a class under Rule 23, not under the FLSA, and "it is clear that the requirements for pursuing a § 216(b) class action are independent of, and unrelated to, the requirements for class action under Rule 23 of the Federal Rules of Civil Procedure." *Kern*, 393 F.3d at 128. If anything, the *Kern* Court noted that the language of the FLSA suggests that, should Congress seek to authorize certification of "opt in" classes, it can do so with unambiguous language. All parties herein, as in *Kern*, concede that Rule 23 contains no such language.

6

> quantities is questionable. For them the class action serves something like the function of an administrative proceeding where scattered individual interests are represented by the Government. In the circumstances delineated in subdivision (b)(3), it seems fair for the silent to be considered as part of the class. Otherwise the (b)(3) type would become a class action which was not that at all—a prime point of discontent with [the pre–1966 version of Rule 23].
>
> *Id*. at 397–98, *cited with approval in Shutts*, 472 U.S. at 813 n. 4, 105 S.Ct. 2965. Courts have generally echoed Justice Kaplan's view that "opt in" provisions are contrary to Rule 23. *See Clark v. Universal Builders, Inc.*, 501 F.2d 324, 340 (7th Cir. 1974) ("[T]he requirement of an affirmative request for inclusion in the class is contrary to the express language of Rule 23(c)(2)(B) ...."); *Enter. Wall Paper Mfg. Co. v. Bodman*, 85 F.R.D. 325, 327 (S.D.N.Y. 1980) ("Rule 23(c)(2)(B) calls for a notice that enables prospective members to opt-out, in language strongly suggesting the impropriety of opt-in requirements (i.e. 'the judgment, whether favorable or not, will include all members who do not request exclusion'). This reading of the rule has been accepted by most courts essentially for the reasons stated by Justice Kaplan....").

*Kern*, 393 F.3d at 124-25.

In arguing that "[c]ourts have approved proposed settlements of class actions which involve mechanisms other than traditional 'opt-out' classes," Plaintiffs entirely ignore the Second Circuit's discussion in *Kern*. *See* Pl. Op. Br. at 11-12. In fact, Plaintiffs fail to cite *any* New York state or federal case law that supports their assertion that the proposed "opt-in" provision is consistent with Rule 23 and the cases that the Plaintiffs do cite are inapposite or do not stand for the propositions that the Plaintiffs allege they do.

First, Plaintiffs cite several asbestos cases in which the courts denied class certification on the grounds that the requirements for class certification regarding commonality of issues and adequacy of representation were not met. *Georgine v. Amchem Products, Inc.*, 83 F.3d 610, 626 (3d Cir. 1996) ("we conclude that this class, considered as a litigation class, cannot meet the 23(a) requirements of typicality and adequacy of representation"); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 628 (1997) ("we have concluded that the class in this case cannot satisfy the

7

requirements of common issue predominance and adequacy of representation").[6] Notably, in *Georgine*, the Third Circuit expressly acknowledged that it was not addressing the issue of "whether the Constitution or Rule 23 prohibits binding futures plaintiffs to a 23(b)(3) opt-out class action." 83 F.3d at 634.

Second, Plaintiffs misconstrue several of the cases' holdings. For example, Plaintiffs' assertion that the court in *Vallabhapurapu v. Burger King Corp.*, 2012 WL 5349389 (N.D. Cal. Oct. 29, 2012) approved a class settlement "in which class members had an opportunity to 'opt-in' to a class action settlement" is misleading. Pl. Op. Br. at 11. *Vallabhapurapu* is a lower court case from the Northern District of California in which the plaintiffs sought both monetary and injunctive relief. While the plaintiffs did have to opt-in to receive money damages, plaintiffs who failed to do so were still bound by the settlement order and judgment and waived their right to injunctive relief unless they affirmatively opted-out of the settlement. *Vallabhapurapu v. Burger King Corp.*, 2012 WL 5349389, at *5 (N.D. Cal. Oct. 29, 2012) ("all class members who did not exclude themselves from the settlement by filing a timely request for exclusion are bound by this settlement order and judgment"). Accordingly, it is not true that the court approved a class settlement requiring class members to "opt-in" to the class action settlement.

