**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

NELSON CASTILLO, MARTA VALLADARES,
ARACELY VALLADARES, CARLOS REYES, YOSELY
ESPINAL HENRIQUEZ, individually and on behalf of all          **Case No. 17-cv-2972 (AKT)**
others similarly situated,

                                              Plaintiffs,

                        *- against -*

PERFUME WORLDWIDE INC., PERFUME CENTER OF
AMERICA, INC., SHRI PARSHWA PADMAVATI &
CO., LLC, 3OVO LOGISTICS INC., TEXVEL, INC.,
JOHN DOE CORPORATIONS NOS. 1-5, KANAK
GOLIA, PIYUSH GOLIA, PRABHA GOLIA and ROMA
GOLIA,

                                              Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF**
**CLASS AND COLLECTIVE ACTION SETTLEMENT**

Steven John Moser (SM1133)
MOSER LAW FIRM, P.C.
5 East Main Street
Huntington, New York  11743
631-824-0200
steven.moser@moserlawfirm.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................................II

INTRODUCTION AND PROCEDURAL HISTORY ........................................................ 1

SUMMARY OF SETTLEMENT TERMS ........................................................................ 4

I.  PROPOSED CLASS AND MONETARY TERMS ...................................... 4

II.  PROCEDURAL TERMS .............................................................................. 6

III.  SCOPE OF RELEASE ................................................................................. 8

IV.  CLASS ACTION SETTLEMENT PROCEDURE ....................................... 9

ARGUMENT ................................................................................................................... 12

I.  PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE .............. 12

II.  THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE. ...... 13

A.  Litigation Through Trial Would Be Complex, Costly and Long (*Grinnell* Factor 1). ..... 14

B.  The Reaction of the Class Has Been Positive (*Grinnell* Factor 2). .................................. 15

C.  Discovery Has Advanced Far Enough To Allow The Parties To Responsibility Resolve The Case (*Grinnell* Factor 3). ........................................................................................... 16

D.  Plaintiffs Would Face Risks If The Case Proceeded (*Grinnell* Factors 4 and 5). ............ 16

E.  The Risks Of Maintaining The Class Action Through Trial (*Grinnell* Factor 6). ............ 17

F.  Whether Defendants Could Withstand a Greater Judgment (*Grinnell* Factor 7).............. 19

G.  The Settlement Fund Is Substantial In Light Of The Possible Recovery And The Attendant Risks Of Litigation (*Grinnell* Factors 8 and 9). ................................................ 20

III.  PRELIMINARY CERTIFICATION OF THE RULE 23 SETTLEMENT CLASS IS APPROPRIATE ........................................................................................................... 21

A.  Numerosity.......................................................................................................................... 22

B.  Commonality........................................................................................................................ 22

C.  Typicality ............................................................................................................................. 23

D.  Adequacy of the Named Plaintiffs ...................................................................................... 23

E.  Ascertainably ....................................................................................................................... 24

F.  Certification Is Proper Under Rule 23(b)(3) ....................................................................... 24

CONCLUSION ................................................................................................................ 26

## <u>TABLE OF AUTHORITIES</u>

**Supreme Court Opinions**

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997) ............................................................ 24

*Epic Sys. Corp. v. Lewis*,
    138 S. Ct. 1612 (2018) .................................................. 2, 3, 4, 5, 18

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ......................................................... 17, 22

**Second Circuit Opinions**

*Belfiore v. P&G*,
    311 F.R.D. 29 (E.D.N.Y. 2015) ............................................. 21

*Brecher v. Republic of Arg.*,
    806 F.3d 22 (2d Cir. 2015) ................................................. 23

*Cheeks v. Freeport Pancake House, Inc.*,
    796 F.3d 199 (2d Cir. 2015) ................................................. 8

*Clark v. Ecolab, Inc.*, No. 06 Civ. 5672 (PAC), 2009 U.S. Dist. LEXIS 108736 (S.D.N.Y. Nov.
    17, 2009) ...................................................................... 12

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006) ............................................... 23

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ............................................... 13

*Dziennik v. Sealift, Inc.*,
    No. 05-CV-4659 (DLI)(MDG), 2007 U.S. Dist. LEXIS 38701 (E.D.N.Y. May 29, 2007) ... 23

*Elkind v. Revlon Consumer Prods. Corp.*,
    No. CV 14-2484 (JS) (AKT), 2017 U.S. Dist. LEXIS 24512 (E.D.N.Y. Feb. 17, 2017) ...... 21

*Fogarazzo v. Lehman Bros.*,
    232 F.R.D. 176 (S.D.N.Y. 2005) ........................................... 23

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005) .......................................... 12

*Garcia v. Pancho Villa's of Huntington Vill., Inc.*,
    No. 09-CV-486 (ETB), 2012 U.S. Dist. LEXIS 144446 (E.D.N.Y. Oct. 4, 2012) ............... 19

*Green v. Wolf Corp.*,
    406 F.2d 291 (2d Cir. 1968) ............................................... 24

*Guippone v. BH S&B Holdings LLC*, 2016 U.S. Dist. LEXIS 134899 (S.D.N.Y. Sep. 23, 2016)
........................................................................................................................................ 17

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000) ...................................................................... 13

*In re Ira Haupt & Co.*,
   304 F. Supp. 917 (S.D.N.Y. 1969) ........................................................................ 16

*In re PaineWebber Pshps. Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ........................................................................... 15

*In re Petrobras Sec. Litig.*,
   862 F.3d 250 (2d Cir. 2017) .................................................................................. 23

*In re Traffic Exec. Ass'n—E. Railroads,*
   627 F.2d 631 (2d Cir. 1980) .................................................................................. 12

*Johnson v. Nextel Commc'ns Inc.*,
   780 F.3d 128 (2d Cir. 2015) .................................................................................. 24

*Karic v. Major Auto. Cos.*,
   No. 09 CV 5708 (CLP), 2016 U.S. Dist. LEXIS 57782 (E.D.N.Y. Apr. 27, 2016) ............. 16

*Kochilas v.* Merch. Servs.,
   No. 1:14-cv-00311, 2015 U.S. Dist. LEXIS 135553, (E.D.N.Y. Oct. 2, 2015) ................... 12

*Lovaglio v. W & E Hosp. Inc.*,
   No. 10 CIV 7351 (LLS), 2012 U.S. Dist. LEXIS 72645 (S.D.N.Y. Mar. 12, 2012) ............. 12

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................................................... 15

*Marisol A. by Forbes v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997) .................................................................................. 22

