## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

NELSON CASTILLO, MARTA VALLADARES, ARACELY VALLADARES, CARLOS REYES, YOSELY ESPINAL HENRIQUEZ, VILMA DIAZ and JESSICA CHICAS individually and on behalf of all others similarly situated,

Plaintiffs,

Case No. 17-CV-02972 (ST)

- against -

PERFUME WORLDWIDE INC. and PIYUSH GOLIA,

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

Steven J. Moser (SM1133)
Moser Law Firm, P.C.
*Class Counsel*
5 East Main Street
Huntington, New York 11743
steven.moser@moserlawfirm.com
(516) 671-1150

# CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

CLAIMS AND PROCEDURAL HISTORY ............................................................... 2

   I.   CLAIMS ............................................................................................... 2

   II.  PROCEDURAL HISTORY.................................................................... 2

SUMMARY OF SETTLEMENT TERMS.................................................................. 2

   I.   MONETARY TERMS........................................................................... 2

   II.  PROCEDURAL TERMS........................................................................ 3

   III.  SCOPE OF RELEASE.......................................................................... 5

ARGUMENT ............................................................................................................. 5

   I.   THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE. .............................. 5

      A.  The Settlement is Procedurally Fair. ............................................. 6

      B.  The Settlement is Substantively Fair................................................ 7

   II.  THE FLSA SETTLEMENT SHOULD BE APPROVED................................. 9

   III.  THE SERVICE AWARDS TO THE CLASS REPRESENTATIVES SHOULD BE APPROVED AND PAID FROM THE FUND .............................................................. 10

   IV.  THE FEES AND COSTS OF THE CLAIMS ADMINISTRATOR SHOULD BE APPROVED AND PAID FROM THE FUND .............................................................. 12

   V.  ATTORNEYS' FEES SHOULD BE APPROVED AND PAID FROM THE FUND...... 13

      A.  It is appropriate to award Attorneys' fees amounting to one-third of the Fund............. 13

      B.  The requested fee is fair and reasonable ...................................... 14

   VI.  OUT OF POCKET COSTS SHOULD BE PAID OUT OF THE SETTLEMENT FUND.. ..................................................................................................................... 16

CONCLUSION.......................................................................................................... 17

# Table of Authorities

## Federal Court Opinions

*Ansoumana v. Gristede's Operating Corp.*,
   201 F.R.D. 81 (S.D.N.Y. 2001) ........................................................................... 10

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Alb.*,
   493 F.3d 110 (2d Cir. 2007) ............................................................................... 15

*Aros v. United Rentals, Inc.*
   (JCH), Civil Action No. 3:11-CV-1285 (JCH), 2012 U.S. Dist. LEXIS 104429 (D. Conn. July
   26, 2012) ............................................................................................................ 11

*Arotech Corp. Sec. Litig.*,
   No. 07-CV-1838(RJD)(VVP), 2010 U.S. Dist. LEXIS 55570, 2010 WL 2301195 (E.D.N.Y.
   June 7, 2010) ...................................................................................................... 14

*Bodon v. Domino's Pizza, L.L.C.*,
   No. 09-CV-2941 (SLT), 2015 U.S. Dist. LEXIS 82039 (E.D.N.Y. June 4, 2015) ............... 15

*Capsolas v. Pasta Res., Inc.*,
   No. 10-cv-5595 (RLE), 2012 U.S. Dist. LEXIS 144651 (S.D.N.Y. Oct. 5, 2012) ......... 11, 14

*Cheeks v. Freeport Pancake House, Inc.*,
   796 F.3d 199 (2d Cir. 2015) ............................................................................... 10

*Cohan v. Columbia Sussex Mgmt., L.L.C.*,
   No. CV 12-3203 (AKT), 2018 U.S. Dist. LEXIS 170192 (E.D.N.Y. Sept. 28, 2018) .... 14, 17

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ................................................................................ 6, 7

*Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) .............................................................................. 6, 8

*Dial Corp. v. News Corp.*,
   317 F.R.D. 426 (S.D.N.Y. 2016) ....................................................................... 13

*Ferrara v. CMR Contracting L.L.C.*,
   848 F. Supp. 2d 304 (E.D.N.Y. 2012) ................................................................. 16

*Fisher v. SD Prot. Inc.*,
   948 F.3d 593 (2d Cir. 2020) .............................................................................. 15

*Fleisher v. Phx. Life Ins. Co.*,
   No. 14-cv-8714 (CM), 2015 U.S. Dist. LEXIS 121574 (S.D.N.Y. Sept. 9, 2015) ............. 7, 8

*Fujiwara v. Sushi Yasuda Ltd.*,
   58 F. Supp. 3d 424 (S.D.N.Y. 2014) ................................................................. 14

*Garcia v. Pancho Villa's of Huntington Vill., Inc.*,
No. 09-CV-486 (ETB), 2012 U.S. Dist. LEXIS 144446 (E.D.N.Y. Oct. 4, 2012) ................. 9

*Goldberger v. Integrated Res.*,
209 F.3d 43 (2d Cir. 2000) ........................................................................ 13, 15