In addition, while the Plaintiffs claim that in *Lindsey v. Dow Corning Corp.* the court approved a class settlement "in which claimants must 'opt-in' by filing a form with [a] claims administrator," the Plaintiffs fail to mention that this provision only applies to *foreign claimants*. In comparison, "[d]omestic class members who do not learn of the settlement and consequently

---

[6] Plaintiffs cite the Supreme Court's decision in *Amchem Products, Inc. v. Windsor* in support of their statement that "[t]he purpose of Court review of class settlements is to assure that the settlement is fair to the class." Pl. Op. Br. at 12. Accordingly, it is notable that in *Windsor* the Supreme Court explained that "Rule 23(b)(3) 'opt-out' class actions superseded the former 'spurious' class action, so characterized because it generally functioned as a permissive joinder ('opt-in') device." *Id.* at 615.

8

do not register or opt out by the 1994 deadlines face the loss of their rights to sue in courts in their own country and retain only the right, which may be of little value, to become late registrants under the settlement." *Lindsey v. Dow Corning Corp.*, 1994 WL 578353, at *4 (N.D. Ala. Sept. 1, 1994).

Furthermore, in *Briggs v. U.S.*, the court certified a class consisting, in part, of "[a]ll natural persons…(3) whose amount of net offset payments was less than $10,000, or who are willing to waive their claim with respect to offsets that would bring their refund claim above $10,000." *Briggs v. U.S.*, 2010 WL 1759457, at * 2 (N.D. Cal. Apr. 30, 2010). Thus, the seven individuals whose claims exceeded $10,000 only became included in the intended class of people because they signed the so-called "opt-in" waiver form. Otherwise, they would not have fit the class description.

Finally, the only reason that the *In re Electrical Carbon Products Antitrust Litigation* court required certain plaintiffs to "opt-in" to the settlement agreement was because those plaintiffs had previously chosen to "opt-out." Thus, the court was merely allowing the plaintiffs to rejoin the class by revoking their decision to "opt-out" in order to opt *back* in. *In re Electrical Carbon Products Antitrust Litigation*, 447 F. Supp. 2d 389, 396-97 (D.N.J. 2006).

Thus, while the Plaintiffs are attempting to convince the Court that requiring an "opt-in" class is not inconsistent with Rule 23 and, in fact, is a common occurrence, the case law simply does not support that position. Further, that position is contrary to binding Second Circuit authority, which Plaintiffs have ignored. Accordingly, the Court should reject the Rule 23 "opt-in" provision that Plaintiffs' counsel advocates.

**B. Contrary to Plaintiffs' Assertion, the Defendants' Position is Consistent with the Principles of Contract Interpretation**

In their opening brief, Plaintiffs argue that Defendants' proposed interpretation, requiring Plaintiffs to opt-out of the settlement agreement, violates the principles of contract interpretation for several reasons. Pls. Op. Br. at 10. Plaintiffs assert that "Defendants' interpretation would

9

render the release language of 7(c) 'meaningless surplusage,'" "puts paragraphs 1 and 7 in conflict," and "violates the rule that the expression of one thing…, excludes the other[.]" Pls. Op. Br. at 10. Not so. What Plaintiffs fail to recognize is that under the payment schedule provided in Paragraphs 7(a) and 7(b) of the Settlement Term Sheet, the final payment to the fund is not due until 25 months after the date that the Court approves the settlement agreement. Accordingly, Defendants will have to wait for over two years (when the final $750,000 installment is paid) before they are completely released from liability. Thus, Paragraph 7(c)'s provision that "[a]ny individual who cashes a settlement check will be deemed to have released their claims" provides the Defendants with some intermediary relief by reducing their liability in proportion with the number of Plaintiffs that have been paid out from the fund. Further, Paragraph 7(c) simply results in a release of any mathematical issue or claim with regard to the amount of any disbursement check. Rather than conflicting with the Release in Paragraph 1, the language in Paragraph 7(c) clarifies that – notwithstanding the fact that the Defendants may still have outstanding obligations under the Settlement Agreement – as soon as class members cash their checks, the Defendants are no longer liable to them.

10

## CONCLUSION

Based on the foregoing, it is respectfully submitted that the Court should deny Plaintiffs' motion to enforce the Settlement Agreement as advocated in Plaintiffs' moving papers.

Dated: New York, New York
July 15, 2019

                                                CATAFAGO FINI LLP

By: *Jacques Catafago*
       Jacques Catafago, Esq.
       The Empire State Building
       350 Fifth Avenue, Suite 7710
       New York, New York 10118
       (212) 239-9669
       *Attorneys for Defendants*