*Martin v. Waldbaum, Inc.*
   (DRH), No. CV 86-0861 (DRH), 1992 U.S. Dist. LEXIS 16007 (E.D.N.Y. Oct. 14, 1992) . 16

*Maywalt v. Parker & Parsley Petrol. Co.*,
   67 F.3d 1072 (2d Cir. 1995) .................................................................................. 11

*Mendez v. U.S. Nonwovens Corp.*,
   314 F.R.D. 30 (E.D.N.Y. 2016) ....................................................................... 17, 21

*Nayal v. HIP Network Servs. IPA, Inc.*,
   620 F. Supp. 2d 566 (S.D.N.Y. 2009) .................................................................... 18

*Poplawski v. Metroplex on the Atl., L.L.C.*,
   No. 11-CV-3765, 2012 U.S. Dist. LEXIS 46408, 2012 WL 1107711 ................................... 22

*Ramos v. SimplexGrinnell LP*,
    796 F. Supp. 2d 346 (E.D.N.Y. 2011) ............................................................ 17, 24

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015) .......................................................................... 17, 24

*Rui Xiang Huang v. J&A Ent. Inc.*,
    No. 09-CV-5587 (ARR) (VVP), 2012 U.S. Dist. LEXIS 184727, 2012 WL 6863918 ......... 16

*Salim Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
    659 F.3d 234 (2d Cir. 2011) .......................................................................... 21, 22

*Sierra v. Spring Scaffolding L.L.C.*,
    No. 12-cv-05160 (JMA), 2015 U.S. Dist. LEXIS 178006 (E.D.N.Y. Sept. 30, 2015) .......... 20

*Singh v. Patel*,
    No. 12-CV-3204 (SJF)(ETB), 2013 U.S. Dist. LEXIS 72619 (E.D.N.Y. May 16, 2013) ..... 16

*Spicer v. Pier Sixty L.L.C.*,
    269 F.R.D. 321 (S.D.N.Y. 2010) ........................................................................ 22

*Sukhnandan v. Royal Health Care of Long Island, L.L.C.*, No. 12 Civ.
    4216 (RLE), 2013 U.S. Dist. LEXIS 126004 (S.D.N.Y. Sept. 3, 2013) ........................ 12, 25

*Tiro v. Pub. House Invs., L.L.C.*,
    288 F.R.D. 272 (S.D.N.Y. 2012) ........................................................................ 22

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396F.3d 96, (2d Cir. 2005) ............................................................................... 11

*Young Ok v. Family Bob*,
    No. 20-CV-906 (ENV), 2021 U.S. Dist. LEXIS 15713 (E.D.N.Y. Jan. 26, 2021) ............... 16

*Yuzary v. HSBC Bank USA, N.A*, No. 12 Civ.
    3693 (PGG), 2013 U.S. Dist. LEXIS 61643 (S.D.N.Y. Apr. 29, 2013) .................................. 11

## Federal Court Opinions

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) .............................................................................. 15

*Officers for Just. v. Civil Serv. C*om.,
    688 F.2d 615 (9th Cir. 1982) ............................................................................. 20

## United States Code

9 U.S.C. § 2 ....................................................................................................... 18

29 U.S.C. § 201 .................................................................................................... 1

29 U.S.C. § 216 .................................................................................................... 1

**State Cases**

*Kolchins v. Evolution Mkts., Inc.*,
    2018 N.Y. Slip Op. 02209 (N.Y. Mar. 29, 2018) ................................................................... 14

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................. *passim*

**Other**

12 NYCRR 142-2.4 ...................................................................................................................... 1

29 C.F.R. § 785.18 ...................................................................................................................... 16

## <u>INTRODUCTION AND PROCEDURAL HISTORY</u>[1]

This class and collective action was commenced on May 16, 2017 by (1) Nelson Castillo, (2) Marta Valladares, (3) Aracely Valladares, (4) Carlos Reyes, and (5) Yosely Espinal Henriquez against Perfume Worldwide, Inc. ("Perfume Worldwide") and Piyush Golia. *See* Compl., ECF No. 1.[2]  Perfume Worldwide is an online retailer of discount fragrances, hair and skin care products, cosmetics, candles and accessories.  The Plaintiffs and those similarly situated worked primarily at a warehouse and shipping facility located at 2020 Ocean Avenue, Ronkonkoma, New York. The original complaint asserted four causes of action.  The first three causes of action (*See* Compl. ¶¶ 110-143) sought overtime under the Fair Labor Standards Act (29 U.S.C. § 201, *et seq.*, "FLSA") and overtime and straight wages under the New York Labor Law ("NYLL") arising from the Defendants' uniform policy of not compensating employees for a mandated 20-minute break period each morning.  The fourth cause of action (*see* Compl. ¶¶ 144-149) sought the recovery of spread of hours pay under Article 19 of the NYLL and the Miscellaneous Industry Wage Order (12 NYCRR 142-2.4). Perfume Worldwide and Piyush Golia answered the complaint on July 14, 2017.  *See* ECF No. 45.[3]

On August 5, 2017, the Plaintiffs filed a motion for Conditional certification of this action as a representative collective action pursuant to the FLSA , 29 U.S.C. § 216, on behalf of all current and former hourly employees of Perfume Worldwide, Inc. who had been employed at any time since May 16, 2014.  *See* ECF Nos. 11-13.  The motion was granted by order dated March 30, 2018.  *See* ECF No. 47.  Following notice to the collective class, 189 individuals filed opt-in forms to join the FLSA collective.  During the course of discovery, the Defendants produced class action

---

[1] Facts set forth in this section are supported by the Declaration of Steven J. Moser in Support of Plaintiffs' Motion for Preliminary Approval of Class And Collective Action Settlement.
[2] A copy the Complaint is annexed to the Moser Declaration as Exhibit 1.
[3] A copy of the Answer is annexed to the Moser Declaration as Exhibit 2.

waiver and arbitration agreements for 91 of the individuals who had opted in.  At the time that collective action certification was granted *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018) had been argued but not yet decided, and the parties were expecting the Supreme Court to weigh in on the enforceability of the arbitration agreements.