*Gray v. Toyota Motor Sales, U.S.A., Inc.*,
No. 10-CV-3081(JS)(ETB), 2013 U.S. Dist. LEXIS 99113, 2013 WL 3766530  (E.D.N.Y.
July 16, 2013) ................................................................................................. 16

*Hall v. Prosource Techs., L.L.C.*,
No. 14-CV-2502 (SIL), 2016 U.S. Dist. LEXIS 53791 (E.D.N.Y. Apr. 11, 2016) ......... 15, 16

*In re Holocaust Victim Assets Litig.*,
105 F. Supp. 2d 139 (E.D.N.Y. 2000) ........................................................................ 6

*In re Indep. Energy Holdings Pub. Ltd. Co. Sec. Litig.*,
302 F. Supp. 2d 180 (S.D.N.Y. 2003) ............................................................ 16-17

*In re Luxottica Grp. S.p.A. Secs. Litig.*,
233 F.R.D. 306 (E.D.N.Y. 2006) ........................................................................ 6

*Libaire v. Kaplan*,
No. CV 06-1500 (DRH) (ETB), 2011 U.S. Dist. LEXIS 152555, 2011 WL 7114006
(E.D.N.Y. June 11, 2011) ............................................................................... 16

*Lizondro-Garcia v. Kefi L.L.C.*, No. 12 Civ.
1906, 2014 WL 4996248 (S.D.N.Y. Oct. 7, 2014) ............................................... 10

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................. 8

*Masters v. Wilhelmina Model Agency, Inc.*,
473 F.3d 423 (2d Cir. 2007) ......................................................................... 13

*McDaniel v. Cnty. of Schenectady*,
595 F.3d 411 (2d Cir. 2010) ......................................................................... 13

*McKenna v. Champion Int'l Corp.*,
747 F.2d 1211 (8th Cir. 1984) ....................................................................... 10

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
No. 06 Civ. 4270 (PAC), 2009 U.S. Dist. LEXIS 27899, 2009 WL 5851465 (S.D.N.Y. Mar.
31, 2009) ..................................................................................................... 14

*Morris v. Affinity Health Plan, Inc.*,
859 F. Supp. 2d 611 (S.D.N.Y. 2012) ............................................................... 7

*Moukengeshcaie v. Eltman*,
No. 14 CV 7539 (MKB) (CLP), 2020 U.S. Dist. LEXIS 71018 (E.D.N.Y. Apr. 21, 2020) .. 11

*Parker v. Jekyll & Hyde Ent. Holdings, L.L.C.* (JCF), No. 08 Civ.
 7670 (BSJ) (JCF), 2010 U.S. Dist. LEXIS 12762, 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010)
 ............................................................................................................................... 11

*Pucciarelli v. Lakeview Cars, Inc.*,
 No. 16-CV-4751 (RRM) (RER), 2017 U.S. Dist. LEXIS 98641 (E.D.N.Y. June 23, 2017) . 16

*Quaratino v. Tiffany & Co.*,
 166 F.3d 422 (2d Cir. 1999) ................................................................................ 15

*Reyes v. Altamarea Grp.*,
 No. 10-CV-6451 (RLE), 2011 U.S. Dist. LEXIS 115984, 2011 WL 4599822 (S.D.N.Y. Aug.
 16, 2011).............................................................................................................. 12

*Romero v. La. Revise Assocs., L.L.C.*,
 58 F. Supp. 3d 411 (S.D.N.Y. 2014) ............................................................... 7, 13

*Sanchez v. JMP Ventures, L.L.C.*,
 No. 13 Civ. 7264 (GWG), 2015 U.S. Dist. LEXIS 16026 (S.D.N.Y. Feb. 10, 2015) ........... 13

*Sealock v. Covance, Inc.*,
 No. 17-cv-5857 (JMF), 2020 U.S. Dist. LEXIS 44753 (S.D.N.Y. Mar. 13, 2020) .............. 11

*Sewell v. Bovis Lend Lease LMB, Inc.*, No. 09 Civ.
 6548 (RLE), 2012 U.S. Dist. LEXIS 53556, 2012 WL 1320124 (S.D.N.Y. Apr. 20, 2012).. 14

*Torres v. Gristede's Oping Corp.*,
 No. 08-CV-9627 (PAC), 2010 U.S. Dist. LEXIS 75362, (S.D.N.Y. June 1, 2010) .............. 12

*Toure v. Amerigroup Corp.*, No. 10 Civ.
 5391 (RLM), 2012 U.S. Dist. LEXIS 110300 (E.D.N.Y. Aug. 6, 2012) ........................ 11-12

*Trs. of the Bldg. Trades Educ. Ben. Fund v. Preferred Elec. II, Inc.*,
 No. 16-CV-3294 (JFB) (AYS), 2018 U.S. Dist. LEXIS 1790, 2018 WL 700116 (E.D.N.Y.
 Jan. 3, 2018) ....................................................................................................... 17

*Viafara v. MCIZ Corp.*, No. 12 Civ.
 7452 (RLE), 2014 U.S. Dist. LEXIS 60695 (S.D.N.Y. Apr. 30, 2014) .............................. 13

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
 396F.3d 96, (2d Cir. 2005) ...................................................................... 6, 7, 8

*Weinberger v. Kendrick*,
 698 F.2d 61 (2d Cir. 1982) .............................................................................. 5-6