Defendants' Answer to the original complaint asserted that they had acted in "good faith"[4] and that they "believed in good faith, and had reasonable grounds to believe that Plaintiffs were properly paid per the requirements of the FLSA and NYLL."[5]  In support of this affirmative defense, the Defendants produced an email from Barbara Kalish, Esq. of the Scher Law Firm to Perfume Worldwide's sister company, Perfume Center of America, Inc. advising that a 20 break was *not compensable.*  Plaintiffs' counsel served subpoenas upon the Scher Law Firm and Barbara Kalish.  Following full briefing on the Scher Law Firm's motion to quash said subpoenas (*See* ECF Nos. 56-62, April 26, 2018)  Court permitted the depositions of former counsel to proceed on the limited issue of the 20-minute break.  *See* ECF No. 207 (June 13, 2018).  Depositions of Martin H. Scher, Esq. and Barbara Kalish, Esq. later confirmed that Perfume Center had been advised by counsel that a 20 minute break was *not compensable.*

Following a period of extensive discovery, the Plaintiffs were given leave by Judge Seybert to file an amended complaint.  *See* Docket Order Dated June 19, 2018.  A First Amended Complaint ("FAC") was filed on June 20, 2021 (ECF No. 222).[6]  The FAC added two additional class representatives in addition to the original five: (1) Vilma Diaz and (2) Jessica Chicas.  The FAC also added the following additional seven defendants in addition to the original two: Perfume Center of America, Inc., Shri Parshwa Padmavati & Co., LLC, 30V0 Logistics Inc., John Doe

---

[4] *See* Answer, 5th Affirmative Defense.
[5] *See* Answer, 10th Affirmative Defense.
[6] The First Amended Complaint is annexed to the Moser Declaration as Exhibit 3.

Corporations Nos. 1-5, Kanak Golia and  Prabha Golia.  The FAC also alleged that Defendants'

changed their policy following commencement of the action so as to require two meal periods of

30 minutes each.  The FAC asserted that only one of said meal periods was "bona fide" and that

the other 30 minute break was compensable.  Finally, the FAC added a fifth cause of action on a

class-wide basis to recover statutory damages for failure to issue hiring notices as required by

NYLL §§ 195(1) and 198.  On July 5, 2018 the Defendants requested a pre-motion conference

concerning their anticipated motion to dismiss the claims against the newly added Defendants in

their entirety and to dismiss the newly added fifth cause of action.  *See* ECF No. 262.  On July 11,

2018 the Plaintiffs indicated that they had recently become aware of facts which could be used to

supplement the FAC.  *See* ECF No. 268.  At a conference on July 27, 2018, Judge Seybert

permitted the Plaintiffs to file a Second Amended Complaint, directed that, in light of the Supreme

Court's decision in Epic Sys. Corp. v. Lewis, 138 S. Ct. 1612,  the complaint should not include

any individual who signed an arbitration agreement, and set a briefing schedule for the Defendants'

anticipated motion to dismiss.  *See* ECF No. 272.  The Second Amended Complaint was filed on

August 24, 2018 but was not served.  *See* ECF No. 277.[7]  Plaintiffs filed a motion to stay the claims

of 91 opt-ins subject to arbitration agreements to permit them to file individual arbitrations (ECF

No. 279) which was granted by the Court on September 18, 2018.  *See* ECF No. 280.[8] On October

4, 2018, during a conference call with Robyn Weinstein, ADR Administrator for the Eastern

District, the parties agreed to mediate within 60 days with Andrew Kimler, Esq., a member of the

EDNY mediation panel.  See ECF No. 281.

The parties participated in an all-day mediation with Mr. Kimler on November 29, 2018,

at which time a proposed settlement was reached and reduced to writing in the "Term Sheet."

---

[7] The Second Amended Complaint is annexed to the Moser Declaration as Exhibit 4.
[8] A copy of the "Order Staying Claims of [the] Opt-In Plaintiffs" is annexed to the Moser Declaration as Exhibit 5.

However, in transitioning the Term Sheet into a full-blown Settlement Agreement, the parties encountered several disputes arising from different interpretations of the Term Sheet. Each party thereafter filed a fully-briefed motion to enforce the party's interpretation of the Term Sheet. See ECF No. 296-304. On April 12, 2021 the parties requested a stay to see if they could reach an agreement. ECF No. 305. The stay was granted by the Court (ECF No. 306) and the parties were finally able to finalize the terms of a settlement. See ECF No. 307 (May 16, 2021).[9]

The Court graciously extended the time to file a motion for preliminary approval. See Docket Orders dated May 17, 2021, July 1, 2021 and July 21, 2021. By this motion, the parties request preliminary approval of the proposed class and collective action settlement.

## SUMMARY OF SETTLEMENT TERMS

### I.     PROPOSED CLASS AND MONETARY TERMS

The significant terms of the Settlement Agreement[10] are as follows:

1.  **Settlement Class.** The Parties have agreed to certification of a settlement class consisting of "all employees of Perfume Worldwide Inc. who performed work as non-exempt employees between January 1, 2011 and December 31, 2018." *See* Settlement Agreement § 1.28.

2.  **Settlement Amount.** The Defendants have agreed to pay a maximum of $2,250,000.00. Sett. Agmt. § 1.16 (the "Gross Settlement Amount").

3.  **Class Settlement Amount.** The Class Settlement Amount is $1,500,000.00. Sett. Agmt. §§ 1.7; 3.1(B).

---

[9] A copy of the term sheet is annexed to the Moser Declaration as Exhibit 6.
[10] The Settlement Agreement and Release ("Settlement Agreement" or "Sett. Agmt.") is annexed to the Moser Declaration as Exhibit 7.

4.  **Service Awards.**  At the fairness hearing, the Class Representatives may each seek a service award of up to $10,000.00 to be paid from the Class Settlement Amount. Sett. Agmt. § 3.3.

5.  **Administration Fees.**  At the fairness hearing, Class Counsel may also seek the payment of the Settlement Claims Administrator's Fees and Costs, and costs and expenses associated with the action, to be paid from the Gross Settlement Amount. Sett. Agmt. §§ 2.1 & 3.4.

6.  **Attorneys' Fees.**  Attorneys' fees have been capped at $750,000.00 (1/3 of the Gross Settlement Amount).  Sett. Agmt. §§ 3.1(C) & 3.8.  Attorneys' fees not approved by the Court will revert to the Defendants.  Sett. Agmt. § 1.27.

7.  **Payment in Installments.**  The settlement calls for the payment of the settlement in three installments by Perfume Worldwide, Inc. Sett. Agmt. §§ 1.14 & 3.   The first installment, which consists of the amount of the attorneys' fees approved by the Court, will be paid within five days after the "Effective Date."[11]  Sett. Agmt. § 3.1(C).  The second and third installments, each in the amount of $750,000.00, will be paid no later than one year and two years after the first payment, respectively.  Sett. Agmt. §§ 3.1(D) & (E).