*Willix v. Healthfirst, Inc.*, No. 07 Civ.
 1143 (ENV)(RER), 2011 U.S. Dist. LEXIS 21102 (E.D.N.Y. Feb. 18, 2011) .................... 12

*Zeltser v. Merrill Lynch & Co.*,
 No. 13 Civ. 1531 (FM), 2014 U.S. Dist. LEXIS 135635, 2014 WL 4816134 (S.D.N.Y. Sept.
 23, 2014) ............................................................................................................. 14

**United States Code**

29 U.S.C. § 201 ................................................................................................ 2

**Rules**

Fed R. Civ. P. 23, ................................................................................... 1, 5, 9, 10

## PRELIMINARY STATEMENT

Plaintiffs Nelson Castillo, Marta Valladares, Aracely Valladares, Carlos Reye, Yosely Espinal Henriquez, Vilma Diaz and Jessica Chicas submit this Memorandum of Law in support of their Motion for Final Approval of the Class and Collective Action Settlement.

On March 22, 2022, this Court took the first step in the settlement approval process by: (1) granting preliminary approval of the Settlement Agreement; (2) approving the proposed class notice and directing distribution thereof to the class members, (3) approving the proposed class action settlement procedure; (4) appointing Steven J. Moser of the Moser Law Firm, P.C. as Class Counsel, and (5) scheduling a final fairness hearing for June 24, 2022.

For the reasons set forth below, the Plaintiffs respectfully request that the Court issue a final approval order:

1. certifying the following settlement class under Fed R. Civ. P. 23(a), (b)(1) and (b)(3): "All employees of Perfume Worldwide Inc. who performed work as non-exempt employees between January 1, 2011 and December 31, 2018";

2. approving the settlement and Settlement Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely filed an opt-out statement;

3. approving the Service Awards to be paid to the Class Representatives;

4. approving Plaintiffs' counsel's request for attorneys' fees and costs;

5. approving the Settlement Claims Administrator's fees and expenses;

6. directing the parties and the Claims Administrator to comply with the terms thereof; and

7. dismissing this case with prejudice.

## CLAIMS AND PROCEDURAL HISTORY

### I.    CLAIMS

The Plaintiffs and those similarly situated worked primarily at a warehouse and shipping facility located at 2020 Ocean Avenue, Ronkonkoma, New York. The Plaintiffs seek overtime under the Fair Labor Standards Act (29 U.S.C. § 201, et seq., "FLSA") and overtime and straight wages under the New York Labor Law ("NYLL") arising from the Defendants' uniform policy of not compensating employees for a mandated 20-minute break period each morning. The Plaintiffs also seek the recovery of spread of hours pay under Article 19 of the NYLL and the Miscellaneous Industry Wage Order (12 NYCRR 142-2.4) Finally, the Plaintiffs also seek liquidated damages for failure to furnish hiring notices as required by NYLL 195.

### II.    PROCEDURAL HISTORY

The procedural history of this case prior to preliminary approval was set forth in detail in the Memorandum of Law In Support of Plaintiffs' Motion for Preliminary Approval of Class and Collective Settlement (ECF No. 314, pp. 1-4). This action was commenced on May 16, 2017 and has aggressively litigated by Plaintiffs and Defendants. On March 22, 2022, the Court issued an order preliminarily approving of a proposed class and collective action settlement reached between the parties. See ECF No. 315.

## SUMMARY OF SETTLEMENT TERMS

### I.    MONETARY TERMS

The significant terms of the Settlement Agreement are as follows:

1.    **Settlement Amount.** The Defendants have agreed to pay a maximum of $2,250,000.00. Sett. Agmt. § 1.16 (the "Gross Settlement Amount").

2.    **Class Settlement Amount.** The Class Settlement Amount is $1,500,000.00. Sett. Agmt. §§ 1.7; 3.1(B).

3. **Service Awards.** At the fairness hearing, the Class Representatives may each seek a service award of up to $10,000.00 to be paid from the Class Settlement Amount. Sett. Agmt. § 3.3.

4. **Administration Fees.** At the fairness hearing, Class Counsel may also seek the payment of the Settlement Claims Administrator's Fees and Costs, and costs and expenses associated with the action, to be paid from the Gross Settlement Amount. Sett. Agmt. §§ 2.1 & 3.4.

5. **Attorneys' Fees.** Attorneys' fees have been capped at $750,000.00 (1/3 of the Gross Settlement Amount). Sett. Agmt. §§ 3.1(C) & 3.8. Attorneys' fees not approved by the Court will revert to the Defendants. Sett. Agmt. § 1.27.

## II.   PROCEDURAL TERMS

The Court's final approval will set in motion the following procedures:

1. **Effective Date.** The "Effective Date" of the agreement shall be the later of (a) thirty (30) days following the Court's entry of the Order Granting Final Approval of the settlement if no appeal is taken of the final approval order, or (b) the Court's entry of a final order and judgment and after the resolving of any appeals. Settlement Agreement § 1.13.

2. **Mailing Notice of Final Approval.** Within fourteen (14) days after the Effective Date, the Claims Administrator will mail to all Qualified Class Members a Notice of Final Approval of Class and Collective Action Settlement, in English and Spanish. Settlement Agreement § 3.6(C).