8.  **Distribution of Class Settlement Amount.**  In the event that, following the Fairness Hearing, the Court finally approves the settlement, the Net Settlement Fund[12] will be distributed among all Class Members in the following sequence: (1) Named Plaintiffs

---

[11] The "Effective Date" shall mean the later of (a) thirty (30) days following the Court's entry of the Order Granting Final Approval of the settlement if no appeal is taken of the final approval order, or (b) the Court's entry of a final order and judgment and after the resolving of any appeals.  Settlement Agreement § 1.13.

[12] "Net Settlement Fund" is the remainder of the Class Settlement Amount after deductions for: (i) Service Payments awarded by the Court to the Named Plaintiffs, (ii) the Settlement Claims Administrators' fees and costs approved by the Court, and (iii) Class Counsels' fees and expenses approved by the Court."  Settlement Agreement § 1.19.

shall be paid first; (2) Opt-In FLSA Plaintiffs shall be paid in order from the longest length of employment to the shortest length of employment during the Covered Period; and (3) The remaining Qualified Class Members shall be paid in order from the longest length of employment to the shortest length of employment during the Covered Period.. Sett. Agmt. § 3.6(A). Each Qualified Class Member's share of the settlement shall be based upon length of employment and whether the Qualified Class Member earned the minimum wages. The formula for distribution is as follows: Each Qualified Class Member will receive 1 point for every week (or portion of a week) worked for the period from May 16, 2011 through December 31, 2018. Each Qualified Class Member will receive an additional 3 points for every week during which the employee earned the minimum wage between January 1, 2011 and December 31, 2018. The sum of points received by all Qualified Class Members will be added together and each Qualified Class Member will share proportionately based upon the individual's points. Sett. Agmt. § 3.5(C). Notwithstanding the formula, no Qualified Class Member will be awarded a payment that is less than $50.00. Sett. Agmt. § 3.5(B).

## II.   **PROCEDURAL TERMS**

By this motion, Plaintiff seeks an order (i) certifying the Rule 23 Class for settlement purposes; (ii) preliminarily approving the terms and conditions of the Settlement Agreement; (iii) directing the manner and timing of providing Notice to the Class; and (iv) setting the dates and deadlines for effectuating the settlement, including the dates to object to or opt out of the settlement, the date of mailing of the Notice and the Fairness Hearing date. A copy of the proposed Preliminary Approval Order is annexed to the Notice of Motion as Exhibit 1.

The Court's preliminary approval will set in motion the following procedures:

1. **Class List.**   Within 21 calendar days, Defendants will provide the Claims Administrator and Class Counsel with the Class List.  Settlement Agreement § 2.6(A).

2. **Mailing.**   Within 28 days after preliminary approval, the Claims Administrator will mail the Court-approved notice to each Class Member, in English and Spanish.  Sett. Agmt. § 2.6(C).[13]

3. **Dates to Object or Opt-Out.**   With limited exceptions, Class Members shall have thirty (30) days from the date of the initial mailing to either (a) opt-out of (Sett. Agmt. § 2.7(A)), or (b) object to (Sett. Agmt. § 2.8(A)) the proposed settlement.

4. **Fairness Hearing**.  The Fairness hearing will be scheduled by the Court.  Sett. Agmt. 2.9.  At least 14 days prior to the Fairness Hearing, Class Counsel will submit a motion for final approval of the settlement.  Sett. Agmt. § 2.9.

5. **Eligibility.**   Each Class Member who does not opt-out of the settlement will be mailed a settlement check in the sequence described in the agreement. Sett. Agmt. §§ 2.12(C) & 3.6(A).

6. **Notification of Final Approval.**   Within fourteen (14) days after the Effective Date, the Claims Administrator will mail to all Qualified Class Members a Notice of Final Approval of Class and Collective Action Settlement, in English and Spanish.  Sett. Agmt. § 3.6(C).[14]

---

[13] Class Counsel has agreed to retain Settlement Services, Inc. as the Settlement Claims Administrator. *Sett. Agmt.*  ¶ 1.4.  The proposed notice of preliminary approval and fairness hearing is annexed to the Moser Declaration as Exhibit 8.

[14] The proposed notice of final approval is annexed to the Moser Declaration as Exhibit 9.

7. **Acceptance Period.**  Class Members will have 30 days from the date checks are mailed

by the claims administrator to cash their individual settlement checks. Sett. Agmt. §

3.6(E). Uncashed checks will revert to the Defendants.  Sett. Agmt. § 3.6(E).


## III.    SCOPE OF RELEASE

1. **NYLL Release.**  Each Rule 23 Class Member  who does not opt-out of the settlement

will release defendants from

> all New York Labor Law claims arising out of employment with Perfume Worldwide
> Inc. that were brought in the Litigation or that are based on the same facts and
> circumstances as the claims brought in the Litigation for the period from May 16, 2011
> through December 31, 2018.

Sett. Agmt. § 4.1.

2. **FLSA Release**. In addition to the NYLL Release, each individual who has filed a

consent to join the collective action will release defendants from:

> All Fair Labor Standards Act claims arising out of employment with Perfume
> Worldwide Inc. that were brought in the Litigation or that are based on the same facts
> and circumstances as the claims brought in the Litigation for the period from May 16,
> 2011 through December 31, 2018.

Sett. Agmt. § 4.1.  Section 11 of the Court-approved notice which was mailed on April 26, 2018

(with the section heading "What happens if I join this lawsuit?") states:

> If you join this lawsuit, you will be bound by any ruling, settlement, or judgement,
> whether favorable or unfavorable. If there is a favorable resolution or judgement, either
> by settlement or judgement, and you qualify under the law, you will be entitled to some
> portion of the recovery.[15]

---

[15] *See* Memorandum and Order Dated March 30, 2021(ECF No. 47).  A copy of the conformed Notice of Collective Action which was mailed to the collective class is annexed to the Moser Declaration as Exhibit 10.

The consent form signed by each opt-in plaintiff also states: "I hereby authorize the Moser Law Firm, PC to represent me with regard to my Federal Overtime Claims.   I agree to be bound by any settlement of this action or adjudication by the Court."[16]

As the collective has already been conditionally certified, the Plaintiffs will make a reqest for approval pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015) in the motion for final approval.

## IV.   CLASS ACTION SETTLEMENT PROCEDURE

Courts have established a defined procedure and specific criteria for settlement approval in class action settlements that include three distinct steps:

1. Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval and certification of the settlement class;

2. Dissemination of mailed and/or published notice of settlement to all affected class members; and

3. A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("Newberg") §§ 11.22 *et seq.* (4th ed. 2002).  With this motion, the Plaintiffs request that the Court take the first step – granting preliminary approval of the Settlement Agreement, conditionally certifying the settlement class, approving the proposed Notice and authorizing the Claims Administrator to send it.