3. **First Payment.** Within five calendar days of the Effective Date, Perfume Worldwide, Inc. shall pay the Claims Administrator the total amount of attorneys' fees approved by the Court by deposit into the QSF. Sett. Agmt. § 3.1(C)

4. **First Distribution.** Within five days after request by Class Counsel, the Claims Administrator will wire the total amount of approved attorneys' fees and interest accrued thereon to Class Counsel. Sett. Agmt. § 3.2(A).

5. **Second Payment.** No later than one year after the first payment, Perfume Worldwide, Inc. shall pay the Claims Administrator $750,000.00, by deposit into the QSF. Sett. Agmt. § 3.1(D).

6. **Second Distribution.** Within fourteen days after receipt of the Second Payment, the Claims Administrator will make the following payments from the QSF: (1) Claims Administrator's fees; (2) Court-approved service awards to Named Plaintiffs; (3) Court-approved litigation costs; and (4) mail settlement payments to Qualified Class Members as described in Sections 3.5-3.7 of the Settlement Agreement. Sett. Agmt. § 3.2(B).

7. **Third Payment.** No later than two years after the first payment, Perfume Worldwide shall pay the Claims Administrator $750,000.00 by deposit into the QSF. Sett. Agmt. § 3.1(E).

8. **Third Distribution.** Within seven days after receipt of the Third Payment, the Claims Administrator will mail settlement checks to Qualified Class Members as described in Sections 3.5-3.7 of the Settlement Sett. Agmt. § 3.2(C).

9. **Acceptance Period.** Class Members will have thirty (30) days from the date of mailing to redeem their Settlement Checks (the "Acceptance Period"). Sett. Agmt. § 3.6(E).

10. **Reversion.** Funds remaining in the QSF will revert to the Defendants. Sett. Agmt. § 3.6(F).

## III.    SCOPE OF RELEASE

**NYLL Release.** Each Rule 23 Class Member who does not opt-out of the settlement will

release defendants from

> all New York Labor Law claims arising out of employment with
> Perfume Worldwide Inc. that were brought in the Litigation or that
> are based on the same facts and circumstances as the claims brought
> in the Litigation for the period from May 16, 2011 through
> December 31, 2018.

Sett. Agmt. § 4.1.

**FLSA Release.** In addition to the NYLL Release, each individual who has filed a consent

to join the collective action will release defendants from:

> All Fair Labor Standards Act claims arising out of employment with
> Perfume Worldwide Inc. that were brought in the Litigation or that
> are based on the same facts and circumstances as the claims brought
> in the Litigation for the period from May 16, 2011 through
> December 31, 2018.

Sett. Agmt. § 4.1. Section 11 of the Court-approved notice which was mailed on April 26, 2018

(with the section heading "What happens if I join this lawsuit?") states:

> If you join this lawsuit, you will be bound by any ruling, settlement,
> or judgement, whether favorable or unfavorable. If there is a
> favorable resolution or judgement, either by settlement or
> judgement, and you qualify under the law, you will be entitled to
> some portion of the recovery.

The consent form signed by each opt-in plaintiff also states: "I hereby authorize the Moser Law

Firm, PC to represent me with regard to my Federal Overtime Claims. I agree to be bound by any

settlement of this action or adjudication by the Court."

## ARGUMENT

## I.    THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE.

Strong judicial policy favors the settlement of class actions. *See Weinberger v. Kendrick*,

698 F.2d 61, 73 (2d Cir. 1982) ("There are weighty justifications, such as the reduction of

litigation and related expenses, for the general policy favoring the settlement of litigation.")
(citing 3 Newberg, *Class Actions* § 5570c, at 479–80 (1977);*Williams v. First Nat'l Bank*, 216
U.S. 582, 595 (1910)). "Class action suits readily lend themselves to compromise because of the
difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.
There is a strong public interest in quieting any litigation; this is particularly true in class
actions." *In re Luxottica Grp. S.p.A. Secs. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006) (citations
and internal quotation marks omitted).

In determining whether a settlement is fair, reasonable, and adequate, courts evaluate
both the process that led to the settlement as well as the settlement's substantive terms. *Wal-
Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). With respect to procedural
fairness, "[a] court reviewing a proposed settlement must pay close attention to the negotiating
process, to ensure that the settlement resulted from 'arm's-length negotiations and that
plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery,
necessary to effective representation of the class's interests.'" *D'Amato v. Deutsche Bank*, 236
F.3d 78, 85 (2d Cir. 2001). In evaluating the substantive fairness of a class action settlement,
courts in the Second Circuit consider the nine factors set forth in *Detroit v. Grinnell Corp.*, 495
F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000).