The Plaintiffs respectfully submit the following proposed schedule for final resolution of this matter in the event that the Court finds preliminary approval is appropriate:

---

[16] A copy of the Consent to Join form signed by the opt-in plaintiffs is annexed to the Moser Declaration as Exhibit 11.

1. **Class List.**  Within 21 calendar days of the Preliminary Approval Order being entered by the Court, Defendants shall provide the Claims Administrator and Class Counsel with the Class List.  Settlement Agreement § 2.6(A).

2. **Mailing.**  Within 28 days after preliminary approval, the Claims Administrator shall mail the Court-approved notice to each Class Member with the date of the fairness hearing scheduled by the court, in English and Spanish.  Sett. Agmt. § 2.6(C).

3. **Notices Returned as Undeliverable.**  If a Notice is returned as undeliverable, the Settlement Claims Administrator shall take all reasonable steps to obtain the correct address of and will attempt one remailing to each class member.  Sett. Agmt. § 2.6(C) & (D).

4. **Fairness Hearing**. At least 14 days prior to the Fairness Hearing, Class Counsel shall submit a motion for final approval of the settlement.  Sett. Agmt. § 2.9.

5. **Final Approval.**  If the Court grants Plaintiffs' Motion for Final Approval of the Settlement, the Court will issue a Final Approval Order.  Sett. Agmt. § 3.6.

6. **Effective Date.**  The "Effective Date" of the Settlement Agreement shall thirty (30) days following the Court's entry of the Order Granting Final Approval of the settlement if no appeal is taken. Sett. Agmt. § 1.13.

7. **Funding the Settlement.**

   a. First Payment. Within five calendar days of the Effective Date, Perfume Worldwide, Inc. shall pay the Claims Administrator the total amount of attorneys' fees approved by the Court by deposit into the QSF. Sett. Agmt. § 3.1(C)

   b. **Second Payment.** No later than one year after the first payment, Perfume

Worldwide, Inc. shall pay the Claims Administrator $750,000.00, by deposit into the QSF. Sett. Agmt. § 3.1(D).

c. **Third Payment.** No later than two years after the first payment, Perfume Worldwide shall pay the Claims Administrator $750,000.00 by deposit into the QSF. Sett. Agmt. § 3.1(E).

8. **Distributing the Fund.**

a. First Distribution. No earlier than seven days after receipt of the First Payment, the Claims Administrator shall wire the total amount of attorneys' fees approved by the Court to Class Counsel. Sett. Agmt. § 3.2(A).

b. **Second Distribution.** Within fourteen days after receipt of the Second Payment, the Claims Administrator shall make the following payments from the QSF: (1) Claims Administrator's fees; (2) Court-approved service awards to Named Plaintiffs; (3) Court-approved litigation costs; and (4) mail settlement payments to Qualified Class Members based upon the priority described in the Settlement Agreement.

c. **Third Distribution.** Within seven days after receipt of the Third Payment, the Claims Administrator will mail settlement checks to the remaining Class Members.

9. **Acceptance Period**. Class Members will have thirty (30) days from the date of mailing to redeem their Settlement Checks (the "Acceptance Period"). Sett. Agmt. § 3.6(E).

10. **Reversion.** 90 days after the date on which the Defendants fund the QSF, the Claims administrator shall provide the Defendants' counsel and Class Counsel (1) bank statements for the QSF covering the 90-day period following the receipt of the

settlement payment; and (2) a photocopy of each endorsed check. Seven days after providing the bank statements and checks, the Claims administrator shall return the balance of funds remaining in the QSF to the Defendants. Sett. Agmt. § 3.6(F).

## ARGUMENT

## I.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The law favors compromise and settlement of class action lawsuits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements particularly in the class action context") (internal citation omitted).  The approval of a proposed class action settlement is a matter for the discretion of the trial court. *Maywalt v. Parker & Parsley Petrol. Co., 67* F.3d 1072, 1079 (2d Cir. 1995).  "In exercising this discretion, courts should give weight to the parties' consensual decision to settle class action cases because they and their counsel are in unique positions to access potential risks." *Yuzary v. HSBC Bank USA, N.A*, No. 12 Civ. 3693 (PGG), 2013 U.S. Dist. LEXIS 61643, at *3 (S.D.N.Y. Apr. 29, 2013) (citation omitted).  At the first step in the settlement process, preliminary approval "simply allows notice to issue to the class and for Class Members to object to or opt-out of the settlement." *Id.* (citation omitted)

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Clark v. Ecolab, Inc.*, No. 06 Civ. 5672 (PAC), 2009 U.S. Dist. LEXIS 108736, at *14-15 (S.D.N.Y. Nov. 17, 2009).  Nevertheless, courts often grant preliminary settlement approval without requests for a hearing or a court appearance. *Sukhnandan v. Royal Health Care of Long Island, L.L.C.*, No. 12 Civ. 4216 (RLE), 2013 U.S. Dist. LEXIS 126004, at *1 (S.D.N.Y. Sept. 3, 2013).  To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re*

*Traffic Exec. Ass'n—E. Railroads*, 627 F.2d 631, 634 (2d Cir. 1980); *see Newberg § 11.25* ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness … and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members).

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery. *Lovaglio v. W & E Hosp. Inc., No*. 10 CIV 7351 (LLS), 2012 U.S. Dist. LEXIS 72645, at *1 (S.D.N.Y. Mar. 12, 2012) (granting preliminary approval where settlement was "the result of extensive, arm's length negotiations by counsel well-versed in the prosecution and defense of wage and hour class and collective actions"). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Kochilas v. Nat'l Merch. Servs.*, No. 1:14-cv-00311, 2015 U.S. Dist. LEXIS 135553, at *8 (E.D.N.Y. Oct. 2, 2015).

## II.   **THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE.**

In evaluating a class action settlement, courts in the Second Circuit consider the nine factors set forth in *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). Although the Court need not evaluate the *Grinnell* factors in order to conduct its initial evaluation of the settlement, it may be useful for the Court to consider the criteria upon which it will ultimately judge the settlement. The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks

13

of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. Applied here, the *Grinnell* factors weigh in favor of approval of the Settlement Agreement and preliminary approval.

**A.      Litigation Through Trial Would Be Complex, Costly and Long (*Grinnell* Factor 1).**

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seeks to avoid significant expense and delay and ensure a predictable recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig., 80* F. Supp. 2d 164, 174 (S.D.N.Y. 2000).