### A.     The Settlement is Procedurally Fair.

"[A] judge ruling on the fairness of a settlement has a fiduciary duty to ensure that the
settlement is not the product of collusion." *In re Holocaust Victim Assets Litig.*, 105 F. Supp. 2d
139 (E.D.N.Y. 2000) (citing *In re Warner Commc'ns Sec. Litig.*, 798 F.2d 35, 37 (2d Cir. 1986)).
However, a "presumption of fairness, adequacy, and reasonableness may attach to a class
settlement reached in arm's-length negotiations between experienced, capable counsel after

meaningful discovery." *Wal-Mart Stores, Inc.*, 396 F.3d at 116 (citing *Manual for Complex Litigation, Third* § 30.42 (1995)). Furthermore, a number of courts have found that the involvement of an experienced mediator in crafting a settlement indicates that the negotiations leading to the settlement were procedurally fair. *See, e.g., Fleisher v. Phx. Life Ins. Co.,* No. 14-cv-8714 (CM), 2015 U.S. Dist. LEXIS 121574, 2015 WL 10847814, at *1 (S.D.N.Y. Sept. 9, 2015) ("The extensive participation of an experienced mediator also reinforces that the Settlement Agreement is non-collusive.") (citations and internal quotation marks omitted); *Romero v. La. Revise Assocs., L.L.C.*, 58 F. Supp. 3d 411, 420 (S.D.N.Y. 2014) (highlighting involvement of experienced mediator in finding a presumption of procedural fairness); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012) ("The involvement of Ruth D. Raisfeld, Esq., an experienced and well-known employment and class action mediator, is also a strong indicator of procedural fairness."); *see also D'Amato*, 236 F.3d at 85 (noting that a court-appointed mediator' s involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure) (citing *Cnty. of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1323 (2d Cir. 1990)).

Here, the settlement was the product of arm' s length negotiations aided by an experienced member of the E.D.N.Y. mediation panel, Andrew Kimler. The agreement was entered into by experienced counsel who obtained extensive discovery in the action and, as such, were well positioned to evaluate the strengths and weaknesses of the claims and defenses asserted, the potential damages incurred by the Class, and the fairness of the Settlement.

### B.    The Settlement is Substantively Fair

The Grinnell factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the

risks of maintaining the class action through the trial; (7) the ability of the defendants to

withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of

the best possible recovery; and (9) the range of reasonableness of the settlement fund to a

possible recovery in light of all the attendant risks of litigation. Grinnell, 495 F.2d at 463. "In

applying the[] [Grinnell] factors, ' not every factor must weigh in favor of the settlement, but

rather the court should consider the totality of these factors in light of the particular

circumstances.' " *Fleisher v. Phx. Life Ins. Co.*, No. 14-cv-8714 (CM), 2015 U.S. Dist. LEXIS

121574 (S.D.N.Y. Sept. 9, 2015) (quoting *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575

(S.D.N.Y. 2008))

### 1. The Reaction of the Class Has Been Positive (Grinnell Factor 2).

The Second Circuit has indicated that the second factor, the reaction of the class to the

settlement, "is perhaps the most significant factor in our Grinnell inquiry." *Wal-Mart Stores,*

*Inc.*, 396 F.3d at 119; *see also Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362

(S.D.N.Y. 2002) ("It is well-settled that the reaction of the class to the settlement is perhaps the

most significant factor to be weighed in considering its adequacy.")

In this case, no class member objected to or opted-out of the settlement, and the

settlement has been well received. The absence of objectors is evidence of class members'

support for the settlement. *Wal-Mart Stores, Inc.*, 396 F.3d at 118 ("[T]he absence of substantial

opposition is indicative of class approval . . . "); *Maley*, 186 F. Supp. 2d at 362 ("In fact, the lack

of objections may well evidence the fairness of the Settlement.") (citing *In re PaineWebber*

*Pshps. Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997)).

## 2. The Balance of the Remaining Grinnell Factors Weighs in Favor of Final Approval

The remaining Grinnell factors were addressed in detail in the Memorandum in Support of Plaintiffs' Motion for Preliminary Approval. This case has already been complex, costly, and has spanned 5 years. In reaching this settlement, the parties will avoid the extensive burden, cost, and delay associated with continued litigation. (Grinnell Factor 1). Discovery has advanced far enough to allow the parties to responsibly resolve the case (Grinnell Factor 3). Plaintiffs would face risks if the case proceeded (Grinnell Factors 4 and 5). Settlement eliminates the risk associated with continued litigation (Grinnell Factor 6).

Plaintiffs have obtained bank account information in the course of discovery that suggests that Perfume Worldwide could, in fact, withstand a greater judgement. However, a "defendant's ability to withstand greater judgment, standing alone, does not suggest that the settlement is unfair." *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, No. 09-CV-486 (ETB), 2012 U.S. Dist. LEXIS 144446, at *13 (E.D.N.Y. Oct. 4, 2012) (quoting *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005))..

Finally, the settlement amount payable to the Class ($1,500,000.00) is reasonable in light of the total potential recovery and the attendant risks of litigation. (Grinnell Factors 8 and 9). The damages were estimated as follows:

| | |
|---|---|
| Spread of Hours Pay | $418,847.33 |
| Liquidated Damages on SOH Pay | $418,847.33 |
| 20 Minute Uncompensated Break | $583,950.00 |
| Prejudgment Interest (SOH Pay) | $122,692.36 |
| Prejudgment Interest (20 Min Break) | $157,671.00 |
| **Total** | **$1,702,008.02** |

## II. THE FLSA SETTLEMENT SHOULD BE APPROVED

Plaintiffs also request that the Court approve the settlement of the FLSA claims. Unlike the procedure under Rule 23, collective members must affirmatively opt in to the litigation in

order to be bound. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84 (S.D.N.Y. 2001). Because, under the FLSA, a failure to opt in "does not prevent [individuals] from bringing their own suits at a later date[,]" FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989). "Accordingly, an FLSA settlement is examined with less scrutiny than a class action settlement; the court simply asks whether the settlement reflects a fair and reasonable compromise of disputed issues that was reached as a result of contested litigation." *Lizondro-Garcia v. Kefi L.L.C.*, No. 12 Civ. 1906, 2014 WL 4996248, at *6 (S.D.N.Y. Oct. 7, 2014).