This case has already been complex, costly, and has spanned 4 years. If the parties were unable to resolve the differences presented in their motions for enforcement of the term sheet, the next step would be a request to lift the stay of the competing motions for enforcement of the term sheet. A decision on the competing motions to enforce might be appealed to the Second Circuit. It is also within reason that the Court could determine that material terms of the settlement are missing, and therefore the agreement does not constitute an enforceable contract, bringing us back to square one. *See Kolchins v. Evolution Mkts., Inc.*, 2018 N.Y. Slip Op. 02209 (N.Y. Mar. 29, 2018).

Had the parties not resolved the case at mediation with Mr. Kimler, the litigation would have continued to be complex, costly, and long. Although there has been significant discovery, the Second Amended Complaint (which asserts joint-employer liability against various entities alleged to be part of the "Perfume Enterprise", includes additional individual defendants, and

14

asserts a fifth cause of action for class-wide wage notice violations) has not been served on the newly added Defendants.  The newly added Defendants already indicated to the Court that they would file a motion to dismiss the claims asserted against them, and all Defendants similarly indicated that they would move to dismiss newly added fifth cause of action for wage notice violations.  *See* ECF No. 262.  More specifically, the newly added Defendants assert that there is no basis for enterprise or employer liability on them.  The Defendants also contend that they furnished wage notices to each class member which complied with NYLL 195(1).  *See* ECF No. 262.

If the Plaintiffs survived the Defendants' anticipated motion to dismiss, extensive discovery would have been necessary.  Even if the Defendants were successful in their motion, and new defendants and claims were not added, party depositions would have to be completed.

Upon conclusion of discovery, a fact-intensive trial would be necessary.

Plaintiffs anticipate the need for representative testimony and expert testimony on issues of liability and damages.  A trial on liability and damages would be costly and would further defer closure.  Any judgment might be appealed, thereby extending the duration of the litigation.  This settlement, on the other hand, makes monetary relief available to Class Members in predictable and efficient manner.

### B.       The Reaction of the Class Has Been Positive (*Grinnell* Factor 2).

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy."  *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002).  Here, the Class representatives have expressed their approval of the settlement terms by signing the Settlement Agreement.  *See* Exhibit 6 to the Moser Decl.  Furthermore, many class members have encouraged Class Counsel to amicably resolve the competing motions to interpret the term sheet and have expressed approval of the proposed

resolution of this case.[17]  After notice issues and Class Members have had an opportunity to weigh

in, the Court can more fully analyze this factor.

### C.      Discovery Has Advanced Far Enough To Allow The Parties To Responsibility Resolve The Case (*Grinnell* Factor 3).

The parties have completed enough discovery to recommend settlement.  The pertinent

question is "whether counsel had an adequate appreciation of the merits of the case before

negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (quoting

*In re Cendant Corp. Litig.* 201, 235 (3d Cir. 2001)) (internal quotation marks omitted).  The parties

have had the opportunity to conduct significant discovery and the Defendants have made available

for inspection class-wide wage and hour documents.  Therefore, the parties were well-equipped to

evaluate the strengths and weaknesses of the case.

### D.      Plaintiffs Would Face Risks If The Case Proceeded (*Grinnell* Factors 4 and 5).

"Litigation inherently involves risks."  *In re PaineWebber Pshps. Litig.*, 171 F.R.D. 104,

126 (S.D.N.Y. 1997).  Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the

merits because of the uncertainty of outcome." *In re Ira Haupt & Co., 30*4 F. Supp. 917, 934

(S.D.N.Y. 1969); *see also Karic v. Major Auto. Cos.*, No. 09 CV 5708 (CLP), 2016 U.S. Dist.

LEXIS 57782, at *19 (E.D.N.Y. Apr. 27, 2016).

While the Plaintiffs believe that they would prevail, a finding of liability is not a certainty.

The primary wage and hour claims asserted arise from alleged policies of failing to compensate

for a mandatory 20 minute break each morning, and a failure to pay spread of hours pay.  While

the Plaintiffs believe that they would prevail on the spread of hours claims, only employees earning

the minimum wage would have been entitled to spread of hours pay. *See Young Ok v. Family Bob*,

---

[17] See Moser Declaration ¶ 16.

No. 20-CV-906 (ENV), 2021 U.S. Dist. LEXIS 15713, at *12-13 (E.D.N.Y. Jan. 26, 2021) ("employees who earn in excess of the minimum wage ordinarily are not entitled to spread-of-hours compensation."); *Rui Xiang Huang v. J&A Ent. Inc., No*. 09-CV-5587 (ARR) (VVP), 2012 U.S. Dist. LEXIS 184727, 2012 WL 6863918, at *8 (E.D.N.Y. Dec. 3, 2012) ("The majority of district courts in this circuit are in accord with the New York Department of Labor's position that those earning more than the minimum wage are not entitled to spread-of-hours pay."); *Singh v. Patel*, No. 12-CV-3204 (SJF)(ETB), 2013 U.S. Dist. LEXIS 72619, at *5 (E.D.N.Y. May 16, 2013) ("to the extent that plaintiffs were paid above the minimum wage, the spread of hours claim must be dismissed.").  With regard to the 20 minute break, the regulations state that "[r]est periods of short duration, running from 5 minutes to about 20 minutes [. . .] must be counted as hours worked.  29 C.F.R. § 785.18.  However, prior counsel pointed to Judge Hurley's decision in *Martin v. Waldbaum, Inc.* (*DRH*), No. CV 86-0861 (DRH), 1992 U.S. Dist. LEXIS 16007, at *6 (E.D.N.Y. Oct. 14, 1992), which stated "that breaks of *less* than twenty minutes are compensable" for the proposition that a break of *at least* twenty minutes is not necessarily compensable.  Although a declaration submitted by Piyush Golia appears to concede that a break of 20 minutes was indeed compensable as a matter of law (*See* ECF No. 50), a defense to liquidated damages based upon advice of prior counsel was also viable.

The proposed settlement alleviates risk associated with establishing liability and damages.  Thus, this factor weighs in favor of preliminary approval.