In *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), the Second Circuit held that the FLSA is an "applicable federal statute" within the meaning of Rule 41(a)(1)(A)(ii), thus preventing parties from dismissing claims with prejudice under Rule 41 absent court approval. In Cheeks, the Second Circuit gave examples of proposed settlements which "highlighted the potential for abuse." *Id.* These included (1) confidentiality provisions, (2) overbroad releases, (3) restriction of Plaintiff' s attorneys' right to represent other employees of the defendant, (4) the payment of attorneys' fees in excess of 1/3 of the amount recovered without adequate billing records, and (5) cases in which Plaintiffs accepted as little as $100 out of a desperate financial need. *See id.* This settlement does not bear any of the characteristics which the Second Circuit found objectionable.

## III. THE SERVICE AWARDS TO THE CLASS REPRESENTATIVES SHOULD BE APPROVED AND PAID FROM THE FUND

The Settlement Agreement states that "[t]he Named Plaintiffs may each apply to the Court to receive up to $10,000.00 of the Class Settlement Amount for services rendered to the Class." Settlement Agreement § 3.3, at 11.

Class representatives in class and collective actions play a "crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny." *Aros v. United Rentals, Inc. (JCH)*, Civil Action No. 3:11-CV-1285 (JCH), 2012 U.S. Dist. LEXIS 104429, at *8-9 (D. Conn. July 26, 2012). Service awards serve the purpose of compensating class representatives for their effort and service to others. *Parker v. Jekyll & Hyde Ent. Holdings, L.L.C. (JCF)*, *No*. 08 Civ. 7670 (BSJ) (JCF), 2010 U.S. Dist. LEXIS 12762, 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010).

The service awards represent just compensation for work performed by the representatives on behalf of the class. Plaintiffs have collaborated with class counsel, provided information necessary to draft pleadings and discovery requests, and furnished documents in their possession. They have maintained contact with class counsel and were patient and responsive. See Moser Declaration, ¶¶ 17-20.

A $10,000 service award is consistent with or less than service awards granted in other wage and hour cases within this Circuit. *See Moukengeshcaie v. Eltman*, No. 14 CV 7539 (MKB) (CLP), 2020 U.S. Dist. LEXIS 71018, at *20 (E.D.N.Y. Apr. 21, 2020) (awarding $15,000 for the Named Plaintiff as "compensation for her damages and as an incentive award in recognition of her services as Class representative."); *Capsolas v. Pasta Res., Inc.*, No. 10-cv-5595 (RLE), 2012 U.S. Dist. LEXIS 144651, 2012 WL 4760910, at *10 (S.D.N.Y. Oct. 5, 2012) (awarding a service award of $20,000 to one Named Plaintiff and $10,000 for the remaining named plaintiffs); *Sealock v. Covance, Inc.*, No. 17-cv-5857 (JMF), 2020 U.S. Dist. LEXIS 44753, at *11-12 (S.D.N.Y. Mar. 13, 2020) (awarding named plaintiff $10,000 from gross settlement of $250,000); *Toure v. Amerigroup Corp.*, No. 10 Civ. 5391 (RLM), 2012 U.S. Dist. LEXIS 110300 (E.D.N.Y. Aug. 6, 2012) (approving $5,000 to $10,000 service awards in wage

and hour case); *Reyes v. Altamarea Grp.*, No. 10-CV-6451 (RLE), 2011 U.S. Dist. LEXIS 115984, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (awarding $15,000 to three plaintiffs and $5,000 to one plaintiff); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143 (ENV)(RER), 2011 U.S. Dist. LEXIS 21102, at *7 (E.D.N.Y. Feb. 18, 2011) *7 (approving service awards of $30,000, $15,000, and $7,500); *Torres v. Gristede's Operating Corp.*, No. 08-CV-9627 (PAC), 2010 U.S. Dist. LEXIS 75362, at *8 (S.D.N.Y. June 1, 2010) (finding reasonable service awards of $15,000 to each of 15 named plaintiffs).

## IV. THE FEES AND COSTS OF THE CLAIMS ADMINISTRATOR SHOULD BE APPROVED AND PAID FROM THE FUND

According to Section 2.1 (page 5) of the Settlement Agreement,

> The Claims Administrator shall be responsible for mailing, or otherwise providing, the notice, calculating Class Members' shares of the Net Settlement Fund as per section 3.5 "Calculation of the Distribution of the Net Settlement Fund", determining the timing of the payment to Class Members, mailing the Notice of Final Approval of Class and Collective Action Settlement as per section 3.6(C), and issuing and mailing checks to Class Members as provided herein. . .The Claims Administrator's fees and any other costs incurred by the Claims Administrator, including but not limited to the costs incurred in providing including but not limited to the costs incurred in providing notice, shall be paid from the Qualified Settlement Fund.