### E.   The Risks Of Maintaining The Class Action Through Trial (*Grinnell* Factor 6).

A district court may only certify a class action if it concludes after a "rigorous analysis" that the proposed class meets the requirements of Rule 23(a) and (b). *See Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) ("A class may be certified only if, 'after a rigorous

analysis,' the district court is satisfied that the prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure are met.") (quoting *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432, 185 L. Ed. 2d 515 (2013)).   "The risk of maintaining a class through trial is present in any class action." *Guippone v. BH S&B Holdings LLC*, 2016 U.S. Dist. LEXIS 134899, at *19 (S.D.N.Y. Sep. 23, 2016).   In *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), for example, the Supreme Court found that "the anecdotal evidence offered by the plaintiffs in the form of 120 affidavits from current and former employees was insufficient to raise an inference of company-wide discrimination." *Mendez v. U.S. Nonwovens Corp.*, 314 F.R.D. 30, 42 (E.D.N.Y. 2016).   Of course, considering that common policies drive payroll practices, wage and hour claims are "especially suited" to class litigation. *Ramos v. SimplexGrinnell LP*, 796 F. Supp. 2d 346, 359 (E.D.N.Y. 2011) ("[N]umerous courts have found that wage claims are especially suited to class litigation—perhaps the most perfect questions for class treatment—despite differences in hours worked, wages paid, and wages due").

Nevertheless, shortly prior to commencement of this action all employees of Perfume Worldwide signed an arbitration agreement that required individualized, rather than class, arbitration.   The Supreme Court's decision in *Epic Sys. Corp.*, 138 S. Ct. 1612 (decided May 21, 2018), reinforced the Defendants' position the arbitration agreements signed by many class members were enforceable, and that such individuals were not members of any class.   Judge Seybert made it clear at a conference on July 27, 2018 that individuals subject to such arbitration agreements were not proper parties to this case.   The Federal Arbitration Act ("FAA") recognizes, however, that an arbitration clause is not enforceable if grounds "exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "'[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements' in accordance

with § 2 of the FAA." *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 570 (S.D.N.Y. 2009) (quoting *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687, 116 S. Ct. 1652, 134 L. Ed. 2d 902 (1996)).   However, if the Plaintiffs attempted to challenge the validity of the arbitration agreements, or include those who signed arbitration agreements in the class, they might endager class certification by injecting an "individualized inquiry" regarding enforceability into the case. *See Spann v. AOL Time Warner, Inc.*, 219 F.R.D. 307, 311 (S.D.N.Y. 2003) ("Because many absent class members have executed releases of claims against the Defendants, and consideration of those releases requires an individualized inquiry, the motion to certify a class is denied.").

Indeed, while Plaintiffs believe that they would ultimately prevail on class certification, the scope of the class may have been severely limited.   The present settlement therefore provides financial benefits to many individuals who otherwise would not have received compensation (while at the same time offering closure to the Defendants).

The wage notice class also presents challenges.   Plaintiffs contended that the wages notices furnished to the class were defective, because they were not in the primary language of each employee.   Defendants suggested that such claims were not subject to resolution on a class-wide basis because the "primary language" of each employee required an individualized inquiry as well as individualized proof.,

F.    **Whether Defendants Could Withstand a Greater Judgment (*Grinnell* Factor 7).**

Plaintiffs have obtained bank account information in the course of discovery that suggests that Perfume Worldwide could, in fact, withstand a greater judgement.   However, a "defendant's ability to withstand greater judgment, standing alone, does not suggest that the settlement is unfair."   *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, No. 09-CV-486 (ETB), 2012 U.S. Dist.

LEXIS 144446, at \*13 (E.D.N.Y. Oct. 4, 2012) (quoting *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005)).

> ### G.   The Settlement Fund Is Substantial In Light Of The Possible Recovery And The Attendant Risks Of Litigation (*Grinnell* Factors 8 and 9).

The settlement amount payable to the Class ($1,500,000.00) represents a good value given the risks of litigation, even though the recovery could potentially be greater if Plaintiffs succeed on all claims at trial and survive an appeal.  Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable.

In advance of mediation, Plaintiff's Counsel prepared damages computations based upon payroll data received from the Defendants, which was cross-checked with paystubs and other information in Plaintiff's possession, as well as Perfume Worldwide's payroll tax returns.  The damages were estimated as follows:

| | |
|---|---|
| Spread of Hours Pay | $418,847.33 |
| Liquidated Damages on SOH Pay | $418,847.33 |
| 20 Minute Uncompensated Break | $583,950.00 |
| Prejudgment Interest (SOH Pay) | $122,692.36 |
| Prejudgment Interest (20 Min Break) | $157,671.00 |
| **Total** | **$1,702,008.02** |

No liquidated damages were included based upon the advice of counsel good faith defense propounded by the Defendants.  The interest computations would also be higher if these computations were performed as of today.  Of course, these damages are only estimated.  Plaintiffs believed that damages could be in excess of these amounts.  But even assuming that the Plaintiffs could obtain a Judgment in excess of this amount, standing alone would not render the settlement unfair.  "It is well-established that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair."  *Officers for Just. v. Civil Serv. Com.*, 688 F.2d 615, 628 (9th Cir. 1982); *see also Karic*, No. 09-CV-5708 (CLP), at \*30-31.

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Garcia*, 2012 U.S. Dist. LEXIS 144446, at \*14 (quoting *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005)). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Garcia*, 2012 U.S. Dist. LEXIS 144446 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).   Moreover, when settlement assures immediate payment of substantial amounts to class members, "even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road,'" settlement is reasonable under this factor. *Sierra v. Spring Scaffolding L.L.C.*, No. 12-cv-05160 (JMA), 2015 U.S. Dist. LEXIS 178006, at \*17 (E.D.N.Y. Sept. 30, 2015).

## III.   PRELIMINARY CERTIFICATION OF THE RULE 23 SETTLEMENT CLASS IS APPROPRIATE

The Plaintiffs respectfully request that the Court preliminarily certify the following Fed. R. Civ. P. 23 class for settlement purposes:

> "[A]ll employees of Perfume Worldwide Inc. who performed work as non-exempt employees between January 1, 2011 and December 31, 2018."[18]

As discussed below, the Class meets all of the requirements for class certification for settlement purposes, and Defendants do not oppose provisional certification for the limited purpose of settlement.[19]

---

[18] *See* Settlement Agreement § 1.28.

[19] As this Court has pointed out, "[a]lthough the Court's analysis in the class certification context must be rigorous, courts in the Second Circuit employ a liberal rather than restrictive construction of Rule 23, adopting a standard of flexibility in deciding whether to grant certification." *Elkind v. Revlon Consumer Prods. Corp.*, No. CV 14-2484 (JS) (AKT), 2017 U.S. Dist. LEXIS 24512, at \*16-17 (E.D.N.Y. Feb. 17, 2017) (internal quotations omitted).