The claims administrator has, to date, diligently fulfilled its obligations under the Settlement Agreement. The total fees and costs associated with the administration of the settlement have been capped at $37,500.00. This amount is fair and reasonable in light of the amount of the settlement fund, the number of class members (roughly 1,500), and the unique responsibilities of the claims administrator. More specifically, the claims administrator will mail a notice of final approval to all class members, and will administer two separate funds, each in the amount of $750,000.00, on the first and second anniversary of the effective date of the agreement. The claims administrator's duties will not be concluded until more than two years

after final approval, and the claims administrator will not receive any compensation whatsoever until more than a year after final approval. Considering the fees associated with single payment cases in which funds are distributed immediately, these fees are reasonable and should be allowed. *See Sanchez v. JMP Ventures, L.L.C.*, No. 13 Civ. 7264 (GWG), 2015 U.S. Dist. LEXIS 16026, at *5 (S.D.N.Y. Feb. 10, 2015) (approving $20,000 administration fee from $160,000 settlement with 389 class members); *Romero*, 58 F. Supp. 3d at 417 (approving $25,000 administration fee from $250,000 settlement with 486 class members); *Viafara v. MCIZ Corp.*, No. 12 Civ. 7452 (RLE), 2014 U.S. Dist. LEXIS 60695, at *15 (S.D.N.Y. Apr. 30, 2014) (approving $25,000 administration fee from $550,000 settlement with 651 class members).

## V. ATTORNEYS' FEES SHOULD BE APPROVED AND PAID FROM THE FUND

The Settlement Agreement provides that Class Counsel may seek attorneys' fees of up to one-third of the Gross Settlement Amount ($750,000.00). Settlement Agreement § 3.8, p. 13. Fees not approved by the Court will revert to the Defendants. Settlement Agreement § 1.27, p. 5.

In awarding fees from a common fund created by a settlement, district courts in the Second Circuit use either the lodestar method or the percentage of the fund method. *Goldberger v. Integrated Res.*, 209 F.3d 43, 50 (2d Cir. 2000); *see also McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 412 (2d Cir. 2010). It is appropriate to use the percentage of fund approach in this case. The requested fee is fair and reasonable.

### A. It is appropriate to award Attorneys' fees amounting to one-third of the Fund.

It is "proper" for a district court to utilize the "percentage of the fund" method in calculating counsel fees. *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007); *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 433 (S.D.N.Y. 2016) ("The trend in the Second Circuit is to assess a fee application using the 'percentage of the fund' approach, which 'assigns a proportion of the common settlement fund toward payment of attorneys' fees.'");

*Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 435 (S.D.N.Y. 2014) ("The overwhelming trend…is to award a percentage of the fund."). The "percentage-of-fund" method "aligns the interest of the class with its counsel, 'providing a powerful incentive for the efficient prosecution and early resolution of litigation.'" *Cohan v. Columbia Sussex Mgmt., L.L.C.*, No. CV 12-3203 (AKT), 2018 U.S. Dist. LEXIS 170192, at *14 (E.D.N.Y. Sept. 28, 2018) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 122 (2d Cir. 2005)).

"[C]ourts often award one-third of a settlement fund as reasonable fees." *Fujiwara*, 58 F. Supp. 3d at 435-36 (compiling cases); *Arotech Corp. Sec. Litig.*, No. 07-CV-1838(RJD)(VVP), 2010 U.S. Dist. LEXIS 55570, 2010 WL 2301195, at *7 (E.D.N.Y. June 4, 2010) ("33% of the common fun is considered routine and therefore reasonable . . . ."); *Zeltser v. Merrill Lynch & Co., No*. 13 Civ. 1531 (FM), 2014 U.S. Dist. LEXIS 135635, 2014 WL 4816134, at *8 (S.D.N.Y. Sept. 23, 2014) (awarding 33.3% of $6.9 million maximum settlement); *Sewell v. Bovis Lend Lease LMB, Inc.*, No. 09 Civ. 6548 (RLE), 2012 U.S. Dist. LEXIS 53556, 2012 WL 1320124, at *10 (S.D.N.Y. Apr. 16, 2012) (awarding 33.3% of $2.35 million settlement); *Capsolas v. Pasta Res., Inc.*, No. 10-cv-5595 (RLE), 2012 U.S. Dist. LEXIS 144651 (S.D.N.Y. Oct. 5, 2012) (awarding 33.3% of $5.25 million settlement); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar, No*. 06 Civ. 4270 (PAC), 2009 U.S. Dist. LEXIS 27899, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (awarding 33% of $3.265 million settlement).

### B.      The requested fee is fair and reasonable

> Courts consider the following factors enumerated in *Goldberger* in evaluating the reasonableness of an attorneys' fee award: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."