"A class action may be certified if it meets the following requirements set forth in Fed. R. Civ. P. 23(a): (1) the class is so numerous that joinder of all members is impracticable ('numerosity'); (2) there are questions of law or fact common to the class ('commonality'); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ('typicality'); and (4) the representative parties will fairly and adequately protect the interests of the class ('adequacy of representation')." *Mendez*, 314 F.R.D. at 40 (Spatt, J.).   "The Court of Appeals for the 'Second Circuit has recognized a fifth pre-condition to class certification: the implied requirement of ascertainability.'" *Belfiore v. P&G*, 311 F.R.D. 29, 64 (E.D.N.Y. 2015) (quoting *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 407)(citing *Brecher v. Rep. of Argentina*, 806 F.3d 22 (2d Cir. 2015).   In addition to these requirements, a class must meet one of the three standards set forth in Fed. R. Civ. P. 23(b).

### A.   Numerosity

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Numerosity is presumed where a putative class has forty or more members.  *Salim Shahriar v. Smith & Wollensky Rest. Grp., Inc., 6*59 F.3d 234, 252 (2d Cir. 2011) (citation omitted).  Here, there are approximately 1,600 class members. Moser Decl.

### B.   Commonality

The proposed class also satisfies the commonality requirement.  "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc.*, 564 U.S. at 349-50 (citing *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)).  Here, the common policies of failing to compensate for a mandated 20 minute break and of failing to pay spread of hours pay to minimum wage workers who worked a spread of hours are policies which generate the same injury.  *Salim Shahriar*, 659 F.3d at 252 (commonality requirement satisfied where "Plaintiffs' NYLL class claims all derive

from the same compensation policies and tipping practices").  The fact that damages arising from the "injury" will vary from class member to class member does not change the result.  *Poplawski v. Metroplex on the Atl., L.L.C.*, No. 11-CV-3765, 2012 U.S. Dist. LEXIS 46408, 2012 WL 1107711, at *8 (E.D.N.Y. Apr. 2, 2012) ("While damages owed to each employee will require individual determinations, this computation issue does not destroy commonality.").

### C.    <u>Typicality</u>

The typicality requirement is also satisfied.  "Typicality requires that the claims or defenses of the class representatives — here, the named Plaintiffs — are typical of the claims or defenses of the class members. *Tiro v. Pub. House Invs., L.L.C.*, 288 F.R.D. 272, 277 (S.D.N.Y. 2012); Fed. R. Civ. P. 23(a)(3). Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).

Here, the claims of the class representatives arise from the same factual and legal circumstances that form the basis of Class Members' claims, namely, that Named Plaintiffs and Class Members were subject to the same break deduction and spread of hours policies.  *See Spicer v. Pier Sixty L.L.C.*, 269 F.R.D. 321, 337 (S.D.N.Y. 2010).

### D.    <u>Adequacy of the Named Plaintiffs</u>

"The adequacy requirement exists to ensure that the named representatives will have an interest in vigorously pursuing the claims of the class, and ... have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Dziennik v. Sealift, Inc.*, No. 05-CV-4659 (DLI)(MDG), 2007 U.S. Dist. LEXIS 38701, at *9 (E.D.N.Y. May 29, 2007) (quoting *Martens v. Smith, Barney, Inc.*, 181 F.R.D. 243, 259 (S.D.N.Y. 1998)).  Given that there is no evidence that the Named Plaintiffs and Class

Members' interests are at odds, the adequacy requirement is met.  *See* Sierra Spring Scaffolding LLC, *No.* 12-19 (E.D.N.Y. May 8 2015) (finding that the plaintiffs satisfied Fed. R. Civ. P. 23(a)(4) "because Plaintiffs' interests [were] not antagonistic or at odds with Class Members").

### E.    Ascertainably

Ascertainability requires that a class be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *In re Petrobras Sec. Litig.*, 862 F.3d 250, 260 (2d Cir. 2017) (quoting *Brecher v. Republic of Arg.*, 806 F.3d 22, 24 (2d Cir. 2015)). "A class is ascertainable when defined by objective criteria . . . and when identifying its members would not require a mini-hearing on the merits of each case." *Brecher v. Republic of Arg.*, 806 F.3d 22, 24-25 (2d Cir. 2015). The court must be able to determine who is in the class "without having to answer numerous individualized fact-intensive questions." *Fogarazzo v. Lehman Bros.*, 232 F.R.D. 176, 181 (S.D.N.Y. 2005) (quotation and alteration omitted).

Here, the members of the class are readily ascertainable and identifiable, as all non-exempt employees of Perfume Worldwide were subject to the same payroll policies which are the subject of this litigation./

### F.    Certification Is Proper Under Rule 23(b)(3)

In this case, "questions of law or fact common to class members predominate over any questions affecting only individual members, and [] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3)'s predominance requirement is 'more demanding than Rule 23(a).'" *Johnson*, 780 F.3d at 138 (citing *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013)). Like the commonality inquiry, a court examining predominance must assess (1) the "elements of the claims and defenses to be litigated"; and (2) "whether generalized evidence could be offered to prove those elements

on a class-wide basis." *Id.* .  Nevertheless, "the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification' under Rule 23(b)(3)." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (quoting *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010)).  "[N]umerous courts [in the Second Circuit] have found that wage claims are especially suited to class litigation—perhaps 'the most perfect questions for class treatment'—despite differences in hours worked, wages paid, and wages due." *Ramos*, 796 F. Supp. 2d at 359-60 (collecting cases).  Here, despite individualized damages, generalized proof of the Defendants' payroll policies, which included the failure to compensate for a 20 minute break each morning, and failure to pay spread of hours pay,  is sufficient to establish liability on behalf of the entire class.  Predominance is met.

The second part of the Rule 23(b)(3) analysis compares whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968); *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").

Here, Plaintiff and Class Members have limited financial resources with which to prosecute individual actions.  The class device will achieve economies of scale, conserve judicial resources, preserve public confidence in the integrity of the judicial system by avoiding the waste and delay of repetitive proceedings and prevent inconsistent adjudications of similar claims.  *Sukhnandan*, 2013 U.S. Dist. LEXIS 126004, at *1.

## <u>CONCLUSION</u>

For the reasons set forth above, the parties respectfully request that the Court (i) certify the Settlement Class for settlement purposes; (ii) preliminarily approve the terms and conditions of the Settlement Agreement; (iii) direct the manner and timing of providing Notice to the Settlement Class; and (iv) set the dates and deadlines for effectuating the settlement and enter the proposed Order annexed to the Notice of Motion as Exhibit 1.

Dated: Huntington, New York
       August 23, 2021

Respectfully submitted,
MOSER LAW FIRM, P.C.

By: Steven J. Moser
5 East Main Street
Huntington, New York  11743
(631)824-0200
steven.moser@moserlawfirm.com