*Hall v. Prosource Techs., L.L.C.*, No. 14-CV-2502 (SIL), 2016 U.S. Dist. LEXIS 53791, at *34

(E.D.N.Y. Apr. 11, 2016)(quoting *Wal-Mart Stores, Inc.*, 396 F.3d at 121)(quoting *Goldberger*

*v. Integrated Res.*, 209 F.3d 43, 50 (2d Cir. 2000)). Here, Plaintiffs' counsel, a solo practitioner,

has litigated this case for five years without compensation, has accepted all of the risks

associated with funding and prosecuting a contingency class and collective action against well

represented defendants, and has obtained a favorable result for the class. As to public policy, the

Second Circuit recently noted the significance of attorney's fees to private enforcement of

FLSA claims, and noted that "[t]he Supreme Court, this Court, and district courts in this Circuit

have long recognized the significance of attorneys' fees" in promoting private enforcement of

statutory rights. *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 604 (2d Cir. 2020). Furthermore,

> The public interest in private civil rights enforcement is not limited
> to those cases that push the legal envelope; it is perhaps most
> meaningfully served by the day-today private enforcement of these
> rights, which secures compliance and deters future violations.
> Congress meant reasonable attorney's fees to be available to the
> private attorneys general who enforce the law, not only to those
> whose cases make new law.

*Quaratino v. Tiffany & Co.*, 166 F.3d 422, 426 (2d Cir. 1999).

As a "cross-check on the reasonableness of the requested percentage", courts also look to

the lodestar multiplier, which should be a reasonable multiple of the total number of hours billed

at a standard hourly rate. *Goldberger*, 209 F.3d at 53. The lodestar is the product of the attorney'

s hourly rate and the number of hours worked. *Arbor Hill Concerned Citizens Neighborhood*

*Ass'n v. Cnty. of Alb.*, 493 F.3d 110, 114 (2d Cir. 2007).

"[R]ecent cases have held that partners in wage and hour cases are generally entitled to

recover $300 to $450 per hour." Bodon v. Domino' s *Bodon v. Domino's Pizza, L.L.C.*, No. 09-

CV-2941 (SLT), 2015 U.S. Dist. LEXIS 82039, at *2 (E.D.N.Y. June 4, 2015); *Hall*, 2016 U.S.

Dist. LEXIS 53791, at *45-46 (awarding hourly rate of $450 to partner with 12 years'

experience); *Gray v. Toyota Motor Sales, U.S.A., Inc.*, No. 10-CV-3081(JS)(ETB), 2013 U.S. Dist. LEXIS 99113, 2013 WL 3766530, at *5 (E.D.N.Y. July 16, 2013) (awarding hourly rate of $450 to partner with fifteen years of experience); *Libaire v. Kaplan*, No. CV 06-1500 (DRH) (ETB), 2011 U.S. Dist. LEXIS 152555, 2011 WL 7114006, at *4 (E.D.N.Y. June 17, 2011) (awarding hourly rate of $450 to partner with eighteen years of experience). In addition, courts in this district have approved hourly fees of between $70-100 for legal support staff. *Hall*, 2016 U.S. Dist. LEXIS 53791, at *45-46; *Ferrara v. CMR Contracting L.L.C.*, 848 F. Supp. 2d 304, 313 (E.D.N.Y. 2012).

All of the support staff at the Moser Law Firm, P.C. are required to have a four-year degree and be fluent in English and Spanish. Therefore, a slightly higher rate for legal support services ($125.00 per hour) is appropriate. As of June 6, 2022, Plaintiff's counsel has invested 727.9 partner hours and 496.50 legal support hours in this matter. Multiplying the hours expended by the $450 per hour and $125 per hour, respectively, yields a lodestar amount of $389,617.50. The lodestar multiplier is less than 2. "Courts have routinely found that doubling the lodestar yields a reasonable fee in the context of FLSA settlements." *Pucciarelli v. Lakeview Cars, Inc.*, No. 16-CV-4751 (RRM) (RER), 2017 U.S. Dist. LEXIS 98641, at *5 (E.D.N.Y. June 23, 2017)(compiling cases).

## VI. OUT OF POCKET COSTS SHOULD BE PAID OUT OF THE SETTLEMENT FUND.

The Settlement Agreement expressly permits Class Counsel to apply for reimbursement of reasonable litigation expenses and costs. § 3.4, p. 11. "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients." *In re Indep. Energy Holdings Pub. Ltd. Co. Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (internal

quotation marks omitted); *see Trs. of the Bldg. Trades Educ. Ben. Fund v. Preferred Elec. II, Inc.*, No. 16-CV-3294 (JFB) (AYS), 2018 U.S. Dist. LEXIS 1790, 2018 WL 700116, at *2 (E.D.N.Y. Jan. 3, 2018); *Cohan*, 2018 U.S. Dist. LEXIS 170192, at *17-18.

As of the date of this motion, class counsel has incurred $30,087.01 in out-of-pocket expenses and requests reimbursement from the settlement fund.

## CONCLUSION

For the reasons set forth above, the parties respectfully request that the Court (i) finally approve of the Class and Collective Action Settlement, (ii) direct the parties and the claims administrator to comply with the terms of the Settlement Agreement; and (iii) dismiss the action with prejudice. A proposed Order is annexed to the Notice of Motion.

Dated: Huntington, New York
June 10, 2022

Respectfully submitted,
MOSER LAW FIRM, P.C.
*CLASS COUNSEL*
5 East Main Street
Huntington, New York 11743
(516) 671-1150

By: _____
 Steven J. Moser